Roman M. Silberfeld, SBN 62783
RSilberfeld@RobinsKaplan.com
Daniel L. Allender, SBN 264651
DAllender@RobinsKaplan.com
**ROBINS KAPLAN LLP**
2049 Century Park East, Suite 3400
Los Angeles, CA 90067
Telephone: (310) 552-0130
Facsimile: (310) 229-5800


Attorneys for Plaintiff
*DivX, LLC*

Christopher A. Seidl (*pro hac vice*)
CSeidl@RobinsKaplan.com
Aaron R. Fahrenkrog (*pro hac vice*)
AFahrenkrog@RobinsKaplan.com
Bryan J. Mechell (*pro hac vice*)
BMechell@RobinsKaplan.com
Emily J. Tremblay (*pro hac vice*)
ETremblay@RobinsKaplan.com
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIVX, LLC, a Delaware limited liability company,<br><br>    Plaintiff,<br><br>    v.<br><br>HULU, LLC, a Delaware limited liability company,<br><br>    Defendant.<br><br>HULU, LLC, a Delaware limited liability company,<br><br>    Counterclaimant,<br><br>    v.<br><br>DIVX, LLC, a Delaware limited liability company,<br><br>    Counterclaim-Defendant. | Case No. 2:19-cv-1606 (PSG)(DFMx)<br><br>**PLAINTIFF DIVX, LLC'S RESPONSE IN OPPOSITION TO MOTION TO STAY**<br><br>Date: May 18, 2020<br>Time: 1:30 p.m.<br>Judge: Hon. Philip S. Gutierrez<br>Room: 6A<br><br>Complaint filed March 5, 2019<br>First Amended filed August 21, 2019 |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................1

II.   FACTUAL BACKGROUND ...................................................................3

III.  LEGAL STANDARDS .............................................................................7

    A.   Whether to Impose a Stay Depends on Efficiency and Fairness to Both Parties. ....................................................................................7

    B.   Neither Case Law Nor Statutes Support a "Liberal Policy" in Favor of Stays Pending IPR. ................................................................9

    C.   Legislative History for the AIA Indicates that Congress Intended IPR as an Alternative to Invalidity Declaratory Judgment Claims, Not a Substitute for or Precursor to Infringement Claims. .....................10

IV.   ARGUMENT ...........................................................................................11

    A.   Efficiency Does Not Weigh in Favor of a Stay. .....................................12

        1.   The Parties Can Best Serve the Court and Promote Judicial Economy by Advancing the Case on the Established Schedule. .................................................................................12

        2.   Hulu Has Offered Only Speculation that the PTAB Will Cancel Any DivX Claim. ....................................................................15

        3.   The Potential for Estoppel Does Not Justify a Stay. ...................17

    B.   Potential Damage and Unfairness to DivX Weigh Against a Stay..........18

        1.   Delaying DivX's Infringement Case May Cause Damage to DivX's Licensing Business...............................................................19

        2.   This Court Is the Better Venue for Fulsome Discovery Relating to Non-Obviousness. .........................................................20

        3.   Hulu Will Not Suffer Any Hardship from Proceeding with Litigation and IPR in Parallel. ......................................................22

V.    THE TOTALITY OF THE CIRCUMSTANCES WEIGHS AGAINST A STAY.....................................................................................................23

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

DIVX'S RESPONSE TO MOTION TO STAY

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amstar Corp. v. Envirotech Corp.*,
  823 F.2d 1538 (Fed. Cir. 1987) ....................................................................8

*Apple Inc. v. Fintiv, Inc.*,
  IPR2020-00019, Paper 11 (PTAB Mar. 20, 2020)...............................10

*ASCII Corp. v. STD Entertainment USA, Inc.*,
  844 F. Supp. 1378 (N.D. Cal. 1994)..............................................9, 10

*Asetek Holdings, Inc. v. Cooler Master Co.*,
  No. 13-CV-00457, 2014 WL 1350813 (N.D. Cal. Apr. 3, 2014) ..........12

*Carl Zeiss A.G. v. Nikon Corp.*,
  No. 2:17-cv-07083, 2018 WL 5081479 (C.D. Cal. Oct. 16, 2018 ........13

*Chrimar Sys., Inc. v. Adtran, Inc.*,
  No. 6:15-CV-618, 2016 WL 9225575 (E.D. Tex. Dec. 9, 2016)..........12

*Corel Software, LLC v. Microsoft Corp.*,
  No. 2:15-CV-00528, 2018 WL 5792323 (D. Utah Nov. 5, 2018) ........17

*Dependable Highway Express, Inc. v. Navigators Ins. Co.*,
  498 F.3d 1059 (9th Cir. 2007) ..................................................8, 18, 22, 23

*DMF, Inc. v. AMP Plus, Inc.*,
  No. 2:18-cv-07090, 2019 U.S. Dist. LEXIS 118464 (C.D. Cal. July 12,
  2019) ...........................................................................................15

*Drink Tanks Corp. v. GrowlerWerks, Inc.*,
  No. 3:16-CV-410, 2016 WL 3844209 (D. Or. July 15, 2016) ............15

*Ethicon, Inc. v. Quigg*,
  849 F.2d 1422 (Fed. Cir. 1988) ......................................................7

*Finjan, Inc. v. Check Point Software Techs., Inc.*,
  No. 18-cv-02621, 2019 WL 955000 (N.D. Cal. Feb. 27, 2019) ..........13

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
  721 F.3d 1330 (Fed. Cir. 2013) ......................................................13

*Garmin Int'l, Inc. v. Cuozzo Speed Techs. LLC*,
  IPR2012-00001, Paper No. 26 (PTAB Mar. 5, 2013).........................21

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

*Hologram USA, Inc. v. Ventana, 3D, LLC*,
No. 14-cv-09489, 2015 WL 12791513 (C.D. Cal. Dec. 7, 2015) ........................12

*Huawei Techs., Co. v. Samsung Elecs. Co, Ltd.*,
340 F. Supp. 3d 934, 945 (N.D. Cal. 2018) ..........................................................13

*In re Medical Components*,
535 Fed. Appx. 916 (Fed. Cir. 2013) .....................................................................8

*Invensys Sys., Inc. v. Emerson Elec. Co.*,
No. 6:12-CV-00799, 2014 WL 4477393 (E.D. Tex. July 25, 2014) ....................19

*Kahn v. General Motors Corp.*,
889 F.2d 1078 (Fed. Cir. 1989) ........................................................................8, 9

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
342 U.S. 180 (1952) .......................................................................................9, 10

*Landis v. North American Co.*,
299 U.S. 248 (1936) .................................................................................... passim

*Leyva v. Certified Grocers of Cal., Ltd.*,
593 F.2d 857 (9th Cir. 1979) ......................................................................8, 18, 23

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005) ......................................................................8, 23

*Network-1 Sec. Sols., Inc. v. Alcatel-Lucent USA Inc.*,
No. 6:11CV492, 2015 WL 11439060 (E.D. Tex. Jan. 5, 2015) ..........................19

*NHK Spring Co., Ltd. v. Intri-Plex Techs., Inc.*,
IPR2018-00752, Paper 8 (PTAB Sept. 12, 2018) .................................................9

*Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.*,
No. SA16-cv-00300, 2016 WL 7496740 (C.D. Cal. Nov. 17, 2016)....................15

*Slip Track Sys., Inc. v. Metal Lite, Inc.*,
159 F.3d 1337 (Fed. Cir. 1998) ...........................................................................21

*Taylor Made Golf Co., Inc. v. Parsons Xtreme Golf, LLC*,
IPR2018-00675, Paper No. 35 (PTAB Dec. 20, 2018) ........................................22

*ThinkOptics, Inc. v. Nintendo of Am., Inc.*,
No. 6:11-CV-455, 2014 WL 4477400 (E.D. Tex. Feb. 27, 2014) ......................19

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
943 F. Supp. 2d 1028 (C.D. Cal. 2013).....................................................7, 11, 12

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
   No. C 12–05501, 2014 WL 121640 (N.D. Cal. Jan. 13, 2014) ............................ 10

*WBIP, LLC v. Kohler Co.*,
   829 F.3d 1317 (Fed. Cir. 2016) ............................................................................ 21

**Statutes**

35 U.S.C. § 314(b) .................................................................................................... 4

35 U.S.C. § 315(a)(1) .............................................................................................. 11

35 U.S.C. § 315(a)(2) .............................................................................................. 11

35 U.S.C. § 315(b) .................................................................................................... 4

35 U.S.C. § 316(a)(11) .............................................................................................. 3

**Rules**

37 C.F.R. § 42.107(b) ................................................................................................ 4

37 C.F.R. § 42.51(b)(1) ........................................................................................... 21

37 C.F.R. § 42.51(b)(2) ........................................................................................... 21

**Other Authorities**

H.R. Rep. No. 112–98, pt. 1,
   as reprinted in 2011 U.S.C.C.A.N. 67 .......................................................... 10, 11

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:19-cv-1606 (PSG)(DFMx)
DIVX'S RESPONSE TO MOTION TO STAY

**ABBREVIATIONS**

|  | Abbreviation |
|---|---|
| U.S. Patent No. 7,295,673 (Dkt. 59-1) | '673 patent or '673 |
| U.S. Patent No. 8,139,651 (Dkt. 59-2) | '651 patent or '651 |
| U.S. Patent No. 8,472,792 (Dkt. 59-3) | '792 patent or '792 |
| U.S. Patent No. 9,270,720 (Dkt. 59-4) | '720 patent or '720 |
| U.S. Patent No. 9,998,515 (Dkt. 59-5) | '515 patent or '515 |
| U.S. Patent No. 10,212,486 (Dkt. 59-6) | '486 patent or '486 |
| U.S. Patent No. 10,225,588 (Dkt. 59-7) | '588 patent or '588 |
| Declaration of Aaron R. Fahrenkrog in Support of DivX's Opposition to Hulu's Motion to Stay<br><br>Declaration of Noel K. Egnatios in Support of DivX's Opposition to Hulu's Motion to Stay | Fahrenkrog Decl.<br><br><br>Egnatios Decl. |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

# I.    INTRODUCTION

Hulu has not provided the Court with any legitimate reason to stall this case. There are many reasons to proceed. First, timing weighs against a stay. The PTAB has not instituted five of Hulu's six petitions, and the remaining petitions will not receive an institution decision until this fall. By then, this case will be significantly narrowed and advancing toward trial. And trial will conclude before nearly all of any proceedings instituted by the PTAB.

The limited scope of Hulu's IPR petitions and doubtful potential for any simplification weigh against a stay. Hulu's IPR petitions do not challenge 8 of the 30 claims that DivX has selected to streamline the case. These 8 claims are from 4 different patents, and one of those patents is not challenged at all. PTAB statistics indicate that Hulu has only a 12.06% chance that the PTAB will institute all five remaining petitions, and most of DivX's patents likely will have claims intact after any instituted IPR concludes. But even if the PTAB institutes IPR for all challenged patents and cancels all challenged claims, the parties still must return to this Court to litigate *four* of DivX's seven asserted patents. The doubtful and necessarily limited potential for simplification shows that this Court is the more appropriate forum to timely and efficiently resolve all issues in dispute.

Indeed, the Court and the parties have already adopted a number of definite procedures to streamline the case and conserve resources. A stay would derail these efforts and reduce efficiency. For example, DivX has already narrowed the asserted patent claims from 75 to 30, with no more than 5 per patent. The parties will narrow and prioritize the fundamental claim construction disputes by early June. All of this will happen well before the PTAB even decides whether to institute IPR on most of Hulu's petitions. The stage of the case weighs against a stay.

Staying this case in favor of IPR also presents a real possibility that DivX will suffer damage. DivX is a technology licensing business, licensing source code, software, and other technology deliverables to its customers. Delayed resolution of

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

this dispute affects discussions with other existing licensees and potential licensees. Several long-standing DivX technology licensees have not renewed their licenses as they have in the past, and delaying this litigation may incentivize DivX's former licensees to hold out and harm DivX's ongoing business.

Further, only this Court can provide a full and fair resolution of Hulu's contentions that DivX's inventions are obvious. DivX will show otherwise by presenting objective indicia of non-obviousness. But the PTAB allows limited, if any, discovery into objective indicia—far less than this Court. Only here can DivX obtain complete discovery showing why Hulu adopted DivX's patented technologies and leveraged those technologies for its success, providing persuasive indicia that DivX's inventions are not obvious. Thus, a stay will force resolution of obviousness in the forum less equipped to assess this critical issue fully. These prejudices weigh against a stay.

Finally, the mere filing of IPR petitions does not justify a stay. In establishing IPR, Congress did not provide for an automatic stay of litigation merely because an accused infringer files a petition—the sole basis for Hulu's motion to stay. Hulu cannot offer more—it filed four of its six IPR petitions within two weeks of its one-year statutory deadline, after lengthy Rule 12 proceedings, and without telling DivX or the Court that IPR would affect the schedule during months of negotiations with DivX and submissions to the Court establishing a trial date.

Under the Court's schedule, the parties will resolve *all* disputes far earlier than the PTAB could resolve only *part* of this case. Hulu's best outcome at the PTAB still means that the parties must come back to this Court to complete the work they have begun, but 18 months behind schedule. The parties can best serve the Court and conserve resources by sticking to the schedule, continuing to simplify and resolve disputes, and trying this case as soon as possible. Balancing the speculative justifications offered by Hulu against the guaranteed disruption of the Court's efficient schedule and likely prejudice to DivX, a stay should be denied.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

## II.    FACTUAL BACKGROUND

Two facts are particularly relevant to resolving Hulu's motion to stay. First, Hulu's invalidity challenges to DivX's patents will resolve in this case, under the established schedule, well before they resolve in IPR. For any petitions it institutes, the PTAB has one year from the institution date to complete the IPR proceeding. 35 U.S.C. § 316(a)(11). The PTAB will not issue a final written decision for five of Hulu's six petitions until fall 2021, well after the Court's trial date of April 27, 2021—one year from the date of this filing. Dkt. 87 at 5.

