Matthew D. Powers (Bar No. 104795)
matthew.powers@tensegritylawgroup.com
TENSEGRITY LAW GROUP, LLP
555 Twin Dolphin Drive, Suite 650
Redwood Shores, CA 94065
Telephone:   (650) 802-6000
Facsimile:    (650) 802-6001

David M. Stein, SBN 198256
dstein@brownrudnick.com
Brown Rudnick LLP
2211 Michelson Drive, 7th Floor
Irvine, CA 92612
Telephone: (949) 752-7100
Facsimile:  (949) 252-1514

*Attorneys for Plaintiff DivX, LLC*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIVX, LLC, a Delaware limited liability company,<br><br>     Plaintiff and Counterclaim-Defendant,<br><br>     v.<br><br>HULU, LLC, a Delaware limited liability company,<br><br>     Defendant and Counterclaimant. | **Case No. 2:19-cv-1606 PSG (DFMx) [Lead case]**<br>Case No. 2:21-cv-01615 PSG (DFMx)<br><br>**PLAINTIFF DIVX, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO LIFT STAY AND REOPEN CASES**<br><br>Date:   February 25, 2022<br>Time:   1:30 pm<br>Ctrm:   6A<br>Judge:  Hon. Philip S. Gutierrez |

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................1

II.  BACKGROUND ...................................................................................................3

    A.   History Of District Court Proceedings..................................................3

    B.   IPR Proceedings .......................................................................................4

III. LEGAL STANDARD ...........................................................................................5

IV.  ARGUMENT ........................................................................................................6

    A.   Factor 1: The Stage Of Proceedings Supports Lifting The Stay..........6

    B.   Factor 2: A Stay Will Not Meaningfully Simplify These Cases .........9

        1.   *Hulu I* Will Not Be Simplified By Continuing The Stay ..........9

        2.   Any IPRs On *Hulu II* Patents Will Not Simplify This Case ...13

    C.   Factor 3: A Stay Would Prejudice And Tactically Disadvantage DivX................................................................................................................17

        1.   Sub-Factor 1: Hulu's Delay In Filing IPR Petitions................17

        2.   Sub-Factor 2: The Timing Of The Request For A Stay ..........18

        3.   Sub-Factor 3: The Status Of IPRs Favors Lifting The Stay ....19

        4.   Sub-Factor 4: The Relationship Between The Parties.............19

        5.   DivX Is Prejudiced If Its Claims Are Not Timely Resolved...21

    D.   The Totality Of The Circumstances Favors Lifting The Stay ...........22

V.   CONCLUSION ...................................................................................................23

# TABLE OF AUTHORITIES

**Cases**

*Copy Prot. LLC v. Netflix, Inc.*,

    No. 14-365-LPS, 2015 WL 3799363 (D. Del. June 17, 2015) ..............................9, 17

*Game and Tech. Co. Ltd v. Blizzard Entm't, Inc.*,

    No. CV 16-06499-BRO (SK) (C.D. Cal. May 15, 2017) ...........................5, 6, 14, 23

*Hulu, LLC v. DivX, LLC*,

    IPR2021-01418, Paper 4 (PTAB Sep. 3, 2021) .........................................................15

*Hulu, LLC v. DivX, LLC,*

    IPR2021-01419, Paper 4 (PTAB Sep. 3, 2021) .........................................................15

*Ioengine, LLC v. Paypal Holdings, Inc.*,

    No. 18-452-WCB, 2020 WL 6270776 (D. Del. Oct. 26, 2020).......................6, 10, 11

*Jiaxing Super Lighting Elec. Appliance Co. v. Maxlite, Inc.*,

    No. CV 19-4047 PSG (MAAx), 2020 WL 5079051, (C.D. Cal. June 17, 2020) .5, 16, 18, 19

*Juno Therapeutics, Inc. v. Kite Pharma*,

    No. CV 17-07639 SJO (RAOx), 2018 WL 1470594 (C.D. Cal. Mar. 8, 2018) ........10

*Lund Motion Prods., Inc. v. T-Max Hangzhou Tech. Co.*,

    No. SACV 17-01914-CJC-JPR (C.D. Cal. May 13, 2020).........................6, 8, 10, 22

*Masterobjects, Inc. v. Ebay, Inc.*,

    No. 16-cv-06824-JSW, 2018 WL 11353751 (N.D. Cal. Nov. 7, 2018) ..............10, 11

*Medtronic, Inc. v. Axonics Modulation Technologies, Inc.*,

    No. SA CV 19-02115-DOC-JDE (C.D. Cal. Oct. 21, 2021) ....................................10

*Milwaukee Elec. Tool Corp. v. Hilti, Inc*,

    No. 14-CV-1288-JPS, 2016 WL 7495808 (E.D. Wis. Dec. 30, 2016) ...........6, 10, 21

*Network-1 Sec. Sols., Inc. v. Alcatel-Lucent USA Inc.*,

    No. 6:11cv492, 2015 WL 11439060 (E.D. Tex. Jan. 5, 2015) ..................................12

*Polaris Innovations, Ltd. v. Kingston Tech. Co.*,

    No. SACV 16-00300-CJC(RAOx), 2016 WL 7496740 (C.D. Cal. Nov. 17, 2016)..17

*Sotera Wireless, Inc. v. Masimo Corp.*,

    IPR2020-01019, Paper 12 (PTAB Dec. 1, 2020).........................................................15

*TeleSign Corp. v. Twilio, Inc.*,

    CV 16-2106 PSG (SSx), 2017 WL 11517650 (C.D. Cal. May 16, 2017)..............7, 8

*Tire Hanger Corp. v. My Car Guy Concierge Servs.*,

    No. 5:14-cv-00549-ODW(MANx), 2015 U.S. Dist. LEXIS 193390 (C.D. Cal. June

    16, 2015) .............................................................................................................16

*Uniloc United States v. Acronis*,

    No. 6:15-CV-01001-RWS-KNM, 2017 WL 2899690 (E.D. Tex. Feb. 9, 2017) ......17

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,

    943 F. Supp. 2d 1028 (C.D. Cal. 2013) ..........................................................5

*ZOLL Med. Corp. v. Respironics, Inc.*,

    No. 12-1778-LPS, 2015 WL 4126741 (D. Del. July 8, 2015)................................22

**Statutes and Regulations**

35 U.S.C. § 314(b)..............................................................................................7

35 U.S.C. § 315(b)..............................................................................................4

35 U.S.C. § 315(e)(2) ...............................................................................14, 15

35 U.S.C. § 316(a)(11) ..............................................................................7, 9

37 C.F.R. § 42.107(b) ........................................................................................7

**Rules**

Fed. R. Civ. P. 1 ...............................................................................6, 22, 23

## I.   INTRODUCTION

Pursuant to the Court's Order inviting motions to reopen these cases after resolution of the *Hulu I* IPRs, DivX respectfully asks the Court to exercise its discretion to lift the stay in *Hulu I* and *Hulu II*.  The older of these two consolidated cases, *Hulu I*, was filed over two and a half years ago, and has been stayed for more than a year and a half of that pending Hulu's lengthy, costly, and futile IPRs that have now ended with only one asserted claim invalidated and not a single asserted patent eliminated from this case.  The stay should be lifted and the consolidated cases should be allowed to proceed.  Indeed, the dismal record of Hulu's attempt to narrow the scope of *Hulu I* with IPRs shows that *Hulu II* should not be stayed either—especially when Hulu has as much as admitted that its later IPRs should be expected to meet the same fate as its earlier ones.