Second, Hulu's invalidity challenges to DivX's patents will *never* completely resolve in IPR. On April 16, 2020, pursuant to the Court's case management order, *id.* at 2, DivX streamlined this case by selecting 30 claims for assertion from the 75 claims that it charted in its infringement contentions. Fahrenkrog Decl. ¶ 14. Hulu's IPR petitions do not challenge selected claims from four of DivX's seven asserted patents, leaving the following claims for claim construction and trial regardless of the IPR outcomes:

| Patent | Selected Claims in IPR | Selected Claims Not in IPR |
|--------|------------------------|----------------------------|
| '673 |                        | 29 |
| '651 | 1, 2, 17, 18, 19       |    |
| '792 | 1, 9, 15, 22           | 16 |
| '720 | 1, 2, 4, 5             |    |
| '515 | 1, 8, 13, 16           | 18 |
| '486 |                        | 1, 4, 8, 15, 21 |
| '588 | 1, 13, 16, 18, 20      |    |

*Id.* ¶ 15.[1]

_____

[1] Hulu appears to have filed a corrected brief in support of its motion to stay, Dkt. 113, to correct its previous representation that all but one of its IPR petitions

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

DivX filed its complaint against Hulu on March 5, 2019, asserting that Hulu's video streaming service infringes seven DivX patents. Dkt. 1. DivX served Hulu with the complaint on March 11, 2019. Dkt. 23. Hulu waited nearly 12 months to file most of its IPRs and filed its last petitions on March 11, 2020, the day of its one-year statutory deadline. Fahrenkrog Decl. ¶¶ 2-7; 35 U.S.C. § 315(b).

Before filing its IPR petitions, Hulu filed two motions to dismiss some of DivX's asserted patents under 35 U.S.C. § 101. Dkt. 47; Dkt. 60. DivX amended its complaint on August 21, 2019, following the Court's ruling on the first motion. Dkt. 59. The Court denied Hulu's second motion on November 4, 2019. Dkt. 73.

Hulu filed one IPR petition on October 18, 2019. Fahrenkrog Decl. ¶ 2. It filed five more in February and March 2020, challenging in total six of DivX's seven asserted patents. *Id.* ¶¶ 3-7. Hulu's petitions challenge only 55 of DivX's 75 initially asserted claims, leaving 20 asserted claims and one entire patent unchallenged. *Id.* ¶ 15.

The PTAB has not instituted five of Hulu's six IPR petitions. *Id.* ¶ 8. The PTAB's deadlines for whether to institute Hulu's five remaining IPR petitions will fall in late August (one petition), mid-September (two petitions), and October (two petitions). *Id.*

To illustrate this timing: the PTAB issued a notice of filing date on April 8, 2020, for Hulu's last two IPR petitions. Fahrenkrog Decl. ¶¶ 6-7. DivX has three months—until July 8, 2020—to file a preliminary response. 37 C.F.R. § 42.107(b). The PTAB then has three months—until October 8, 2020—to decide whether to institute IPR on those two petitions. 35 U.S.C. § 314(b). Under the Court's schedule, by October 8, the parties will have completed claim construction, completed fact discovery, met and conferred about representative accused

challenges all asserted claims. Its corrected brief appears to acknowledge that the '515 and '792 petitions do *not* challenge all asserted claims, but it still overlooks the fact that its '673 petition does not challenge DivX's sole asserted claim.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

instrumentalities to streamline trial, and nearly completed opening expert reports (due October 15). Dkt. 87 at 2-4.

The parties began their Rule 26(f) conference on December 20, 2019. Fahrenkrog Decl. ¶ 10. At that time, Hulu had filed one IPR petition. *Id.* ¶ 2. During that conference, DivX asked whether Hulu expected to file additional IPR petitions and how Hulu expected IPR to affect the case schedule. *Id.* ¶ 10. Hulu declined to provide any information. *Id.* It did not provide any information about IPR, nor raise any request to modify the schedule for IPR, in numerous Rule 26(f) meet-and-confers between December 20, 2019 and January 13, 2020, when the parties filed their joint Rule 26(f) report. *Id.*; Dkt. 79.

In that report, the parties jointly proposed a trial date of August 24, 2021. Dkt. 79 at 19. DivX agreed to reduce the number of its asserted claims for claim construction and trial, and Hulu agreed to reduce the number of prior art references it would assert. *Id.* at 16-18. Hulu did not say anything in that joint report about filing petitions for IPR or moving to stay the case. *Id.*

The parties appeared before the Court for the Rule 16 conference on January 27, 2020. Dkt. 80. The Court expressed an interest in setting an earlier trial date and gave the parties an opportunity to respond. Fahrenkrog Decl. Ex. 1 at 7:21-9:22. Hulu did not raise any concern about IPR affecting the trial date. *Id.* The Court also expressed, during the conference, a preference that DivX narrow its asserted claims before claim construction. *Id.* at 7:11-20. DivX agreed. *Id.*

Following the Rule 16 conference, the Court issued an order on January 29, 2020, setting trial for April 27, 2021, and a claim construction hearing for August 31, 2020. Dkt. 82. The Court established a schedule of claim construction filings and briefing from June-August, 2020. *Id.* The Court ordered the parties to file an updated scheduling proposal for all other pretrial dates to accommodate the Court's claim construction and trial dates. *Id.*

When the Court set the trial date, Hulu had filed only one IPR petition.

1  Fahrenkrog Decl. ¶ 2. Between then and the time the parties submitted their

2  updated scheduling proposal on February 18, Dkt. 83, Hulu had filed one more IPR

3  petition. *Id.* ¶ 3. Again, Hulu did not raise any scheduling concern about IPR during

4  the parties' ongoing meet-and-confer process or in the parties' updated joint

5  submission to the Court. *Id.* ¶ 11. Within just 24 days after the parties submitted

6  their joint schedule, Hulu filed four more IPR petitions and moved to stay the case.

7  Dkt. 100-2; *see also* Dkt. 113.

8      DivX and Hulu both served discovery on December 20, 2019, following the

9  Rule 26(f) meet-and-confer, including requests for production and interrogatories.

10  Fahrenkrog Decl. ¶ 12. DivX requested comprehensive discovery from Hulu,

11  including evidence relating to Hulu's adoption of DivX's patented technologies and

12  commercial success attributable to DivX's inventions. *Id.* The parties have served

13  objections and responses to this discovery and begun producing documents. *Id.*

14  Since that time, DivX has inquired multiple times requesting that Hulu produce

15  responsive documents. *Id.* As of this filing, Hulu has produced only a small number

16  of documents in response to DivX's requests, despite four months—nearly half the

17  fact discovery period—having passed. *Id.*

18      On February 6, 2020, DivX served its infringement contentions upon Hulu.

19  Fahrenkrog Decl. ¶ 13. DivX asserted infringement of 75 claims from its seven

20  patents by Hulu's software and streaming services. *Id.* DivX supported its

21  assertions with more than 900 pages analyzing publicly available evidence,

22  including reverse engineering of Hulu's software and services running on many

23  playback devices. *Id.* DivX also prepared a production of nearly 3,500 documents

24  pursuant to N.D. Cal. Patent L.R. 3-2 to accompany its contentions. *Id.* DivX

25  informed Hulu that it could serve its production as soon as the Court entered a

26  protective order, which the parties were negotiating. *Id.*

27      The parties will begin exchanging claim construction disclosures on May 7,

28  2020. Dkt. 87 at 2.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

## III.  LEGAL STANDARDS

### A.    Whether to Impose a Stay Depends on Efficiency and Fairness to Both Parties.

The discretion to stay litigation in favor of another proceeding is within the Court's inherent authority, as expressed and bounded by the Supreme Court in *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936); *see also Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (relying on *Landis* for courts' inherent authority to stay proceedings); *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1031 (C.D. Cal. 2013) (relying on *Ethicon*).