IPR petitions have been filed on only two of five *Hulu II* patents.  For one patent, Hulu expressly stipulated that there would be no overlap as any validity challenge in this Court would be different from any possible challenge in the IPR.  The IPR on the other patent does not challenge three of four asserted claims.  These IPRs and Hulu's failed promise to file additional IPRs on *Hulu II* patents are no excuse for keeping the consolidated cases stayed and present no sound reason for keeping the *Hulu I* patents—which have completed the IPR process—stayed.  If the *Hulu I* patents were stayed awaiting the resolution of IPRs that Hulu has yet to file, those patents could be stayed for a total of three to four years, even though they are ready to proceed now.  Hulu's stay runs directly counter to Rule 1's purpose of just, speedy, and inexpensive resolution of all actions, and it allows demonstrably weak seriatim petitions to arrest the orderly and timely progress of infringement suits in Article III courts.

Hulu's appeal of the results of the *Hulu I* IPRs is similarly no basis to keep this case stayed.  Courts have repeatedly recognized that waiting to see if a result changes on appeal is highly speculative, and it is extremely unlikely here given that over 70%

of IPR appeals result in a full affirmance.  The odds against Hulu are even higher here because the asserted claims of six *Hulu I* patents survived IPRs essentially unscathed. These cases should now proceed in full, but whatever the Court decides about the *Hulu II* patents, *Hulu I* needs to proceed.

In considering whether the IPRs in *Hulu II* would simplify this consolidated case in October of last year, the Court rightly already found this factor was "neutral."  *Hulu II*, Dkt. 83 at 9-10.  Now, eleven out of twelve patents in these cases (91%, including all seven *Hulu I* patents and four of five *Hulu II* patents) have either successfully completed IPRs or have asserted claims that were not or are not subject to an IPR petition.  If Hulu subsequently files additional IPR petitions—late in its one-year period and after failing to file "additional petitions before the end of 2021" that it represented to this Court that it would do (*Hulu II*, Dkt. 66-1 at 21)—Hulu should not be permitted to take advantage of the present stay by delaying its IPR petitions to further prolong the already lengthy stay.  Permitting this would prejudice DivX and subject it to a clear tactical disadvantage.  In sum, Hulu should not be permitted to use the consolidation of *Hulu I* with *Hulu II* or Hulu's unrealized promise to file more IPRs in *Hulu II* as an excuse to further delay *Hulu I* when Hulu's IPRs against the *Hulu I* patents have comprehensively failed to provide an alternative to this Court addressing the merits of that case.

Further, Hulu argued in seeking to consolidate *Hulu I* and *Hulu II* that the same features were accused in both cases, and there would be similar discovery in both. *Hulu II*, Dkt. 66-1 at 1, 5-7, 16.  Hulu cannot now deny that it will be efficient for all patents to proceed together now that the disputes on the *Hulu I* patents must be resolved in this Court in any event.  Even if some *Hulu II* patents are eliminated in IPR, the lost efficiency would be small.  Conversely, the further delay of seven post-IPR patents that are ready to proceed through discovery and trial would be substantial. Nothing that can happen in IPRs on the *Hulu II* patents will change the fact that this overall dispute is unlikely to be resolved until the *Hulu I* case progresses in this Court.

Both cases should be allowed to proceed, but at bare minimum *Hulu I* should proceed.

DivX was a streaming video pioneer long before Hulu even existed.  Hulu built a multi-billion-dollar internet video business using technology DivX created and patented.  The PTAB's decisions support the importance and primacy of DivX's technology.  Hulu's infringement without license or recognition causes continuing harm to DivX's reputation and business opportunities in a market that DivX helped create.  The stay has achieved its purpose, and the PTAB's affirmance of DivX's patents corroborates DivX's foundational place in the field.  DivX should now be allowed to pursue its claims on the merits before this Court.

## II.   BACKGROUND

### A.   History Of District Court Proceedings

DivX filed *Hulu I* (Case No. 2:19-cv-1606 PSG (DFM)) on March 5, 2019, more than two and a half years ago.  *Hulu I*, Dkt. 1.  The Court set a trial date of April 27, 2021.  *Hulu I*, Dkt. 82.  On March 13, 2020, more than a year after the case was filed, Hulu moved for a stay.  *Hulu I*, Dkt. 100.  The Court granted that motion on May 11, 2020.  *Hulu I*, Dkt. 122.  The same Order permitted any party to apply to reopen the case "after the conclusion of all IPR proceedings" on the *Hulu I* patents.  *Id.* at 8.

There is also a co-pending *Netflix* case (Case No. CV 2:19-cv-1602 PSG (DFMx)) with the same seven *Hulu I* patents plus one additional patent (No. 9,184,920).  *Hulu I*, Dkt. 122 at 1-3.  The Court aligned the *Netflix* and *Hulu I* claim construction and other deadlines, and stayed *Netflix* along with *Hulu I*.  *Netflix*, Dkts. 80 at 8; 83, 89; *Hulu I*, Dkts. 82, 79, 87, 122 at 8.  In a concurrently filed motion, DivX also seeks to lift the stay in *Netflix* as all the IPRs on *Netflix* patents are finished.

DivX filed *Hulu II* (Case No. 2:21-cv-01615 PSG (DFM)) on February 22, 2021.  *Hulu II*, Dkt. 1.  On August 2, 2021, the Court set trial for December 5, 2022.  *Hulu II*, Dkt. 64.  On August 13, 2021, Hulu moved to consolidate the Hulu cases and to stay *Hulu II*.  *Hulu II*, Dkt. 66-1.  Nearly six months after filing, Hulu had brought no IPR petitions on *Hulu II* patents.  Yet Hulu claimed it "intends to file IPR

petitions[.]" *Hulu II*, Dkt. 66-1 at 19.  On October 6, 2021, the Court granted Hulu's motion.  *Hulu II*, Dkt. 83.  The Order allowed either party to move to reopen the case once "the PTAB has concluded IPR proceedings for all the patents at issue in ***Hulu I***." *Id.* at 9.  On December 15, 2021, the Final Written Decision ("FWD") issued in the last *Hulu I* IPR, so DivX now moves to lift the stay.  *Netflix, Inc. v. DivX LLC*, IPR2020-00614, Paper 68 (PTAB Dec. 15, 2021).

## B.   IPR Proceedings

Six of seven *Hulu I* patents were challenged in IPRs, but those IPRs failed to eliminate ***any*** patent from this case.  FWDs have issued in all the *Hulu I* IPRs.  *See* Ex. 1 (table summarizing the status of all *Hulu I* and *Hulu II* IPRs, the length of delay in filing the petitions, the number of asserted claims challenged, and the number of claims the PTAB confirmed).  There are claims asserted in this Court from each challenged patent either that the PTAB confirmed were patentable or that were not challenged in an IPR proceeding—and for four of those six challenged patents ***no*** claims were found unpatentable in IPR.  Ex. 1.  Hulu sought to stay *Hulu II* arguing that "[g]ranting a stay pending resolution of those IPRs could drastically simplify the issues in this case" and "***likely the majority***—of the patents may not need to move forward in litigation at all."  *Hulu II*, Dkt. 66-1 at 19-20.[1]  To the contrary, ***no patents have been removed***, and there has not been any significant simplification of this case.