When evaluating whether to stay litigation in favor of IPR, courts frequently consider "three significant factors . . . : (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *Universal Elecs.*, 943 F. Supp. 2d at 1030-31. The inquiry extends beyond these three factors, and "the totality of the circumstances governs." *Id.* at 1031.

These factors all descend from the Supreme Court's mandate in *Landis* that the courts "must weigh competing interests and maintain an even balance." 299 U.S. at 254-55. The analysis addresses efficiency: the Supreme Court explained that each court has the discretion "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id.* at 254. And the analysis addresses fairness: the Supreme Court expressed that "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Id.* at 255.

The Ninth Circuit has addressed and applied the *Landis* balancing test by focusing on fairness, explaining that a court may enter a stay where "efficient for its own docket and the fairest course for the parties." *Leyva v. Certified Grocers of*

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

*Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979).[2] The Ninth Circuit has recognized that *Landis* sets forth "certain restrictions on what otherwise might be an unfettered exercise of discretion." *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007). For example, case management alone does not necessarily justify a stay. *Id.* (citing *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005)). Further, if "even a fair possibility exists" that a stay "will work damage" to a party, then "the stay may be inappropriate absent a showing by the moving party of 'hardship or inequity.'" *Id.* (quoting *Landis*, 299 U.S. at 255).

"[D]amage to some one else" may arise from a variety of circumstances. *Dependable*, 498 F.3d at 1066. For example, staying litigation in favor of arbitration can present "a 'fair possibility' that the stay will 'work damage'" to the claimant. *Id.* (quoting *Landis*, 299 U.S. at 255). The plaintiff in *Dependable* brought suit only for past damages arising from past harm relating to breach of an insurance contract, demonstrating that "damage to some one else" does not require ongoing harm, irreparable harm, or a lawsuit between competitors. 498 F.3d at 1062, 1066.

Further, "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer*, 398 F.3d at 1112. In sum, whether to enter a stay depends on a balance of efficiency and fairness to all parties, including all "damage" that a stay might inflict. Where the possibility of any such damage exists, then the party requesting a stay must

---

[2] Law of the regional circuit, where the district court resides, applies to procedural issues not unique to patent law. *Amstar Corp. v. Envirotech Corp.*, 823 F.2d 1538, 1550 (Fed. Cir. 1987); *see also Kahn v. General Motors Corp.*, 889 F.2d 1078, 1080-81 (Fed. Cir. 1989) (applying Second Circuit law to vacate stay of first-filed infringement action); *cf. In re Medical Components*, 535 Fed. Appx. 916, 918 (Fed. Cir. 2013) (applying Third Circuit law and finding that lack of hardship did not justify writ of mandamus to reverse stay, in view of other considerations). The *Landis* analysis applies to a stay of any matter based on the Court's inherent authority.

1   demonstrate hardship—and having to defend the pending suit is not enough.

2   **B.    Neither Case Law Nor Statutes Support a "Liberal Policy" in Favor**
3   **of Stays Pending IPR.**

4       Neither *Landis* nor the patent statutes establish a "liberal policy" favoring

5   staying infringement litigation pending USPTO invalidity proceedings, in particular

6   IPR, as Hulu suggests. Dkt. 113 at 5. The "liberal policy" phrase cited by Hulu

7   arose in a 1994 opinion (nearly 20 years before IPR existed) based only on a survey

8   of "the cases cited by both parties" regarding stays pending reexamination

9   proceedings. *ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F. Supp. 1378,

10   1381 (N.D. Cal. 1994). Notably, the patent owner in *ASCII* initiated the USPTO

11   proceedings itself *and* requested the stay of its own case—the accused infringer

12   opposed. *Id.* at 1379-80.

13       Indeed, the federal courts have historically applied the opposite policy—the

14   first-filed infringement case typically takes priority over the later-filed, parallel

15   invalidity action. *See Kahn*, 889 F.2d at 1081 (vacating district court's order staying

16   first-filed infringement suit in favor of later invalidity declaratory judgment suit).

17   Almost seventy years ago, the Supreme Court ruled that an accused infringer does

18   *not* have "a paramount right to choose the forum for trying out questions of

19   infringement and validity" by filing an invalidity claim in a different forum after

20   being sued for infringement. *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342

21   U.S. 180, 185-86 (1952) (affirming stay of later-filed invalidity proceeding in favor

22   of proceeding with first-filed infringement action).

23       The PTAB, too, has begun denying IPR institution in some cases where the

24   district court has set a trial date that will resolve the invalidity issues before the

25   PTAB reaches a final written decision in IPR. *See NHK Spring Co., Ltd. v. Intri-*

26   *Plex Techs., Inc.*, IPR2018-00752, Paper 8, at 19-20 (PTAB Sept. 12, 2018)

27   (precedential) (exercising discretion to deny IPR petition where district court trial

28   was scheduled for six months before an IPR trial would occur); *see also Apple Inc.*

*v. Fintiv, Inc.*, IPR2020-00019, Paper 11, at 3-4 (PTAB Mar. 20, 2020) (enumerating factors that the PTAB considers in evaluating discretionary IPR denial based on parallel district court proceeding). The PTAB expressly considers the "proximity of the court's trial date to the Board's projected statutory deadline for a final written decision" in this analysis, recognizing that the district court may resolve the matter more efficiently. *Apple*, IPR2020-00019, Paper 11, at 3-4.

*Landis* and *Kerotest* therefore suggest that courts should hesitate to prioritize later-filed invalidity claims over first-filed infringement claims (aside from exceptions relating to customer suits not at issue here). The *ASCII* case originating the "liberal policy" proposition does not address unfairness to the patent owner in testing the validity of its patents, in a separate forum, over its objection, while delaying its first-filed infringement claim. *Landis* requires balance among efficiency, judicial economy, and fairness to both parties, and it does not accommodate a blanket "liberal policy" of staying federal court proceedings.

## C. Legislative History for the AIA Indicates that Congress Intended IPR as an Alternative to Invalidity Declaratory Judgment Claims, Not a Substitute for or Precursor to Infringement Claims.

If Congress had intended to create a "liberal policy" of staying infringement claims, it could have provided for a stay pending IPR in the America Invents Act ("AIA"). It did not. Instead, it left stays to the courts' discretion, governed by *Landis*. Thus, "[t]here is no per se rule that patent cases should be stayed pending reexaminations, because such a rule would invite parties to unilaterally derail litigation." *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. C 12–05501, 2014 WL 121640, at *2 (N.D. Cal. Jan. 13, 2014).

The AIA's legislative history indicates that post-grant review, including IPR, provides an alternative to *invalidity* litigation. H.R. Rep. No. 112–98, pt. 1 at 45-48 (2011), as reprinted in 2011 U.S.C.C.A.N. 67, 78 (describing history of reexamination as an "alternative to litigation for evaluating patent *validity*"

(emphasis added)). It further explains that the AIA's success as a "quick and cost effective alternative to litigation" would depend on preventing "repeated litigation and administrative attacks on the *validity* of a patent." *Id.* at 48 (emphasis added).