The *Hulu I* Complaint was served on March 11, 2019, starting the one-year period for filing IPR petitions.  *Hulu I*, Dkt. 23; 35 U.S.C. § 315(b).  Hulu waited to file until the end of that period.  Five out of six IPRs were filed in the last month of the period, including on the very last day, March 11, 2020.  *Hulu I*, Dkt. 122 at 2-3.

Hulu has now also delayed filing IPRs on the *Hulu II* patents.  The *Hulu II* Complaint was served on February 24, 2021.  *Hulu II*, Dkt. 27.  Although Hulu stated on August 13, 2021, nearly five months ago, that it "intends to file IPR petitions with

---

[1] Emphasis added and internal quotation marks and citation omitted unless noted.

respect to patents asserted in *Hulu II*" (*Hulu II*, Dkt. 66-1 at 19), to date, IPRs have been filed on only two *Hulu II* patents. *Hulu II*, Dkt. 83, at 3-4; Ex. 1. Those petitions were filed on September 3, 2021, over six months after service of the *Hulu II* Complaint. *Hulu II*, Dkt. 83 at 2-4. For one of those *Hulu II* patents (Patent No. 10,326,987, "987 Patent"), the petitioner Unified Patents challenged only one of four asserted claims. *Id.* While Hulu stated in seeking to stay *Hulu II* that it expected to file not only its "first petition" before its motion to stay was heard, but also promised "additional petitions before the end of 2021" (*Hulu II*, Dkt. 66-1 at 21), Hulu has filed ***no additional IPRs*** after it achieved the stay. Ex. 1.

## III.   LEGAL STANDARD

Stays pending IPR are within the Court's discretion. In determining whether to stay a case pending IPR, or whether to lift such a stay, courts consider three factors:

> (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party.

Ex. 2, *Game and Tech. Co. Ltd v. Blizzard Entm't, Inc.*, No. CV 16-06499-BRO (SK), slip op. at 3 (C.D. Cal. May 15, 2017) (O'Connell, J.); *Hulu II*, Dkt. 83 at 7. In weighing the third factor—prejudice—courts consider four sub-factors: "(1) the timing of the petition for review; (2) the timing of the request for the stay; (3) the status of review proceedings; and (4) the relationship of the parties." *Jiaxing Super Lighting Elec. Appliance Co. v. Maxlite, Inc.*, No. CV 19-4047 PSG (MAAx), 2020 WL 5079051, at *4 (C.D. Cal. June 17, 2020) (Gutierrez, J.). "[U]ltimately 'the totality of the circumstances governs.'" Ex. 2, *Game and Tech.*, slip op. at 3 (quoting *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1031 (C.D. Cal. 2013)). Importantly, "[t]he proponent of a stay bears the burden of establishing its need." *Id.*

Rule 1 provides that the Federal Rules are to be administered to "secure the just, speedy, and inexpensive determination of every action and proceeding." These considerations from Rule 1 weigh in favor of lifting a stay. *See Milwaukee Elec. Tool Corp. v. Hilti, Inc*, No. 14-CV-1288-JPS, 2016 WL 7495808, at \*3 (E.D. Wis. Dec. 30, 2016) ("In light of its obligation to ensure the expeditious resolution of this case, *see* Fed. R. Civ. P. 1, the Court finds that the stay in the Related Cases has outlived its usefulness."); Ex. 3, *Lund Motion Prods., Inc. v. T-Max Hangzhou Tech. Co.*, No. SACV 17-01914-CJC-JPR, slip op. at 6 (C.D. Cal. May 13, 2020) (Carney, J.) (finding the third factor weighs against a stay, including because "the Court has an obligation to manage its docket to ensure that cases are resolved in a timely manner").

## IV.   ARGUMENT

With the IPRs on *Hulu I* patents resolved overwhelmingly in DivX's favor, all stay factors, and the totality of the circumstances, favor lifting the stay in both cases.

### A.   Factor 1: The Stage Of Proceedings Supports Lifting The Stay

With good reason, courts typically do not give significant weight to this factor when considering whether to extend an already lengthy stay. As one court observed, although this factor was "unchanged" given that the "proceedings in this court have been frozen since the stay was imposed," the "focus of the inquiry" is not on this factor, but the other two factors. *Ioengine, LLC v. Paypal Holdings, Inc.*, Civil Action No. 18-452-WCB, 2020 WL 6270776, at \*2 (D. Del. Oct. 26, 2020) (Bryson, J., sitting by designation). A court in this district found the factor "neutral" when the case was "nearing the two-year mark" and a "significant portion of that time was subject to the current stay," despite no depositions, expert discovery, or trial date. Ex. 2, *Game and Tech.*, slip op. at 4. This makes sense. If a lack of progress could justify continuing the very stay that caused it, then stays would become indefinite, and their justifications circular. Here, similar to *Game and Technology*, over two and a half years have passed since *Hulu I* was filed, and the case has been stayed for over one and a half years. *Hulu I*, Dkt. 1; *Hulu I*, Dkt. 122. This factor supports lifting the stay—

1    particularly on the *Hulu I* patents.

2        A further stay of the case based on *Hulu II* patents would only exacerbate the

3    disparity between the lengthy pendency of the present proceeding and the stage of

4    these proceedings.  Even if Hulu filed more IPR petitions now, there would likely be

5    no institution decision until July 2022, and no FWDs until July 2023. 37 C.F.R.

6    § 42.107(b); 35 U.S.C. § 314(b); 35 U.S.C. § 316(a)(11).  If the case were not allowed

7    to proceed, this would mean another year and a half stay, with a total stay of over three

8    years in *Hulu I*.  *Hulu I* would have been pending four years and three months with

9    nothing to show for it even though those *Hulu I* patents are ready today to proceed

10   through trial.  *Hulu I*, Dkts. 1.  This Court previously found that this factor weighed in

11   favor of a stay when considering whether to initially stay *Hulu II* (*Hulu II,* Dkt. 83 at

12   8), citing *TeleSign Corp. v. Twilio, Inc.*, CV 16-2106 PSG (SSx), 2017 WL 11517650

13   (C.D. Cal. May 16, 2017).  However, the additional delay in *TeleSign* beyond the

14   resolution of the IPRs on patents in the first-filed case was nine months, whereas in

15   this case the possible additional stay could be twice that (at least a year and a half).

16   Similarly, while the total stay in *TeleSign* was expected to be two years, in the present

17   case it would be expected to be over three years if additional IPRs are instituted at this

18   late stage.  *TeleSign*, 2017 WL 11517650, at *1 (first-filed case stayed in March 2016,

19   IPRs were expected to resolve on patents in the first-filed case by June 2017, and the

20   IPR on the patent in the second-filed case was expected to resolve by March 2018).

21   The circumstances of this case do not favor continuing the already lengthy stay under

22   this factor, and *TeleSign* is not to the contrary.[2]  Continuing the stay is not a fair or

---

23   [2] The Court already noted that the delay in the present case would be longer than in

24   *TeleSign* in the third sub-factor of factor three in finding that subfactor weighed against

25   a stay, and it similarly weighs against a stay for the first factor.  *Hulu II*, Dkt. 83 at 8.

26   *TeleSign* was also unlike the present case because no trial date had been set when the

27   case was stayed.  *TeleSign*, 2017 WL 11517650, at *3-4.  Additionally, while the Court

28   found that Hulu had not yet "waited until the last minute to file its IPR proceedings,"

     citing *TeleSign*, at *5, now three months later, Hulu has waited too long and past the

efficient result, and would be contrary to Federal Rule 1.