The legislative history provides no indication that Congress intended the AIA to replace or establish a condition precedent to infringement claims. To the contrary, it explains explicitly that a post-grant review procedure "is not intended, however, to inhibit patent owners from pursuing the various avenues of enforcement of their rights under a patent." *Id.*

Accordingly, Congress enacted a provision barring IPR for a party that has initiated invalidity declaratory judgment litigation. 35 U.S.C. § 315(a)(1). And if an IPR petitioner initiates declaratory judgment litigation after filing IPR, the AIA automatically stays that litigation unless the *patent owner* asks to proceed or files an infringement claim. 35 U.S.C. § 315(a)(2). The only automatic stay provision applies to a patent challenger filing repeated invalidity challenges, and it gives the patent owner authority over whether to proceed in litigation.

The AIA and its legislative history remained silent on stays of infringement claims pending IPR and contain no suggestion that Congress intended the AIA to replace infringement claims. Instead, the AIA indicates that IPR provides an alternative to *invalidity* declaratory judgment claims and does not provide a basis to justify a stay of a patent owner's infringement claims, which *Landis* controls.

## IV.  ARGUMENT

The stage of the case (which will resolve the parties' dispute well before IPR concludes), the low potential for simplification (which is speculative only, and unlikely to substantially reduce the work required of the Court), and high potential for prejudice to DivX (which includes both legal and business potential harm) all weigh against a stay. These "significant factors" alone, and *Landis*' more comprehensive directive to "weigh competing interests and maintain an even balance," counsel against disrupting the current schedule in favor of IPR. *Universal*

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

*Elecs.*, 943 F. Supp. 2d at 1030-31; *Landis*, 299 U.S. at 254-55.

**A.    Efficiency Does Not Weigh in Favor of a Stay.**

    **1.    The Parties Can Best Serve the Court and Promote Judicial Economy by Advancing the Case on the Established Schedule.**

The parties can resolve this dispute most efficiently by doing the work according to the Court's schedule in parallel with Hulu's IPR proceedings (if instituted). Adhering to the established dates for claim construction (August 31, 2020) and trial (April 27, 2021) will promote the efficient use of resources to narrow *all* disputes for resolution by the Court and the jury. Indeed, the parties and Court already have taken steps to streamline this case and conserve resources fairly, through adoption of Patent Local Rules from the Northern District of California, and through the case schedule, which incorporates narrowing measures more stringent than even the Patent Local Rules require. Dkt. 87.

Precisely due to these efficiency issues, many courts deny stays where, as here, "a trial date has been set." *See Universal Elecs.*, 943 F. Supp. 2d at 1030-31.[3] In particular, courts deny requests for stays where trial is set to occur before a final decision at the PTAB. *See, e.g.*, *Chrimar Sys., Inc. v. Adtran, Inc.*, No. 6:15-CV-618, 2016 WL 9225575, at *3 (E.D. Tex. Dec. 9, 2016) (denying motion to stay because the progression of the district court litigation had been "significant" by the time the PTAB had instituted review); *see also Carl Zeiss A.G. v. Nikon Corp.*, No.

---

[3] *See also Hologram USA, Inc. v. Ventana, 3D, LLC*, No. 14-cv-09489, 2015 WL 12791513, at *2 (C.D. Cal. Dec. 7, 2015) ("In addition, trial is set to begin on April 19, 2016, less than five months away. Defendants didn't file the IPR petition until November 3, 2015, so the decision by the PTO on whether to institute review may not issue until May 2016, **after** the trial date set in this case. Thus, the timing of the IPR petition, in combination with the discovery cut-off and forthcoming trial date in this action, weigh against granting a stay." (emphasis in original)); *Asetek Holdings, Inc. v. Cooler Master Co.*, No. 13-CV-00457, 2014 WL 1350813, at *4 (N.D. Cal. Apr. 3, 2014); *Unifi Sci. Batteries, LLC v. Sony Mobile Commc'ns AB*, No. 6:12CV221, 2014 WL 4494479, at *3 (E.D. Tex. Jan. 14, 2014).

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

2:17-cv-07083, 2018 WL 5081479, at *4 (C.D. Cal. Oct. 16, 2018)) (after denying defendants' first motion to stay pending IPR because the PTAB had not yet instituted, denying defendants' second motion because, among other reasons, the case was close to trial). And the PTAB's analysis does not take precedence over the Court's—when district court litigation reaches a final judgment before IPR concludes, the IPR results cannot set that judgment aside. *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013) (applying *Moffitt v. Garr*, 66 U.S. 273, 283 (1861)).

Here, the stage of the case weighs against a stay. Trial has been set, the fact discovery period is nearly halfway complete, and the parties will make significant headway well before institution decisions on the remaining five petitions are due. Indeed, DivX already has taken a significant step to promote efficiency in this litigation by selecting 30 total asserted claims, and no more than 5 per asserted patent, for claim construction and trial. This selection reduced the claims for the parties and Court to address by more than half. This is a real, non-speculative demonstration that the parties can efficiently manage the case in this Court and resolve their dispute while conserving resources.

Proceeding with this litigation will continue to focus the case, even in the short term. The parties' claim construction exchanges, negotiations, and filings in May and June are explicitly designed to focus disputes and identify the potentially case-dispositive issues for the Court. Dkt. 87 at 2.[4] The parties must negotiate and focus

---

[4] *See also Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-cv-02621, 2019 WL 955000, at *3, *4 (N.D. Cal. Feb. 27, 2019) ("The overriding principle of the Patent Local Rules is that they are designed to make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims. . . . [The] purpose of Patent Local Rules [is] to make the litigation process more efficient and discovery more streamlined."); *Huawei Techs., Co. v. Samsung Elecs. Co, Ltd.*, 340 F. Supp. 3d 934, 945 (N.D. Cal. 2018) (The Patent Local Rules are "designed to provide structure to discovery

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

their disputes on no more than 15 claim terms for construction by June 11. *Id.* These efforts will focus the case more quickly and efficiently than even best-case speculation about the outcomes of Hulu's IPR petitions. The PTAB cannot provide any decision that would simplify the case this summer—even its institution decisions will not come until halfway between now and trial.

Hulu's arguments that "there has been limited document production and no depositions have been taken or scheduled," Dkt. 113 at 2-3, should not weigh in favor of a stay. To find otherwise would allow—and incentivize—an infringement defendant to manufacture circumstances supporting a stay motion simply by delaying productions and then declaring that "the parties have engaged in very limited discovery." *Id.* at 6. Here, where Hulu committed its resources to filing six IPRs and a motion to stay but chose not to collect and produce documents and witnesses, the fact that discovery remains should weigh against, not in favor of, a stay.

Efficiency and judicial economy, therefore, weigh against a stay. True, the parties and the Court will have work to do. Critically, however, they have a plan in place to do it efficiently and on a definite schedule. The parties have agreed to mediate the case with Hon. Jay Gandhi by fall, Dkt. 87 at 4, Dkt. 110, and the streamlining that will occur under the current schedule will best facilitate a productive mediation.