Further, the status of this case favors lifting the stay.  The Court has already addressed three substantive motions to dismiss.  *Hulu I*, Dkts. 58, 73; *Hulu II*, Dkt. 55. Another court in this district found that it "slightly favor[ed]" lifting a stay where, like here, the parties had engaged in "some motions practice before this Court" and "complex proceedings before the PTAB."  Ex. 3, *Lund*, slip op. at 4.  "Given the time that has passed and the resources the parties have expended, it would be a mistake to characterize this case as one that is still in its early stages."  *Id.*  Moreover, before the stay in *Hulu I*, the parties served and responded to discovery, served detailed contentions, and were about to start claim construction.  *See Hulu I*, Dkts. 87, 115-1. DivX narrowed its asserted claims and produced 72,783 pages.  *Hulu I*, Dkt. 115-1.  In *Hulu II*, DivX served detailed infringement contentions.  *Hulu II*, Dkt. 64.

Another consideration is whether a trial date has been set.  Ex. 2, *Game and Tech.*, slip op. at 3.  Although there is currently no trial date, the Court had previously set one in both cases, and less than a year remained until the *Hulu I* trial when this case was stayed.  *Hulu I*, Dkts. 82, 122.  The prospect of an expeditious trial date should favor lifting the stay.  This Court is the most efficient forum to resolve the disputes between the parties, and it can resolve all merits issues on all patents at trial ***before*** the PTAB can address even a subset of those same issues (part of the validity analysis) on a subset of those patents.  The prior schedule shows this: trial was set for April 27,

---

time it represented to this Court it would file additional IPRs, which further distinguishes the present case from *TeleSign*, as further described in Section IV(C)(1). *Hulu II,* Dkt. 83 at 10.  This case is also unlike *TeleSign* in that the stay has minimal potential for simplification, as described in Section IV(B).  In *Telesign*, for example, the only asserted patent in the second case was related to two of the three patents in the first case (whereas here, out of 12 patents, IPR petitions are pending on a single *Hulu II* patent from the same family as another *Hulu I* patent, which was confirmed in an IPR), and the third patent from the first case was still undergoing IPR (whereas in this case all *Hulu I* IPRs are concluded).  *TeleSign*, 2017 WL 11517650, at *1, *4. *TeleSign* does not support a continued stay in the present case.

2021, about five months ***before*** the last FWD was expected.  *Hulu I*, Dkts. 82, 122 at 2-3; 35 U.S.C. § 316(a)(11).  Such a schedule weights against a stay.  *Copy Prot. LLC v. Netflix, Inc.*, C.A. No. 14-365-LPS, 2015 WL 3799363, at *1 (D. Del. June 17, 2015) (Stark, J.) (factor weighed against stay when the "trial date has been set for . . . around the same time as the IPR petition may be finally decided").

## B.   Factor 2: A Stay Will Not Meaningfully Simplify These Cases

### 1.   *Hulu I* Will Not Be Simplified By Continuing The Stay

The factor addressing whether a stay is likely to simplify the court proceedings strongly favors lifting the stay.  Now, FWDs have issued in all IPRs on *Hulu I* Patents, and the results are overwhelmingly in DivX's favor.  *See above* Section II(B); Ex. 1.  With all *Hulu I* IPRs complete, no patents have been eliminated and the case has ***not*** been simplified the way Hulu predicted when it told the Court that "several—***likely the majority***—of the patents ***may not need to move forward in litigation at all***."  *Hulu II*, Dkt. 66-1 at 19-20.  Hulu cannot now argue that simplification is likely given this outcome.  There is no reason patents that have now been through IPR (or were not challenged in the first place) should not be allowed to proceed.  Any alleged simplification has already happened, and there is no reason to wait.

Of the seven patents asserted in the *Hulu I* case, one patent was never subjected to IPR (No. 10,212,486) and the sole asserted claim of another patent was likewise never attacked in IPR (Claim No. 29 of Patent No. 7,295,673, "673 Patent").[3]  *Hulu II*, Dkt. 83 at 2; Ex. 1.  Four more of the patents asserted in *Hulu I* were challenged in IPRs without a single claim being found unpatentable (Patent Nos. 8,139,651 ("651 Patent"); 10,225,588; 8,472,792 ("792 Patent"); 9,270,720).  *Hulu II*, Dkt. 83 at 3; Ex.

---

[3] DivX has asserted only Claim 29 from the 673 Patent.  Ex. 4 at 2.  Only Claims 1–6, 9, 10, and 13–19 of the 673 Patent were challenged in IPR.  *Netflix, Inc. v. DivX LLC*, IPR2020-00614, Paper 68 at 84 (PTAB Dec. 15, 2021).  Although the challenged claims of the 673 Patent were found unpatentable in the IPR (*id.*), that has not eliminated the only asserted 673 Patent claim in the present case before this Court.

1.   For the seventh patent (No. 9,998,515), four out of five asserted claims were confirmed in IPR.  *Hulu II*, Dkt. 83 at 3; Ex. 1.  Thus, of the thirty claims across seven patents asserted from *Hulu I*, only a single claim was found unpatentable in IPR.  Ex. 1.   DivX will not be proceeding in the present case on that one claim.   Any simplification of this case from the IPRs is, therefore, now complete; there is no reason to delay resolution of the present case in this Court.  As another court in this district recently explained, "[n]ow that PTAB has issued its final written determinations, the stay has served its purpose of simplifying the case and is no longer warranted or appropriate."  Ex. 5, *Medtronic, Inc. v. Axonics Modulation Technologies, Inc.*, No. SA CV 19-02115-DOC-JDE, slip op. at 2 (C.D. Cal. Oct. 21, 2021) (Carter, J.).

Courts in this and other districts have repeatedly concluded that once IPRs have resolved, appeals—like those filed in the present case—are not a reason to continue a stay.  *See* Ex. 1.  As Judge Bryson explained while sitting by designation in Delaware, "the great weight of the case law, both in this district [Delaware] and elsewhere," rejects issuing a stay pending an appeal of an IPR decision.  *Ioengine*, 2020 WL 6270776, at *5.  "Whether any further simplification will result from an appeal to the Federal Circuit from the PTAB's final written decisions is ***speculative***."  *Id.* at *7; *Masterobjects, Inc. v. Ebay, Inc.*, No. 16-cv-06824-JSW, 2018 WL 11353751, at *2-3 (N.D. Cal. Nov. 7, 2018) (noting the "***speculative***" nature of awaiting additional claim construction on appeal); *Milwaukee Elec. Tool*, 2016 WL 7495808, at *2 ("[N]ow that those patents have survived IPR, there remains only a ***speculative*** possibility that the Federal Circuit will reverse the PTAB and invalidate them."); Ex. 5, *Medtronic*, slip op. at 2-3  ("[T]he pendency of an appeal and its ***speculative*** success is 'not, in and of itself, a sufficient basis to make the patentee continue to wait to enforce patent rights that it currently holds.'"  (quoting *Juno Therapeutics, Inc. v. Kite Pharma*, No. CV 17-07639 SJO (RAOx), 2018 WL 1470594, at *7 (C.D. Cal. Mar. 8, 2018) (Otero, J.))); Ex. 3, *Lund*, slip op. at 6 ("The Court declines to subject this case to certain delay based on the ***speculative*** possibility that its scope might be somewhat altered by

Defendants' appeal.").