DivX recognizes that the Court, parties, and counsel face unprecedented challenges from COVID-19 and the corresponding guidance and restrictions that have disrupted everyday life and routines. But this case, unlike criminal matters and many others that the Court must handle, can proceed largely virtually and maintain its schedule despite these disruptions. DivX also recognizes that the Court will face

---

and to enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute.").

1  a backlog of cases, particularly trials, when stay-at-home and social distancing

2  restrictions change. DivX respectfully submits that the parties can best serve the

3  Court and ease its busy docket under these circumstances by advancing this case as

4  much as possible and not delaying the case and contributing to the backlog.

## 2. Hulu Has Offered Only Speculation that the PTAB Will Cancel Any DivX Claim.

7  Hulu's claim that its IPR petitions will simplify this case is speculative at best.

8  Only two things are certain at this stage: (1) claims from four of DivX's seven

9  asserted patents will remain for claim construction and trial regardless of the IPR

10  outcomes, because Hulu has not challenged them (including one patent not

11  challenged at all); and (2) the parties can resolve this entire dispute well before

12  resolution of Hulu's IPR proceedings on the Court's current schedule.

13  As an initial matter, the PTAB has not yet instituted five of Hulu's six

14  petitions. Many courts deny requests for stays before the PTAB has instituted IPR

15  proceedings, due to the purely speculative nature of potential simplification. *See*

16  *DMF, Inc. v. AMP Plus, Inc.*, No. 2:18-cv-07090, 2019 U.S. Dist. LEXIS 118464,

17  at *1 (C.D. Cal. July 12, 2019) ("The Court will not entertain any motions to stay

18  the case until the PTAB has granted defendants' IPR petition."); *Polaris*

19  *Innovations Ltd. v. Kingston Tech. Co., Inc.*, No. SA16-cv-00300, 2016 WL

20  7496740, at *2 (C.D. Cal. Nov. 17, 2016) (denying motion to stay under the

21  "totality of the circumstances" because IPR not yet instituted); *Drink Tanks Corp.*

22  *v. GrowlerWerks, Inc.*, No. 3:16-CV-410, 2016 WL 3844209, at *4 (D. Or. July 15,

23  2016) (noting that "courts deny a motion to stay as premature if the PTO has not yet

24  granted a petition for review" and that this "approach appears to be the one chosen

25  by the majority of courts that have considered the issue").

26  Hulu has not offered any evidence of likelihood of success in IPR. Instead, it

27  describes only "the possibility that [the challenged] claims would be completely

28  resolved" and asserts, without support, that "likely the majority" of the patents-in-

suit "may not need to move forward in litigation at all." Dkt. 113 at 8. These arguments are not evidence demonstrating a likelihood of simplification. From DivX's perspective, the alleged prior art asserted by Hulu in its IPR petitions relates to different technologies and different challenges than what DivX's inventors faced in creating the claimed inventions, and therefore DivX expects that the PTAB will not institute or cancel the majority of challenged claims.

Regardless of which party's subjective evaluation of Hulu's IPR petitions is correct, baseline statistics from the PTAB—the only data currently available to evaluate the likelihood of simplification—indicate that IPR petitioners succeed far less often than Hulu suggests. Through March 2020, the PTAB has denied institution in 34.5% of all institution decisions. PTAB Trial Statistics, Mar. 2020, at 10 (Fahrenkrog Decl. Ex. 2). The average likelihood that the PTAB would institute all five remaining Hulu IPR petitions therefore is only 12.06%. Fahrenkrog Decl. ¶ 18.

Further, of instituted claims that reach a final written decision, the PTAB has found at least some claims patentable about 38% of the time. PTAB Trial Statistics, Mar. 2020, at 11 (Fahrenkrog Decl. Ex. 2). Together, these statistics (which exclude settlements) indicate that patents have emerged from IPR with claims preserved in 68.6% of challenges (4,282 of 6,243 IPRs resolved at either institution or final written decision). *Id.*

Applying these baseline statistics indicates that, contrary to Hulu's claim, Dkt. 113 at 8, "likely the majority" of DivX's asserted patents will *not* be canceled in IPR. Historical statistics about other IPR outcomes, of course, cannot predict the outcomes of Hulu's IPRs in this case. As Hulu is confident in its IPR petitions, DivX is likewise confident that it will prevail and that the PTAB will deny institution or uphold DivX's claims. The potential for simplification remains purely speculative at this point; this factor is no more than neutral in favor of a stay. Instead, the best inference that can be drawn is that IPR will not significantly

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

simplify this case, weighing against a stay.

In addition, the piecemeal, hypothetical simplification that *could* result from IPR likely will not reduce the work in this litigation even if the PTAB cancels claims, because the parties and Court will then need to sort out the effects of the PTAB's decisions, establish a new case schedule, and take additional discovery to address the time that elapses during a stay. Moreover, if claims are canceled, DivX may request the opportunity to amend its narrowed claim set to include non-canceled claims. *See Corel Software, LLC v. Microsoft Corp.*, No. 2:15-CV-00528, 2018 WL 5792323, at *2-3 (D. Utah Nov. 5, 2018) (allowing amendment of infringement contentions to substitute non-canceled claims for claims canceled in IPR).

Proceeding with this litigation now will best serve and reduce "economy of time and effort for [the Court], for counsel, and for litigants." *Landis*, 299 U.S. at 254. The detailed, established case management plan bought into by both parties and designed to promote efficiency weighs against putting that plan on ice in favor of other proceedings that offer no certainty other than that the parties will return to this Court to complete litigation of at least the unchallenged claims.

### 3.    The Potential for Estoppel Does Not Justify a Stay.

IPR can sometimes act as a "substitute" for district court invalidity counterclaims only as an all-or-nothing proposition. Here, it is not. First, several claims from four patents will remain even if DivX loses on all IPRs. Second, if DivX prevails in IPR, then Hulu should not have the opportunity to pursue invalidity a second time in this Court after full IPR proceedings. Yet, Hulu does not address the practical effects of estoppel if its IPR petitions do not succeed, instead asserting only that "Hulu would barred from offering invalidity grounds that it raised or reasonably could have raised in the IPR proceeding," without explaining how, if at all, estoppel will simplify trial in this case. Dkt. 113 at 9.

Hulu's ambiguous statement indicates that it will attempt to litigate additional

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

invalidity issues in this Court if DivX prevails in IPR. This demonstrates a significant disparity: only the patent owner faces the possibility of losing its district court claims due to an IPR outcome, while the accused infringer attempts to raise different invalidity attacks on the patents in the PTAB and in Court. This disparity demonstrates the unfairness of staying this litigation in favor of IPR.

The potential for estoppel, therefore, does not provide any more than speculation for simplifying this matter for trial. Instead, a stay will allow Hulu multiple chances to challenge DivX's patents in different forums.

### B.   Potential Damage and Unfairness to DivX Weigh Against a Stay.

Imposing a stay may cause damage, unfairness, and prejudice to DivX's ability to defend against Hulu's challenges to its patents and to its ongoing business operations. The evaluation of "damage" or "prejudice" in the stay analysis must extend to a variety of circumstances under the Supreme Court's mandates to "weigh competing interests and maintain an even balance" and evaluate whether "even a fair possibility" exists "that the stay . . . will work damage to some one else." *Landis*, 299 U.S. at 254-55.