The high affirmance rate of PTAB decisions by the Federal Circuit—well over 70% affirmance on all issues—confirms this. *Ioengine*, 2020 WL 6270776, at *3 (noting in 2020 that "the Federal Circuit has issued a full affirmance in more than 75% of appeals from the PTAB[.]"); Daniel F. Klodowski et al., *Federal Circuit PTAB Appeal Statistics Through August 31, 2021*, IX Nat'l Law Rev. 274 (2021), https://www.natlawreview.com/article/federal-circuit-ptab-appeal-statistics-through-august-31-2021 (attached as Ex. 6 at 1-2) (through August 31, 2021, the Federal Circuit affirmed the PTAB on every issue in 73.26% of IPR appeals, and partially affirmed in another 10.07% of appeals).  To materially alter the present case, the Federal Circuit would have to reverse multiple IPRs, which is even less likely.

Further, stays pending appeal subject plaintiffs to an "open-ended period of delay": while "IPR proceedings are statutorily limited in duration," appeals are not. *Ioengine*, 2020 WL 6270776, at *6; *Masterobjects*, 2018 WL 11353751, at *3 (an IPR has a "statutorily-imposed deadline," but an appeal does not).  As Judge Bryson noted when sitting by designation, it is "hard to predict how long the appellate process will take, although from the available statistics, it is safe to assume that it will take at least a year." *Ioengine*, 2020 WL 6270776, at *7.  Indeed, in 2018-2021, the median time to the Federal Circuit decision in a PTAB appeal, including roughly three months from the final written decision to the docketing of the appeal, has been between 17 and 18 months, *See* the Federal Circuit's own report "Median Disposition Time for Cases Terminated After Hearing or Submission," https://cafc.uscourts.gov/wp-content/uploads/reports-stats/disposition-time/06_Med_Disp_Time_MERITS_table.pdf. Although any change in result from an appeal is highly speculative, such a lengthy delay is certain to result from any stay. This too weighs against a further stay.

Congress intended IPRs to be timely and cost-effective. *Network-1 Sec. Sols., Inc. v. Alcatel-Lucent USA Inc.*, No. 6:11cv492, 2015 WL 11439060, at *5 n.8 (E.D.

Tex. Jan. 5, 2015).  It is neither timely nor cost-effective to require companies that have waited for their district court claims to proceed through the conclusion of IPRs in their favor to be burdened with additional and excessive delays on the improbable chance that the Federal Circuit might reverse multiple IPR results.  Indeed, Congress did not require a stay during the pendency of the appeals.  *Id.*

Finally, lifting the stay and allowing *Hulu I* to proceed in parallel with the co-pending *Netflix* case is the most efficient way to proceed.  The co-pending *Netflix* case includes the same seven patents in *Hulu I* plus one additional patent and has been stayed.  All IPRs on *Netflix* patents are concluded, and DivX is filing its request to reopen the *Netflix* case at the same time as this motion, consistent with the Court's Order.  *Hulu I*, Dkt. 122 at 8.  There is no reason *Netflix* would not proceed, [4] and while *Netflix* can proceed on its own schedule regardless of the results of the present motion, *Netflix* and *Hulu I* were previously aligned for claim construction and other deadlines for efficiency.  *Netflix*, Dkts. 80 at 8; 83, 89; *Hulu I*, Dkts. 82, 79 at 8 ("The parties propose that the Court coordinate discovery between this case and *DivX, LLC v. Netflix, Inc.*, Case No. 2:19-cv-1602 (PSG)(JC) such that the parties may coordinate their discovery efforts across both cases."), 87, 115-2 (July 27, 2020, Hearing Transcript) ("So as I understand it, the parties have agreed to coordinate some of the discovery in both cases.  The witnesses will be the same. So that's great.").  If *Hulu* is not allowed to proceed, then unless DivX is subjected to the unfair prejudice of continuing to stay a case with no pending IPRs at all, then that efficiency will be lost—two problems that are both completely avoided by letting both cases proceed together now.  Allowing both *Hulu* cases (or at least *Hulu I*) to proceed with *Netflix* would

---

[4] As explained further in the briefing in the *Netflix* case, the pending appeals of IPRs are no basis to keep the *Netflix* case stayed for the same reasons they are not a basis to stay the present case. There is also no basis to stay a case against one defendant because different patents are asserted against a different defendant, only a fraction of which are even the subject of an IPR petition.

achieve the same simplification and efficiency as the Court's prior decision.

This factor strongly favors lifting the stay on *Hulu I* patents.

### 2.   Any IPRs On *Hulu II* Patents Will Not Simplify This Case

Because *Hulu I* and *Hulu II* are consolidated through discovery and claim construction (*Hulu II*, Dkt. 83 at 6), Hulu may argue that IPRs against *Hulu II* patents may simplify the issues in the consolidated case as a whole. They will not. As of the filing of this motion, IPR petitions have been filed on only two of the five patents in *Hulu II*, and one of those does not challenge the validity of all asserted claims. *Hulu II*, Dkt. 83 at 3-4; Ex. 1. These petitions will not materially simplify the consolidated case for seven reasons. ***First***, Hulu itself argued that the *Hulu I* IPRs were a signal of the likely results of IPRs on *Hulu II* patents. Hulu claimed that for the *Hulu II* IPRs "[i]nstitution is likely, however; all of Hulu's petitions regarding the patents asserted in *Hulu I* were instituted." *Hulu II*, Dkt. 66-1 at 20. By Hulu's same logic, *Hulu II* IPRs should not have different results than the largely unsuccessful *Hulu I* IPRs.[5] *See* Ex. 1.

***Second***, as the Court rightly found in its October Order, the simplification factor based on *Hulu II* petitions was "neutral": "the likelihood that any IPR proceedings instituted for *Hulu II* patents will simplify issues in *Hulu I* is lower than the likelihood that IPR petitions for patents asserted in *Hulu I* would simplify issues in that case." *Hulu II*, Dkt. 83 at 9-10. The Court noted that while two of five *Hulu II* patents (the Patent No. 10,257,443 ("443 Patent") and No. 10,542,061 ("061 Patent")) were related to *Hulu I* patents, the remaining *Hulu II* patents were "unrelated." *Id.* at 9-10. IPR petitions have been filed on the 443 Patent (*see Hulu II*, Dkt. 83 at 2-3), but not on the 061 Patent (*see* Ex. 1).[6] This further supports allowing the 061 Patent to proceed with

---

[5] Unified Patents, LLC, filed the IPR petition on the *Hulu II* 987 Patent. *See* Ex. 1. Unified Patents also filed the failed IPR on the 651 Patent, and there is no basis to expect that the 987 Patent IPR will fare any better. *Id.*

[6] To hold the *Hulu I* patents back, because the 792 Patent is related to the 443 Patent on which IPR petitions are pending, would be improper. The 792 Patent (*Hulu I*) and

the related *Hulu I* patents that already survived IPR.  The 443 Patent should also proceed because the related 792 Patent successfully completed the IPR process.  Even if Hulu files more petitions, the failed IPRs on the *Hulu I* patents favor allowing the related *Hulu II* patents to proceed.  While this factor was neutral in October, it now favors lifting the stay on the *Hulu II* patents.

**Third**, notwithstanding any alleged overlap, the *Hulu II* IPRs cannot meaningfully simplify this case because the *Hulu I* patents need to be litigated regardless.  Even if *Hulu II* patents were eliminated in IPR, all but one of the *Hulu I* patents are immune from validity challenges in this Court on prior art that could have been raised in IPR proceedings. 35 U.S.C. § 315(e)(2) (IPR petitioner or real parties in interest cannot assert that a claim is "invalid on any ground that the petitioner raised or ***reasonably could have raised***" during the IPR).  Hulu ***cannot*** use prior art from *Hulu II* IPRs against *Hulu I* patents that survived IPR. Such IPRs will not simplify the case.