Thus, neither the Supreme Court nor the Ninth Circuit has narrowed the scope of potential damage, unfairness, or prejudice to the examples that Hulu identifies: disputes between competitors, "dilatory motives or tactics," or the insufficiency of monetary damages or other requirements of irreparable harm. *See* Dkt. 113 at 10-13. Instead, prejudice can arise in disputes between non-competitors involving only past damages for past harm. *Dependable* involved an insurer and insured and denial of a $245,000 claim, without any ongoing, and certainly not irreparable, harm. 498 F.3d at 1062-63. *Leyva* required evaluation of "the fairest course for the parties" in a dispute over past unpaid wages. 593 F.3d at 863.

Hulu has not offered authority to deviate from the Supreme Court's direction on the scope of the inquiry required when considering a stay. Indeed, the mere filing of IPR petitions and a motion to stay should not, under any fairness standard,

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

shift the burden to the non-movant to establish irreparable harm for its first-filed case to proceed. Consistent with this principle, district courts have recognized the prejudice inherent in delaying a patent owner's enforcement of its rights and found that it weighs against staying litigation, because the patent owner has an "interest in timely enforcement of a patent." *Network-1 Sec. Sols., Inc. v. Alcatel-Lucent USA Inc.*, No. 6:11CV492, 2015 WL 11439060, at *5 (E.D. Tex. Jan. 5, 2015); *see also Unifi Sci. Batteries, LLC*, 2014 WL 4494479, at *2; *ThinkOptics, Inc. v. Nintendo of Am., Inc.*, No. 6:11-CV-455, 2014 WL 4477400, at *1 (E.D. Tex. Feb. 27, 2014); *Invensys Sys., Inc. v. Emerson Elec. Co.*, No. 6:12-CV-00799, 2014 WL 4477393, at *2 (E.D. Tex. July 25, 2014).

Together these cases, even those that address factual scenarios and causes of action different than the present matter, establish the principle that all aspects of fairness to both parties should be considered in the stay analysis. The specific facts of this matter indicate at least two ways that a stay may cause damage to DivX (in addition to prioritizing Hulu's later-filed IPR petitions over DivX's first-filed infringement case): it may impede DivX's licensing business, and it may preclude DivX from a full and fair opportunity to defend its patents with objective considerations of non-obviousness.

### 1. Delaying DivX's Infringement Case May Cause Damage to DivX's Licensing Business.

Delaying DivX's enforcement of its patent rights will cause damage to DivX's technology licensing business. Egnatios Decl. ¶ 2. Since 2001, DivX has licensed source code, software, and other technology deliverables to a variety of companies participating in the digital video industry ecosystems, including hundreds of consumer electronics companies that certify playback devices for use with DivX's proprietary video file and encoding formats. *Id.* ¶ 3. DivX depends on revenues from technology licensing for its ongoing business, and indeed generates the significant majority of its revenues from technology licensing. *Id.* ¶ 4. In licensing

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

negotiations, DivX has communicated to its licensees that it has protected its technologies with a robust patent portfolio. *Id.* ¶ 5.

Delay of DivX's efforts to enforce its rights against unlicensed users of infringing technology, like Hulu, may incentivize DivX's existing technology licensees to "wait and see" about the result of this matter instead of negotiating a renewal. The same concern applies to prospective licensees. *Id.* Further, monetary damages in this case will not compensate DivX for this harm caused by the influence of delay on third parties' licensing decisions.

Recently, several significant DivX technology licensees have dropped "out of license" and not renewed as they have in the past, even though DivX believes that these ex-licensees continue to use DivX's technology. *Id.* ¶ 6 These former licensees include several top consumer electronics brands, representing about 30% of global television sales, based on 2019 sales estimates. *Id.* The former licensees also include integrated circuit manufacturers that supply several significant downstream markets, including mobile and in-car displays. *Id.*

DivX's licensing business depends on its ability to enforce rights promptly when another entity violates them, as DivX contends Hulu has here. DivX's licensees of course do not make explicit that they may wait on the result on this litigation before renewing a license. *Id.* ¶ 7. The recent change in behavior from DivX's licensees provides an example of the type of damage to DivX's business that will ensue if the litigation is delayed, *id.* ¶ 8, and thus prejudice to DivX.

### 2. This Court Is the Better Venue for Fulsome Discovery Relating to Non-Obviousness.

The limited discovery available to DivX in IPR, as compared to the district court, may preclude DivX from fully discovering and litigating objective considerations of non-obviousness in any forum. Only this Court, not the PTAB, can provide the most fulsome vetting of DivX's and Hulu's disputes relating to validity. The inability of the patent owner to fully defend the validity of its patent

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

claims in the USPTO—and, if it loses there, in federal court as well—justifies denying a stay. *See Slip Track Sys., Inc. v. Metal Lite, Inc.*, 159 F.3d 1337, 1338-40 (Fed. Cir. 1998) (reversing stay of district court litigation where patent owner could defend the priority of its invention only in district court and not in parallel USPTO reexamination proceeding). The differences in the forums' discovery standards at least raise the possibility that DivX will suffer prejudice if this case is stayed.

In an obviousness analysis, "objective considerations of non-obviousness must be considered in *every* case." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1328 (Fed. Cir. 2016) (emphasis original). Hulu has asserted obviousness under § 103 against all the DivX claims challenged in IPR.[5]

Unlike this Court, the PTAB does not, however, allow routine discovery into objective considerations of non-obviousness. 37 C.F.R. § 42.51(b)(1) (enumerating "Routine discovery" categories). To obtain discovery over the producing party's objection, the patent owner "must show that such additional discovery is in the interests of justice." 37 C.F.R. § 42.51(b)(2). The "interests of justice" impose a higher standard than relevance and admissibility. *Garmin Int'l, Inc. v. Cuozzo Speed Techs. LLC*, IPR2012-00001, Paper No. 26, at 6-7 (PTAB Mar. 5, 2013) (denying Patent Owner's motion for additional discovery to rebut obviousness).

The PTAB, therefore, may not afford DivX a full and fair opportunity to develop its case for objective considerations of non-obviousness. Indeed, the PTAB has made explicit that "in *inter partes* review, discovery is limited as compared to that available in district court litigation." *Id.* at 5.

In contrast, discovery under the Federal Rules will allow DivX a fair opportunity to fully develop its case here. Hulu is one of the world's leading video streaming providers, and it has adopted each of DivX's video streaming and

---

[5] Hulu asserted anticipation against '651 claims 1, 17, and 18, but the PTAB declined to institute on that ground.

security inventions, as DivX set forth in detail in more than 900 pages of infringement contentions. Fahrenkrog Decl. ¶ 13. It very likely possesses documents explaining *why* it adopted the technologies that practice DivX's inventions, and those documents will bear directly on objective considerations of non-obviousness. DivX requested discovery about objective considerations immediately after the parties began their Rule 26(f) negotiations on December 20, 2019. *Id.* ¶ 12.

DivX will present its own evidence of objective considerations of non-obviousness, for example, based on the success of its own products incorporating the claimed inventions. To present a complete picture, however, DivX should have the opportunity to also present evidence from Hulu, which has enjoyed tremendous (and growing) success from the use of DivX's inventions.