**Fourth**, in asking to consolidate the *Hulu* cases, Hulu claimed that much of the discovery would overlap.  Hulu cannot argue now that there is any harm in providing the same discovery it needs to provide anyway for the *Hulu I* patents.  Hulu argued that the cases involve the same accused features, related patents, similar claim terms, the same standards, similar benefits, overlapping inventors and witnesses, the same possible third parties, similar financial data, and common damages factors.  *Hulu II*, Dkt. 66-1 at 1, 5-7, 16.  Hulu also argued that addressing related patents together is efficient for claim construction.  *Id.* at 16.  As another court in this district has noted, "requiring separate discovery and litigation on the related patents would be an inefficient use of resources."  Ex. 2, *Game and Tech.*, slip op. 5.  The overlap that Hulu

---

the 443 Patent (*Hulu II*) are technically related in that they share an earlier application in the patent chain, but they claim very different aspects of streaming technology. One claims a special kind of index that helps the device find the necessary video frames for trick play, and the other involves a process for decrypting the streaming video. *Hulu I*, Dkt. 1, Ex. 3 at Abstract; *Hulu II*, Dkt. 1, Ex. 1 (443 Patent) at Abstract.

argued supported consolidation supports allowing all patents to proceed through a single, simple, coordinated discovery process. Even if *Hulu II* patents are eliminated in IPR, if any efficiency is lost, it will be minimal given the overlap that Hulu argued for and outweighed by the simplification of the discovery process if all patents proceed together. Any such overlap favors lifting the stay in both cases.

**Fifth**, any potential for simplification is significantly diminished by the PTAB's practice of either declining to institute an IPR and deferring to a court that is better positioned to resolve the same issues faster or alternatively permitting IPR petitioners to stipulate not to litigate the same issues in both proceedings. *Sotera Wireless, Inc. v. Masimo Corp.*, IPR2020-01019, Paper 12 at 18-19 (PTAB Dec. 1, 2020) (precedential). In IPR petitions on the *Hulu II* 443 Patent, Hulu already "stipulate[d] that, if this IPR is instituted, it will not advance the grounds that are raised or reasonably could have been raised in this IPR in the co-pending district court proceeding, ***eliminating any overlap between the IPR and the co-pending district court proceeding***." *Hulu, LLC v. DivX, LLC*, IPR2021-01418, Paper 4 at 5; IPR2021-01419, Paper 4 at 5 (Petitions, PTAB Sep. 3, 2021). This stipulation eliminates any risk of litigating the same issue in two tribunals, achieving much of the alleged efficiency of a stay without the prejudice. Because the stipulation takes effect if and when the IPR is instituted—instead of at the FWD when the statutory estoppel would take hold anyway (35 U.S.C. § 315(e)(2))—the stipulation allows **both** the IPR and district court case to proceed efficiently in parallel without substantive overlap.

**Sixth**, as of the filing of this motion, IPR petitions have been filed on only two of the *Hulu II* patents, and one of those petitions (for the 987 Patent) challenges only one of four asserted claims. *Hulu II*, Dkt. 83 at 3-4; *see* Ex. 1. Hulu has IPR petitions that challenge all asserted claims of a single *Hulu II* patent (the 443 Patent). *See* Ex. 1. No IPR petition has been filed on the remaining three *Hulu II* Patents (No. 9,794,318; 10,412,141; 10,542,061). *Id.* Of the twelve patents-in-suit in *Hulu I* and *Hulu II*, eleven of those patents (91%) currently either have IPR proceedings that have resolved

successfully for DivX or have asserted claims that were not or are not subject to IPR petition. *See* Ex. 1; *above* Section IV(B)(1). Even if Hulu were to file more IPR petitions and the Court were to consider such delayed petitions in Hulu's favor (which it should not), that would still subject fewer than half of the patents-in-suit to a pending IPR petition, leaving claims of the seven *Hulu I* patents (58%) clear of IPR. This is a compelling reason to lift the stay. This Court has previously denied a stay when four of six patents (67%) would never be subject to an IPR, and correctly concluded that the Court "will have to resolve all claims in dispute as to those patents" and "waiting for the outcome of reexamination does nothing for that portion of the litigation."[7] *Jiaxing*, 2020 WL 5079051, at *7. "[T]o truly simplify the issues the outcome of the reexamination must finally resolve all issues in the litigation." *Id.*; *see also Tire Hanger Corp. v. My Car Guy Concierge Servs.*, Case No. 5:14-cv-00549-ODW(MANx), 2015 U.S. Dist. LEXIS 193390, at *3 (C.D. Cal. June 16, 2015) (Wright, J.) ("The '897 petition only addresses three out of the eleven asserted claims in the case, therefore there is no reason to allow the remaining claims to 'languish' unresolved during the IPR process."). The *Hulu II* IPRs cannot resolve all or even most of the issues, and this weighs against continuing the stay.

**Seventh**, none of the *Hulu II* IPRs have been instituted, and institution decisions are not expected until March 2022—months from now. *See* Ex. 1. We now know that the *Hulu I* IPRs failed to eliminate a single *Hulu I* patent. A further pre-institution stay on the *Hulu II* patents is particularly unwarranted in light of this because the PTAB has not even indicated that the *Hulu II* petitions are likely to succeed. Notwithstanding this Court's earlier decision, and decisions of other courts in this district, other courts have

---

[7] While the Court also noted in *Jiaxing* that the Plaintiff agreed not to assert claims subject to an instituted IPR, this was an additional factor in an opinion already leaning against stay and it is not necessary in the present case for the reasons noted throughout. 2020 WL 5079051, at *7. Nevertheless, if the Court adopts such a requirement, that at most favors staying only *Hulu II* patents, not *Hulu I* patents.

concluded that pre-institution stays are "inherently speculative" and "not warranted." *Polaris Innovations, Ltd. v. Kingston Tech. Co.*, No. SACV 16-00300-CJC(RAOx), 2016 WL 7496740, at *2 (C.D. Cal. Nov. 17, 2016) (Carney, J.) (noting the speculative nature of both whether an IPR would be instituted and, at that time, the scope of institution); *see also Copy Prot.*, 2015 WL 3799363, at *1 ("Generally, the 'simplification' issue does not cut in favor of granting a stay prior to the time the PTAB decides whether to grant the petition for *inter partes* review."); *Uniloc United States v. Acronis*, No. 6:15-CV-01001-RWS-KNM, 2017 WL 2899690, at *3 (E.D. Tex. Feb. 9, 2017) ("The majority of courts in this district that have addressed the issue of a pre-institution stay have either denied the stay request or postponed ruling until the PTAB acts on the petition for review.").  The pre-institution status of the *Hulu II* IPRs also weighs against a stay at this point.

### C.   Factor 3: A Stay Would Prejudice And Tactically Disadvantage DivX

#### 1.   Sub-Factor 1: Hulu's Delay In Filing IPR Petitions

Hulu has delayed its IPR filings, and it would unduly prejudice DivX and subject DivX to clear tactical disadvantage if the cases were further delayed—***especially*** if the *Hulu I* case remains stayed.

DivX acknowledges and does not seek to revisit the Court's original decision to grant the stay.  However, the further stay that Hulu now seeks must be considered against the backdrop of the timing of Hulu's previous IPR petitions, which establish a pattern of delay.  The first IPR on a *Hulu I* patent was not filed until seven months after service of the Complaint, and the remaining petitions were filed eleven months to a full year after service.  *See* Ex. 1; *Hulu I*, Dkt. 122.  *Hulu I* has been pending for two and a half years, and Hulu now attempts to extend an already year and a half long stay by over another year.  *Hulu I*, Dkt. 1; *Hulu I*, Dkt. 122.  If *Hulu II* IPRs are instituted and appealed, and those appeal times are also included in the stay, that would likely add at least an additional year, for a combined stay of four years.  Hulu should not be permitted to stack delay upon delay by now continuing this stay.

Keeping the case stayed based on any actual or promised IPR petitions on *Hulu II* patents would create an unfair tactical advantage for Hulu. In seeking to stay *Hulu II*, Hulu stated that it "intends to file IPR petitions with respect to patents asserted in *Hulu II*." *Hulu II*, Dkt. 66-1 at 19. Hulu said that by the time of its motion, it "will have filed its first petition, and will be preparing multiple other petitions for filing thereafter" and expected to file additional petitions "before the end of 2021." *Id.* at 19, 21. But Hulu has delayed and did not file those additional petitions before the end of 2021 as it represented to the Court. *See* Ex. 1. Even the first *Hulu II* petitions were filed over six months after the service of the Complaint in *Hulu II*. *Hulu II*, Dkt. 27; *Hulu II*, Dkt. 83 at 4. This Court has previously considered six months to be a "delay" that contributed to this factor weighing against a stay. *Jiaxing*, 2020 WL 5079051, at *4 ("Defendant delayed in both bringing the IPRs and in bringing the request for a stay. Although Plaintiffs served Defendant with the complaint in May 2019, Defendant did not bring its IPRs until November 2019."). It is now over ten months after service of the *Hulu II* Complaint and over four months after Hulu told this Court it intended to file IPRs. Hulu's significant delay weighs against a stay.

Hulu's delay is particularly prejudicial because Hulu delayed its IPR petitions during the present stay. If Hulu had promptly filed, that would have reduced the overall stay duration. Instead, by opposing this motion, Hulu attempts to improperly *maximize* the total stay—first filing the bare minimum number of IPR petitions so that it could say it had done so while then waiting as long as possible to file any further petitions and extending as long as possible the date by which all IPRs would resolve. The total stay will be longer because the stay periods will run serially, rather than concurrently. That prejudices DivX and subjects it to a clear tactical disadvantage.

## 2. Sub-Factor 2: The Timing Of The Request For A Stay

Although the timing of Hulu's initial request for a stay was relevant to whether to stay the case in the first place, it provides no reason to continue the stay now that all substantive reasons for doing so are gone. This sub-factor is no longer relevant to

*Hulu I* and cannot weigh in favor of a stay as the stay based on *Hulu I* patent IPRs should now be concluded.  The timing of the request for the *Hulu II* stay is also now of minimal relevance because Hulu delayed filing petitions that were a basis for the request ***after*** filing its request.  In any case, this cannot outweigh the other sub-factors.  DivX is promptly moving to lift the stay upon the conclusion of the last IPR, and DivX's diligence favors lifting the stay.

### 3.    Sub-Factor 3: The Status Of IPRs Favors Lifting The Stay

The Court in this case already found this sub-factor weighed slightly against a stay (*Hulu II*, Dkt. 83), and now both the completion of the *Hulu I* IPRs and the early stage of the *Hulu II* IPRs weigh in favor of lifting the stay.   The only effect of continuing the stay on the *Hulu I* patents, which are through IPR, would be to give Hulu further tactical advantage.  No IPRs on *Hulu II* patents have been instituted, nor will they be (if at all) until after this Court is likely to resolve this motion.  Even if instituted, they will not be decided for well over a year after this motion is likely to be resolved.  As this Court noted in a ***more*** advanced case than this one, when the last of multiple institution decisions was a month away, "[b]ecause Defendant initiated IPR proceedings relatively recently, granting a stay pending those proceedings would create a lengthy delay." *Jiaxing*, 2020 WL 5079051, at *1, *4.

### 4.    Sub-Factor 4: The Relationship Between The Parties

The fourth and final prejudice sub-factor is the "relationship of the parties." *Jiaxing*, 2020 WL 5079051, at *4.  DivX has a long history as a pioneer in technology for providing high quality video over the internet.  DivX's innovations—including those described in the asserted patents—span a wide range of technologies that permit the viewing experience to which today's users have become accustomed.  For example, DivX improved digital rights management, which controls access to and prevents piracy of protected digital media—a *sine qua non* of non-pirated streaming video.  DivX developed technology for adaptive bitrate streaming that detects streaming conditions and adjusts the quality of the stream accordingly to prevent

disruption in video playback.  DivX developed "trick play" technology that provides effects such as a "fast forward" for a familiar and friendly user experience.  DivX technology also enabled high quality video playback, including ultra high definition (4K) video.  *See, e.g.*, *Hulu I*, Dkt. 59 (Amended Complaint), ¶¶ 10, 72, 73, 116.  DivX built the technological foundations that Hulu now uses without a license and to DivX's detriment.  Indeed, DivX released its own products long before Hulu.  Hulu's decision to design its platform using DivX technology without permission requires remedy from this Court, and the relationship between the parties weighs against a continued stay.

DivX's products and history of innovation have a long track record.  Over 20 years ago, on September 6, 2001, DivX released a video-on-demand service: the Open Video System ("OVS").  Ex. 7 at 1-7.  DivX's product launch was many years before streaming took off in earnest, and six years before the launch of Hulu as a business in October 2007.  *See* Ex. 7 at 8-11.  OVS allowed content providers to sell a "high quality download" of their media.  Ex. 7 at 2.  The first film on the OVS could be rented for five days by users with "high-speed Internet connections" for $4.95.  *Id.*  The OVS platform offered a "complete delivery management infrastructure" for "profitable delivery of high quality video-on-demand," and it had a "proprietary digital rights management solution to ensure security."  *Id.* at 4.  This OVS platform was based on the DivX codec that allowed for the playing of DivX content.  *Id.* at 4, 12-17.

DivX continued to develop and expand its technology.  There are now over 1.5 billion devices that are certified to play DivX content.  Ex. 8 10, 15.  For more than fifteen years, the leading consumer electronics brands have recognized the need to include DivX's technology in their products, ranging from televisions to mobile phones, from DVD and BluRay players to in-car systems.  Ex. 9 at 1-6, 7-12, 13-20, 21-27, 28-34, 35-40 (announcing DivX Certified LG DVD Devices on June 2, 2005; DivX Certified in-car navigation and multimedia device on January 5, 2006; DivX Certified television on August 31, 2007; the first DivX Certified handset for the U.S. market on November 25, 2008; DivX Certified Blu-ray Disc Player on March 3, 2008;

DivX Certification of over 200 in-car and in-dash media device models on March 20, 2008.  DivX licensed partners included industry leaders Samsung and LG as early as 2007, and both have recently entered patent licenses with DivX.  Exs. 9 at 13-20, 41-47, Ex. 10 at 1-9.  Though Samsung recently renewed its DivX license, Hulu is a holdout.  Ex. 10 at 10-14.  DivX also offered new platforms for providing video over the internet.  For example, in 2011, DivX Plus Streaming was introduced as a "secure adaptive streaming solution" that included "trick-play features such as smooth fast forward and rewind" and the "trusted digital rights management technology" used for other DivX movies.  Ex. 11 at 5.  Hubee, "a major supplier of multi-screen entertainment solutions," selected DivX Plus Streaming in 2013 to use the "advanced adaptive streaming format to power digital entertainment delivery for new customer entertainment storefronts that are expected to launch in Europe," and had by that time already collaborated with Rovi (then owner of DivX) to provide Disney content for purchase and steaming.  Ex. 11 at 11.  Disney is also an owner of Hulu (*Hulu I*, Dkt. 46).  Companies, such as leading video streaming platform provider Roku, continue to recognize DivX's contributions and license DivX's technology.  Ex. 11 at 13-15.

Rather than seek the right to use the technology it needed from the company that actually owned it, Hulu built its platform for internet video using technology that belongs to DivX.  The PTAB's decisions support the validity and importance of DivX's technology.  DivX's only recourse for the ongoing harm to its reputation and business is in this Court.  The relationship between the parties favors lifting the stay.

### 5.  DivX Is Prejudiced If Its Claims Are Not Timely Resolved

The long pendency of the stay only increases the prejudice to DivX and accentuates the need to have these claims adjudicated timely.  Courts have recognized that continuing a stay—including during an appeal of an IPR—would "'unduly prejudice [the plaintiff] and unfairly advantage [the defendant].'"  *Milwaukee Elec. Tool*, 2016 WL 7495808,  at *3 (alterations in original, quoting *ZOLL Med. Corp. v. Respironics, Inc.*, Case No. 12-1778-LPS, 2015 WL 4126741, at *1 (D. Del. July 8,

2015)).   One court found that "[i]n light of its obligation to ensure the expeditious resolution of this case, *see* Fed. R. Civ. P. 1, the Court finds that the stay in the Related Cases has outlived its usefulness." *Id.*   A court in this district similarly found its "obligation to manage its docket to ensure that cases are resolved in a timely manner" and the passage of time—in that case the years since the case was filed—without the court being "able to weigh in on the merits of its claims" also weighed in favor of lifting a stay.   Ex. 3, *Lund*, slip op. 6.   In this case, multiple consumer electronics companies have recognized the value of DivX's technology and taken licenses, including while this case was pending, but Hulu has refused, and other smaller, streaming video companies are following suit.   As DivX's CEO Brian Way recently stated following Samsung's and LG's decisions to license DivX patents, "When other companies use our technology without authorization, including some of the largest companies in the world, our ability to protect our investment for both DivX and DivX's licensees ... is significantly impacted by their unauthorized use."[8]  Ex. 10 at 3. DivX has reached out to eight other companies offering streaming media services, and, despite diligent efforts, has not been able to enter license agreements with them.   This prejudice to DivX if it is unable to timely litigate its claims weighs in favor of lifting the stay for the entire case, but at minimum for the *Hulu I* patents.

### D.   The Totality Of The Circumstances Favors Lifting The Stay

DivX's claims against Hulu have been pending for over two and a half years, and much of that time they have been stayed.   *Hulu I*, Dkt. 122; *Hulu I*, Dkt. 1.   The Court has now ruled on motions and all patents with instituted IPRs have survived and need to be litigated here.   Continuing the stay will not simplify the case; and Hulu's prior arguments confirm that efficiency now weighs in favor of allowing the case to

---

[8] Samsung and LG entered a license "a week before the evidentiary hearing" in the ITC, and after LG and Samsung "lost the bulk of claim construction" and "lost a bid for summary determination of noninfringement."  Ex. 10 at 3.  This only confirms that the best way to resolve this dispute is to allow the case to progress in this Court.

proceed in full.  Hulu's own delay, the now concluded *Hulu I* IPRs, the early pre-institution stage of the *Hulu II* IPR petitions on only two patents, and the ongoing harm to DivX all weigh in favor of lifting the stay.

Even if the Court declines to lift the stay on the *Hulu II* patents, at least the *Hulu I* patents should be allowed to proceed.  Any simplification of *Hulu I* has already been achieved by the stay.  *Hulu II* IPRs cannot change the scope of the *Hulu I* proceeding. The Courts should be open to all litigants to have their disputes heard on the merits, and all litigants should be given a "just, speedy, and inexpensive determination of every action and proceeding" pursuant to Federal Rule of Civil Procedure 1.  Hulu's infringement of additional DivX patents should not be a basis to preclude adjudication of any of DivX's rights.  It would be unfair to penalize DivX for seeking the Court's assistance in a new matter by denying that very assistance to DivX on its earlier-filed claims.  If there is "even a fair possibility that the stay . . . will work damage to someone else," the party requesting the stay "must make out a clear case of hardship or inequity in being required to go forward."  Ex. 2, *Game and Tech*., slip op. 3.  There is no harm or inequity to Hulu if the stay is lifted and this case proceeds after this already lengthy stay.  As a court in this district observed, "[i]f litigation were stayed every time a claim in suit undergoes reexamination, federal infringement actions would be dogged by fits and starts."  Ex. 2, *Game and Tech*., slip op. 3.  But in this case, DivX would not even be allowed to start.  The totality of the circumstances weighs in favor of lifting the stay for the entire consolidated case.  At minimum, however, the totality of the circumstances strongly favors allowing the *Hulu I* patents to proceed.

## V.   CONCLUSION

The *Hulu I* IPRs are over.  Not a single patent has been eliminated.  There is no simplification to be gained from continuing the stay, but the prejudice from a stay to DivX is material.  This case is ready to proceed now on the merits in this Court.  For these reasons, DivX respectfully requests that the Court lift the stay in *Hulu I* and *Hulu II*.  In the alternative, DivX respectfully requests that the Court lift the stay in *Hulu I*.

Dated: January 8, 2022

Respectfully submitted,

_/s/  Matthew D, Powers_

Matthew D. Powers (Bar No. 104795)
matthew.powers@tensegritylawgroup.com
Paul T. Ehrlich (Bar No. 228543)
paul.ehrlich@tensegritylawgroup.com
William P. Nelson (Bar No. 196091)
william.nelson@tensegritylawgroup.com
Natasha M. Saputo (Bar No. 291151)
natasha.saputo@tensegritylawgroup.com
TENSEGRITY LAW GROUP, LLP
555 Twin Dolphin Drive, Suite 650
Redwood Shores, CA 94065
Telephone:   (650) 802-6000
Facsimile:    (650) 802-6001
DivX_Hulu_Service@tensegritylawgroup.com

Azra M. Hadzimehmedovic (Bar No. 239088)
azra@tensegritylawgroup.com
Aaron M. Nathan (Bar No. 251316)
aaron.nathan@tensegritylawgroup.com
Samantha A. Jameson (Bar No. 296411)
samantha.jameson@tensegritylawgroup.com
TENSEGRITY LAW GROUP, LLP
8260 Greensboro Drive, Suite 260
McLean, VA 22102
Telephone:   (703) 940-5033
Facsimile:    (650) 802-6001
DivX_Hulu_Service@tensegritylawgroup.com

David M. Stein, SBN 198256
dstein@brownrudnick.com
Brown Rudnick LLP
2211 Michelson Drive, 7th Floor
Irvine, CA 92612
Telephone:  (949) 752-7100
Facsimile:   (949) 252-1514

_Attorneys for Plaintiff_
_DivX, LLC_