The *most* discovery on objective considerations that the PTAB has allowed, to DivX's knowledge, extends only to testimony and exhibits already presented by the IPR petitioner in underlying litigation. *Taylor Made Golf Co., Inc. v. Parsons Xtreme Golf, LLC*, IPR2018-00675, Paper No. 35 (PTAB Dec. 20, 2018) (granting patent owner's motion for additional discovery). In short, because Hulu has produced only a few documents in litigation, if the Court stays the case, DivX likely cannot get them in the PTAB.

The potential that the PTAB's limited discovery rules will inhibit DivX's discovery of evidence demonstrating objective considerations at least indicates "a 'fair possibility' that the stay will 'work damage'" and cause damage, unfairness, and prejudice to DivX by at the least allowing Hulu a tactical advantage and by potentially entirely denying DivX its day in Court on this issue. *Dependable*, 498 F.3d at 1066 (quoting *Landis*, 299 U.S. at 255).

### 3.   Hulu Will Not Suffer Any Hardship from Proceeding with Litigation and IPR in Parallel.

Hulu has not identified any hardship from proceeding with this litigation in

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

parallel with IPR. *Landis* and *Dependable* demand some showing of hardship to Hulu to offset the potential damage, unfairness, and prejudice that DivX could experience as a result of delaying its infringement claim. *Landis*, 299 U.S. at 255; *Dependable*, 498 F.3d at 1066. Hulu has offered none. Hulu has the resources to litigate this case on the Court's current schedule. Hulu has chosen to multiply the proceedings, and the mere obligation to defend against a claim in the federal courts in parallel with another proceeding is not hardship. *Lockyer*, 398 F.3d at 1112.

*   *   *

Balancing the potential for prejudice to DivX against the absence of any hardship to Hulu, "the fairest course for the parties" (*Leyva*, 593 F.2d at 863) and an "even balance" of "competing interests" (*Landis*, 299 U.S. at 254-55) demonstrate that DivX's infringement claims should proceed without a stay.

## V.   THE TOTALITY OF THE CIRCUMSTANCES WEIGHS AGAINST A STAY.

The totality of the circumstances and an "even balance" of "competing interests" does not support a stay.

- The **stage of the case** weighs against a stay. The Court and the parties have established claim construction and trial dates. Hulu never said anything about staying the case, and it filed the majority of its petitions at the end of the statutory period, after the parties and Court agreed on the schedule. Significant work has occurred in DivX's preparation of infringement contentions. Concrete simplification has occurred through DivX's selection of 30 claims for claim construction and trial. More streamlining and simplification will occur in the coming weeks through claim construction exchanges and filings. Work remains, but a plan is in place. This factor weighs against a stay.
- The **potential for simplification** is speculative and doubtful, and it weighs against a stay. IPR has not been instituted on five of Hulu's six petitions.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1   Statistics show that 68.6% of IPR petitions resolved on the merits at
2   institution or final written decisions result in challenged patents emerging
3   with claims upheld. And at a minimum, claims from four of DivX's seven
4   asserted patents will remain for claim construction and trial because Hulu
5   has not challenged them in IPR. These clams account for 8 of the 30 claims
6   DivX has selected going forward. Speculation that contradicts statistics
7   cannot weigh in favor of a stay. The established case plan and schedule
8   here present a far more concrete likelihood of comprehensive simplification
9   and resolution of this matter, as demonstrated for example by DivX's claim
10   selections. For this reason, the PTAB has discretion to deny institution of
11   IPR based on the Court's schedule and trial date.

12   • The **potential for damage, unfairness, and prejudice to DivX** weighs
13   against a stay. Differing discovery standards in the PTAB may not allow
14   DivX access to evidence of objective considerations of non-obviousness
15   that it could obtain from Hulu under the Rules in this Court. If Hulu
16   prevails in IPR, this discrepancy could put DivX entirely out of Court on
17   this critical issue. DivX has observed some indication that delay of its
18   infringement claims may affect its ability to conduct its technology
19   licensing business.

20   • The **absence of any hardship or inequity to Hulu** weighs against a stay.
21   Defending a claim is not hardship. Hulu has not offered anything else to
22   offset the potential damage to DivX from a stay. It would be fundamentally
23   unfair to impede DivX's first-filed infringement claims simply because
24   Hulu has chosen to multiply proceedings.

25   DivX, therefore, respectfully requests that the Court deny Hulu's motion to stay
26   and allow DivX's case to proceed on the established schedule. In the alternative,
27   DivX requests the opportunity to proceed with those patents and claims that Hulu has
28   not challenged in IPR. If oral argument will assist the Court, DivX will appear

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

through whatever medium (telephone, video) the Court prefers.

DIVX'S RESPONSE TO MOTION TO STAY

Dated: April 27, 2020            Respectfully submitted,

                                 **ROBINS KAPLAN LLP**


                                 By: *s/ Aaron R. Fahrenkrog*
                                     Aaron R. Fahrenkrog

                                 Roman M. Silberfeld, SBN 62783
                                 RSilberfeld@RobinsKaplan.com
                                 Daniel L. Allender, SBN 264651
                                 DAllender@RobinsKaplan.com
                                 **ROBINS KAPLAN LLP**
                                 2049 Century Park East, Suite 3400
                                 Los Angeles, CA 90067
                                 Telephone: (310) 552-0130
                                 Facsimile: (310) 229-5800

                                 Christopher A. Seidl (*pro hac vice*)
                                 CSeidl@RobinsKaplan.com
                                 Aaron R. Fahrenkrog (*pro hac vice*)
                                 AFahrenkrog@RobinsKaplan.com
                                 Bryan J. Mechell (*pro hac vice*)
                                 BMechell@RobinsKaplan.com
                                 William E. Manske (*pro hac vice*)
                                 WManske@RobinsKaplan.com
                                 Shui Li (*pro hac vice*)
                                 SLi@RobinsKaplan.com
                                 Emily J. Tremblay (*pro hac vice*)
                                 ETremblay@RobinsKaplan.com
                                 Rajin Singh Olson (*pro hac vice*)
                                 ROlson@RobinsKaplan.com
                                 Mary Pheng (*pro hac vice*)
                                 MPheng@RobinsKaplan.com
                                 **ROBINS KAPLAN LLP**
                                 800 LaSalle Avenue, Suite 2800
                                 Minneapolis, MN 55402
                                 Telephone: (612) 349-8500
                                 Facsimile: (612) 339-4181

                                 Christine Yun Sauer, SBN 314307

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1  CYunSauer@RobinsKaplan.com
2  **ROBINS KAPLAN LLP**
   2440 West El Camino Real, Suite 100
3  Mountain View, CA 94040
4  Telephone: (650) 784-4040
   Facsimile: (650) 784-4041
5
6  David M. Stein, SBN 198256
   dstein@ggtriallaw.com
7  **GREENBERG GROSS LLP**
8  650 Town Center Drive, Suite 1700
   Costa Mesa, CA 92626
9  Telephone: (949) 383-2800
   Facsimile: (949) 383-2801
10
11 **ATTORNEYS FOR PLAINTIFF**
   **DIVX, LLC**
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES