MARY (MINDY) V. SOOTER
(*pro hac vice*)
Mindy.Sooter@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Telephone:   (720) 274-3135
Facsimile:    (720) 274-3133

JAMES M. DOWD (SBN 259578)
James.Dowd@wilmerhale.com
JASON F. CHOY (SBN 277583)
Jason.Choy@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
Telephone:   (213) 443-5300
Facsimile:    (213) 443-5400

Attorneys for Defendant and
Counterclaimant *Hulu, LLC*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIVX, LLC, a Delaware limited liability company,<br><br>        Plaintiff,<br><br>vs.<br><br>HULU, LLC, a Delaware limited liability company,<br><br>        Defendant. | Case No. 2:191-cv-01606 PSG-DFM<br><br>**DEFENDANT HULU LLC'S OPPOSITION TO DIVX LLC'S MOTION TO LIFT STAY** |
| HULU, LLC, a Delaware limited liability company,<br><br>        Counterclaimant,<br><br>vs.<br><br>DIVX, LLC, a Delaware limited liability company<br><br>        Counterclaim-Defendant. | Date: Feb. 25, 2022<br>Time: 1:30 p.m.<br>Judge: Hon. Philip S. Gutierrez<br>Room: 6A |

## TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ........................................................................................... 1

II.   FACTUAL BACKGROUND ......................................................................... 3

    A.    DivX, LLC Is a Hedge-Fund-Backed Entity Formed in 2018 ............... 3

    B.    *Hulu I* Was Stayed in Its Early Stages ................................................. 4

    C.    Each *Hulu I* IPR Added to the Record for Claim Construction ............ 5

    D.    IPRs of the *Hulu I* Patents Are Now on Appeal ................................... 7

    E.    The Court Consolidated *Hulu I* and *Hulu II* for Discovery and Claim Construction, and Stayed the Cases Before Claim Construction .......................................................................................... 7

    F.    Petitions for IPR of DivX's *Hulu II* Patents Remain Pending................ 9

    G.    An ITC Initial Determination Regarding the Asserted '486 Patent Is Expected in March 2022 ................................................................... 10

III.  LEGAL STANDARD ................................................................................. 11

IV.  LEGAL ARGUMENT ................................................................................ 12

    A.    Both Cases Remain at Early Stages and an Ongoing Stay Will Not Prejudice DivX.................................................................................... 12

    B.    The Ongoing Parallel Proceedings Will Streamline This Litigation and Inform This Court's Proceedings .................................................. 14

        1.    The Parallel Proceedings Will Bear on at Least Claim Construction and Validity.......................................................... 15

        2.    DivX's Arguments Regarding Simplification Proceed From Faulty Premises......................................................................... 18

        3.    *Hulu I* Should Not Proceed Alone .............................................. 21

V.    CONCLUSION .......................................................................................... 22

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Andrea Elecs. Corp. v. Apple Inc.*,
   2019 WL 3712120 (E.D.N.Y. Aug. 6, 2019) ....................................................... 14

*Baxter Healthcare Corp. v. Becton, Dickinson & Co.*,
   2021 WL 22553 (S.D. Cal. Jan. 4, 2021) ............................................................ 14

*Boston Sci. Corp. v. Cook Group Inc.*,
   2019 WL 2511162 (S.D. Ind. June 17, 2019) ........................................ 11, 17, 18

*DivX LLC v. Hulu, LLC*,
   Case No. 2:19-cv-1606 (C.D. Cal.) ............................................................. 1, 5, 8

*DivX LLC v. Hulu, LLC*,
   Case No. 2:21-cv-1615 (C.D. Cal.) ............................................................. 1, 8, 9

*Magseis FF LLC v. Seabed Geosolutions, Inc.*,
   2020 WL 1429338 (S.D. Tex. Mar. 19, 2020) ............................................ 14, 18

*Puget BioVentures, LLC v. Med. Device Bus. Servs., Inc.*,
   2017 WL 6947786 (N.D. Ind. Sept. 22, 2017) ................................................. 17

*Sling TV, LLC v. Uniloc 2017 LLC*,
   2022 WL 306468 (Fed. Cir. Feb. 2, 2022) ........................................................ 18

*TeleSign Corp. v. Twilio, Inc.*,
   2016 WL 6821111 (C.D. Cal. Mar. 9, 2016) ..................................................... 11

*Willis Elec. Co., Ltd. v. Polygroup Ltd.*,
   2018 WL 7690327 (D. Minn. Apr. 24, 2018) ......................................... 11, 17, 18

**Federal Statutes**

35 U.S.C. § 315(e)(2) ............................................................................................ 6, 15

ii

## I.     INTRODUCTION

DivX's motion to lift the stay should be denied. DivX asks the Court to resume litigation in both *Hulu I*[1] and *Hulu II*[2]— in which DivX alleges infringement of twelve different patents—claiming undue prejudice if the stay is extended. But a continued stay poses no prejudice to DivX. DivX is a hedge-fund-backed recent acquirer of the asserted patents that does not compete with Hulu and seeks only monetary damages. Under these circumstances, Courts regularly find no undue prejudice.

Moreover, judicial economy would best be served by extending the stay. At least nine of the twelve asserted patents are implicated in ongoing proceedings (or are directly related to patents implicated in those proceedings) that will draw to a close in approximately one year.

***First***, there are three pending *inter partes* review ("IPR") petitions challenging the validity of two patents asserted in *Hulu II*: U.S. Patent Nos. 10,257,443 (the "'443 patent") and 10,326,987 (the "'987 patent"). Those petitions were filed on September 3, 2021, and the Patent Trial and Appeal Board's ("PTAB's") decisions whether to institute those proceedings are due in mid-March (just weeks *after* the February 25, 2022, hearing date DivX selected). In addition to determining the validity of two asserted patents, those IPR proceedings will likely bear on DivX's infringement allegations. For example, for the '443 patent, DivX is already advancing arguments at the PTAB to narrow the scope of the claims. An IPR of the '443 patent, if either is instituted, would also potentially affect the related 8,472,792 (the "'792 patent") patent asserted in *Hulu I*. As the Court observed in its October Order, "[t]he Court will be able to better assess the extent to which any '443 IPR proceedings would simplify issues related to the '792 patent once the PTAB decides whether to institute the '443 proceedings." *Hulu II*, Dkt. 83 at 9. Those decisions have not yet occurred.

---

[1]     *DivX LLC v. Hulu, LLC*, Case No. 2:19-cv-1606 (C.D. Cal.) ("*Hulu I*").

[2]     *DivX LLC v. Hulu, LLC*, Case No. 2:21-cv-1615 (C.D. Cal.) ("*Hulu II*").

- 1 -

***Second***, there are ongoing appeals involving five of the seven patents asserted in *Hulu I*.  Hulu and Netflix have appealed the PTAB's decisions involving the following patents: U.S. Patent Nos. 8,139,651 (the "'651 patent"), 8,472,792 (the "'792 patent"), 9,270,720 (the "'720 patent"), 9,998,515 (the "'515 patent"), and 10,225,588 (the "'588 patent").  The issues on appeal involve not only validity, but also claim construction.

***Third***, DivX is concurrently litigating one of the asserted patents in parallel proceedings against different defendants[3] at the International Trade Commission ("ITC"): U.S. Patent No. 10,212,486 (the "'486 patent") (*Hulu I*).  DivX's allegations in the ITC overlap with its allegations here, and the respondent has challenged the validity of the '486 patent as obvious in light of the prior art.  The ALJ's Initial Determination on infringement, validity, and claim construction is due March 29, 2022, and that decision will then be subject to review by the Commission.

For the Court to resume proceedings in *Hulu I* and *Hulu II* now—when other proceedings involving at least nine of the twelve patents asserted in this case are underway—would result in duplicative work, and possibly lead to contradictory rulings.  On the other hand, maintaining the stay through approximately March 2023 will promote judicial efficiency, will avoid possibly conflicting findings, and will likely streamline the case.

---

[3]   The Respondents in the ITC are LG Electronics, Inc., LG Electronics USA, Inc., MediaTek Inc., MediaTek USA Inc., MStar Semiconductor, Inc., Realtek Semiconductor Corporation, Samsung Electronics America, Inc., Samsung Electronics Co., Ltd., Samsung Electronics HCMC CE Complex Co, Ltd., Shenzhen TCL New Technology Company Limited, TCL Electronics Holdings Ltd. f/k/a TCL Multimedia Technology Holdings Ltd., TCL King Electrical Appliances (Huizhou) Co. Ltd., TCL MOKA International Limited, TCL Smart Device (Vietnam) Company Ltd., TCL Technology Group Corporation f/k/a TCL Corporation, and TTE Technology, Inc.  Hulu understands that the Respondents other than the TCL entities have settled with DivX.

- 2 -

## II.   FACTUAL BACKGROUND

### A.   DivX, LLC Is a Hedge-Fund-Backed Entity Formed in 2018

Plaintiff DivX is a patent holding entity backed by a hedge fund owned by an international conglomerate.   In February 2018, the patent families at issue were acquired by Fortress Investment Group ("Fortress"), an investment management firm based in New York City.  Ex. 1 (Press Release[4]); Ex. 2 (Fortress Webpage[5]).  Fortress is a subsidiary of Softbank Group Corp., an international holding company with over $70 billion in annual revenues.  Ex. 3 (SoftBank Acquisition of Fortress[6]); Ex. 4 (SoftBank Information[7]).   After Fortress acquired the patents, Fortress transferred these patents to a newly created corporate entity, DivX CF Holdings, LLC.  *See Hulu II*, Dkt. 48-3 (Mot. to Dismiss, Ex. 1); *Hulu II*, Dkt. 48-5–Dkt. 48-9 (Mot. to Dismiss, Exs. 3-7).  DivX CF Holdings, LLC then changed its name to DivX, LLC.  *Hulu II*, Dkt. 48-5–Dkt. 48-9 (Mot. to Dismiss, Exs. 3-7).  DivX, LLC—the plaintiff in *Hulu I* and *Hulu II*—is owned by DivX CF Investors LLC, which appears to be another recently created Fortress corporate entity.  *Hulu I*, Dkt. 4 (identifying DivX CF Investors, LLC as a parent of DivX LLC); *Hulu II*, Dkt. 6 (same).

In its complaint and filings, DivX, LLC refers to "DivX," and appears to purposely blur the line between the current owner of the patents and the earlier operating company, DivX, Inc., which went public in September 2006.  In actuality, in the sixteen years since 2006, the patents have changed hands at least five times:

- In 2010 to Sonic Solutions, which acquired DivX

---

[4]   https://www.globenewswire.com/news-release/2018/02/12/1339475/0/en/Neu Lion-Closes-Transaction-With-An-Affiliate-of-Fortress-Investment-Group.html (last visited February 4, 2022).

[5]   https://www.fortress.com/about (last visited February 4, 2022).

[6]   https://www.fortress.com/shareholders/news/2017-12-27-softbank-group-completes-acquisition-of-fortress-investment-group (last visited February 4, 2022).

[7]   https://www.forbes.com/companies/softbank/?sh=1a3909326cf8  (last visited February 4, 2022).

- In 2011 to Rovi, which acquired Sonic Solutions
- In 2014 to Parallax Capital Partners and StepStone Group, when Rovi sold DivX
- In 2015 to NeuLion, Inc., which acquired DivX
- In 2018, to Fortress, which acquired certain DivX assets

Since acquiring the patents in this case, Fortress-backed DivX has sued not only Netflix and Hulu, but also Samsung, TCL, LG and Mediatek, among others.

This is not Fortress's only litigation campaign. To the contrary, Fortress regularly creates corporate entities like DivX for the purpose of acquiring patents and suing operating companies in search of outsized rates of return for Fortress's investors. *See, e.g.*, Ex. 5 (Reuters Article) ("A U.S. jury … ruled in favor of Intel Corp in a patent infringement lawsuit filed against it by VLSI Technology LLC. VLSI, a unit of hedge fund Fortress Investment Group, had sued Intel in April 2019…. VLSI had sought $3.1 billion in damages.").[8]

### B.   *Hulu I* Was Stayed in Its Early Stages

DivX sued Hulu on March 4, 2019, alleging that Hulu infringes seven U.S. patents (collectively the "*Hulu I* Asserted Patents").[9] In its complaint, DivX asks for money damages only, and does not seek an injunction. *Hulu I*, Dkt. 59 (First Amended Complaint), Prayer For Relief.

Hulu petitioned for IPR with respect to six of the seven patents and moved for a stay. *Hulu I*, Dkt. 100 (Hulu's Mot. to Stay Pending IPR); *see also Hulu I*, Dkt. 113 (Corrected Mem. P. & A. ISO Mot. To Stay Pending IPR) at 3 (identifying asserted patents and claims challenged by Hulu in petitions for IPR).

On May 11, 2020, this Court granted Hulu's motion. *Hulu I*, Dkt. 122 (Order

---

[8]   https://www.reuters.com/technology/intel-defeats-vlsi-technology-31-bln-patent-trial-2021-04-21/ (last visited February 4, 2022).

[9]   The '673 patent, the '651 patent, the '792 patent, the '720 patent, the '515 patent, the '486 patent, and the '588 patent.

- 4 -

on Mot. to Stay) at 8. The Court found that the totality of the circumstances and all three relevant factors favored a stay. *Id.* at 4-8. Regarding the "stage of the proceedings" factor, the Court found that *Hulu I* was in an "early stage[]" and that "there is significantly more work left to be done" in that case "compared to work that has already been completed."[10] *Id.* at 4. Regarding the "simplification of the issues" factor, the Court found that "there is a possibility, for instance, that the parties make characterizations about the scope of the claim language in IPR proceedings that become relevant to their disputes in this case, even to claims not challenged in IPR," and thus "judicial resources would be better served by at least waiting to see the outcomes of [Hulu's] pending IPR petitions." *Id.* at 5-6. Regarding the "possibility of undue prejudice" factor, the Court found that Hulu "timely brought" its motion to stay and that "Plaintiff [DivX] does not dispute that [Hulu] do[es] not complete against Plaintiff." *Id.* at 6. Finally, the Court found that "the totality of the circumstances – including the competing interests presented by the parties and the efficient management of this Court's docket – support a stay pending review of asserted patent claims by a specialty administrative agency specifically established for that purpose." *Id.* at 7.

The Court stayed *Hulu I* before claim construction briefing started, and approximately four months before the scheduled claim construction hearing. *Id.* at 2 (staying case on May 11, 2020 before scheduled Aug. 31, 2020 claim construction hearing).

**C.   Each *Hulu I* IPR Added to the Record for Claim Construction**

Following the Court's order staying the case, the PTAB instituted review in all

---

[10]   The Court also found that "[t]he coronavirus pandemic is also a relevant consideration," noting that "[i]t is likely that if [*Hulu I* was] to proceed on [its] current schedule, hearings and trial would be subject to delays, particularly because criminal matters will take priority over these patent infringement actions." *Hulu I*, Dkt. 122 (Order on Mot. to Stay) at 5.

six of Hulu and Netflix's petitions for IPR.  While (as DivX points out) just one of the asserted claims currently asserted in *Hulu I* was invalidated by the PTAB, this statistic severely mischaracterizes the IPRs' impact on this litigation.  The PTAB found that many elements of the asserted claims were already known in the prior art, invalidated 16 challenged claims, and triggered the estoppel of 35 U.S.C. § 315(e)(2).

Moreover, in each IPR, to avoid the prior art, DivX took positions on the patent's scope and argued for narrow interpretations of the claims.  As the Court correctly anticipated, the *Hulu I* IPR proceedings involved claim language "relevant to" the parties' "disputes in this case." *Hulu I*, Dkt. 122 (Order on Mot. to Stay) at 6. Some of DivX's arguments related to phrases found in claims it is now asserting:

- In the '651 IPR, DivX argued that the claimed "'level of detail' is a property of a region of video that must assess how adjacent pixels vary relative to each other: as one moves 'across adjacent pixels' in the region . . . ."  Ex. 6, Fed. Cir. Appeal No. 21-1931, Dkt. 17 (Resp. Br.) at 8; *see also* IPR2020-00052, Dkt. 22 (Patent Owner Response ("POR")) at 14-16.

- In the '673 IPR, DivX argued that the claimed "synchronized frame decryption stream" must "provide decryption information for each encrypted frame, and form a 'stream' with the frame decryption information synchronized with each corresponding encrypted frame in the set of encrypted frames so as to provide each frame's decryption information."  IPR2020-00614, Dkt. 22 (POR) at 39.

- In the '588 IPR, DivX argued that the limitation "within the requested portions of the selected stream of protected video" modifies "locating," and requires that the "encryption information" be "located" "within the requested portions of the selected stream of protected video."  IPR2020-00558, Dkt. 17 (POR) at 25.

- In the '792 IPR, DivX argued that the limitation "the first and second indexes enabling trick play functionality" requires "trick play functionality that utilizes both the first and the second indexes."  IPR2020-00646, Dkt. 20 (POR) at 40.

- In the '720 IPR, DivX argued that "limitations 1[c]-1[e] require 'retrieving' and 'filtering' a 'list of assets' to create a 'filtered list of assets,' and then 'generating a top level index file describing each asset in' that 'filtered list of assets.'"  IPR 2020-00647, Dkt. 14 (POR) at 2.

- In the '515 IPR, DivX argued that "in order to meet limitations 1[d] and 1[e], there must be a 'list of assets' that is both 'retreiv[ed] and 'filter[ed].'"  IPR 2020-00648, Dkt. 14 (POR) at 2.

### D.   IPRs of the *Hulu I* Patents Are Now on Appeal

Hulu and Netflix are currently appealing the outcomes of the five IPRs in which the PTAB upheld some or all of the challenged claims.  Hulu expects that these appeals will involve the claim scope and claim construction issues DivX raised during the IPRs, and will likely, therefore, have a bearing on the interpretation of asserted claims.

Hulu expects that these appeals will be complete by mid-2023.  The table in Appendix A, *infra*, lists the projected dates for appellate decisions, based on an average of 18 months between Final Written Decision ("FWD") and appellate decision.  *See Hulu I*, Dkt. 144-1 ("DivX Br.") at 11 (citing the Federal Circuit's report regarding "Median Disposition Time for Cases Terminated After Hearing or Submission").  Under that assumption, the appeals will be complete by mid-2023.

### E.   The Court Consolidated *Hulu I* and *Hulu II* for Discovery and Claim Construction, and Stayed the Cases Before Claim Construction

On February 22, 2021, DivX filed a second action against Hulu, alleging infringement of five U.S. Patents (collectively the "*Hulu II* Asserted Patents").[11]  As in *Hulu I*, DivX only seeks money damages, not an injunction.  *Hulu II*, Dkt. 57 (First Amended Complaint), Prayer For Relief.

---

[11]   The '443 patent,'141 patent,'987 patent,'318 patent, and 10,542,061 (the "'061 patent").

1    Hulu filed a partial motion to dismiss, which the Court granted in part.  *Hulu*
2    *II*, Dkt. 55 (granting-in-part motion to dismiss). Following DivX's amended
3    complaint, Hulu filed a Motion to Consolidate *Hulu I* and *Hulu II* and to stay the
4    proceedings, which the Court granted.   *Hulu II*, Dkt. 83 (granting motion to
5    consolidate and stay).  Regarding consolidation, the Court found that "the similar
6    claim limitation language DivX asserts concerning claims in each case—even for
7    unrelated patents such as the '443 and '486 patents—indicates the cases will likely
8    involve common questions regarding claim construction." *Id.* at 5; *see also Hulu II*,
9    Dkt. 66-1 (Hulu Mem. P&A ISO Mot. To Consolidate & Stay) at 5-8 (identifying
10   overlapping allegations and witnesses in *Hulu I* and *Hulu II*).  The Court concluded
11   that "given the early stages of both cases and the overlapping issues and evidence,
12   pretrial consolidation will streamline discovery and create efficiencies for the parties
13   without causing substantial delay or prejudice," and "[i]t will also conserve judicial
14   resources by obviating the need for two separate claim construction hearings and
15   allowing for more efficient administration of the litigation," whereas "failure to
16   consolidate pretrial would require the parties and the Court to duplicate substantial
17   effort through the discovery and claim construction process." *Hulu II*, Dkt. 83 at 6.

18   Regarding a stay, the Court found that the stage of proceedings, lack of undue
19   prejudice, and totality of the circumstances favored a stay and found the simplification
20   of issues factor neutral. *Id.* at 7-12.  Regarding the "stage of the proceedings" factor,
21   the Court found that *Hulu II* was in an "an even earlier stage" than *Hulu I*. *Id.* at 8.
22   Regarding the "simplification of the issues" factor, the Court found that "it 'clouds
23   the simplification inquiry' that the PTAB has not yet decided whether to institute IPR
24   for the '443 and '987 patents at issue in *Hulu II*," and that "[t]he Court will be able to
25   better assess the extent to which any '443 IPR proceedings would simplify issues
26   related to the '792 patent once the PTAB decides whether to institute the '443
27   proceedings." *Id.* at 9.  Regarding the "possibility of undue prejudice" factor, the

28

- 8 -

Court found that Hulu "has not 'unduly delay[ed]' seeking IPR of the patents at issue in *Hulu II*" and that "Hulu and DivX are not direct competitors" such that "damages can adequately compensate for any harm from a stay." *Id.* at 11. Finally, the Court found that "the totality of the circumstances – including that *Hulu I* is already stayed and that the Court will have more information about how many IPR petitions for patents asserted in *Hulu II* have been instituted" by the time a party could move to lift the stay weigh in favor of a stay. *Id.* at 12.

### F.   Petitions for IPR of DivX's *Hulu II* Patents Remain Pending

As the Court acknowledged in its Order granting the stay in *Hulu II*, Hulu filed two petitions for IPR of the '443 patent on September 3, 2021, each challenging all claims for which DivX alleges infringement.   IPR2021-01418, Dkt. 4 (Petition), IPR2021-01419, Dkt. 4 (Petition).  DivX filed Patent Owner's Preliminary Responses ("POPRs") on December 16 & 17, 2021.  IPR2021-01418, Dkt. 8 (POPR), IPR2021-01419, Dkt. 8 (POPR).  In each POPR, DivX made arguments to narrow the scope of the claims.  *See, e.g.*, IPR2021-01418, Dkt. 8 (POPR) at 8 (DivX arguing that the "claimed 'offset value' must be 'within an encoded frame' not 'relative to the file.'"). In fact, the PTAB permitted Hulu to file a Reply specifically on a claim construction issue unexpectedly raised by DivX.  Ex. 7 (Jan 7, 2022 Tr.) at 27:17-21, 29:1-16.  The PTAB's institution decisions on Hulu's petitions for IPR of the '443 patent are expected on March 16 & 17, 2022.

In addition, and as the Court also acknowledged, a third party petitioned for IPR of the '987 patent on September 3, 2021.  IPR2021-01476, Dkt. 1 (Petition). DivX filed its POPR on December 22, 2021.  IPR2021-01476, Dkt. 7 (POPR).  In its POPR, DivX argued that the Petition did not sufficiently address "how the challenged claims are supposed to be construed" and then once again engaged in claim construction arguments.  *Id.* at 1-2 (arguing that "the claims require a series of steps to occur 'during an initial startup period.'").  In its POPR, DivX also makes statements

- 9 -

characterizing the alleged invention of the '987 patent.  *Id.* at 1 (characterizing the invention as "adaptive bitrate streaming using two successive techniques for switching streams" and contending that "[b]y combining these different techniques…the invention is able to begin playback quickly using the first technique and then, once a buffer is sufficiently built up, prevent playback stalls using the second stream-switching technique.")  The PTAB's institution decision on the '987 patent is expected on March 22, 2022.

If IPRs are instituted for the '443 and '987 patents, FWDs would be due one year after institution—in March 2023.

Hulu does not plan to file petitions on additional patents asserted in *Hulu II* before the February 22, 2022 statutory deadline.

### G.     An ITC Initial Determination Regarding the Asserted '486 Patent Is Expected in March 2022

Since filing *Hulu I*, DivX has filed six district court cases and two ITC Investigations against Samsung Electronics Co., Ltd. ("Samsung"), TCL Corporation ("TCL"), LG Electronics, Inc. ("LG"), and others.  As DivX notes in its motion, it has settled its claims against Samsung and LG.  DivX Br. at 21, 22 n.8.  DivX's litigations with TCL, including two separate ITC Investigations, remain pending, with the ALJ's Initial Determination ("ID") in Investigation No. 337-TA-1222 due on March 29, 2022.  Ex. 8, ITC Investigation No. 337-TA-1222, Order No. 71.  That Investigation involves the '486 patent asserted in *Hulu I*.  DivX's infringement allegations at the ITC appear to implicate video streaming technology and video streaming standards, as at issue in *Hulu I* and *Hulu II*.  Importantly, the ID is expected to address invalidity of the '486 patent, and one of the parties' claim construction disputes.  Ex. 9, ITC Investigation No. 337-TA-1222, TCL Respondents' Initial Post-Hearing Brief, at 1 ("At the final prehearing conference, the ALJ stated that the meaning of the claim term 'video decoder,' as used in the '486 patent, would be decided as part of the

- 10 -

1   evidentiary hearing."). The ALJ's ID will be reviewed by the Commission, which

2   will issue a Final Determination by July 29, 2022. *Id.*

3   **III.   LEGAL STANDARD**

4       "Courts have [the] inherent power to manage their dockets and stay

5   proceedings." *TeleSign Corp. v. Twilio, Inc.*, 2016 WL 6821111, at *2 (C.D. Cal.

6   Mar. 9, 2016). (quoting *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426 (Fed. Cir. 1988)).

7   When deciding if a stay is appropriate, courts consider: "(1) whether discovery is

8   complete and whether a trial date has been set; (2) whether a stay will simplify the

9   issues in question and trial of the case; and (3) whether a stay would unduly prejudice

10  or present a clear tactical disadvantage to the nonmoving party." *See id.* (quoting

11  *Wonderland Nursery Goods Co. v. Baby Trend, Inc.*, 2015 WL 1809309, at *2 (C.D.

12  Cal. Apr. 20, 2015)). While courts should consider "the totality of the circumstances,"

13  *id.*, "[t]here is a 'liberal policy in favor of granting motions to stay proceedings

14  pending the outcome' of re-examination [and IPRs], especially in cases that are still

15  in the initial stages of litigation and where there has been little or no discovery." *Id.*

16  (quoting *Pi-Net Int'l, Inc. v. Hertz. Corp.*, 2013 WL 7158011, at *2 (C.D. Cal, June

17  5, 2013)).

18      In deciding whether to continue a stay pending appeal of an IPR, courts

19  consider the same factors. *See, e.g.*, *Boston Sci. Corp. v. Cook Group Inc.*, 2019 WL

20  2511162, at *3 (S.D. Ind. June 17, 2019) (finding that the simplification of issues

21  factor "weighs heavily in favor of maintaining the stay" through Federal Circuit

22  appeals of IPRs because "[t]he opportunity to simplify issues and the scope of

23  proceedings will streamline the litigation process and avoid duplicative proceedings,

24  saving the Court resources"); *see also Willis Elec. Co., Ltd. v. Polygroup Ltd.*, 2018

25  WL 7690327, at *1 (D. Minn. Apr. 24, 2018) ("Waiting to begin this litigation until

26  the Federal Circuit resolves the appeal will be useful in simplifying and narrowing

27  the issues.").

28

- 11 -

# IV.  LEGAL ARGUMENT

## A.  Both Cases Remain at Early Stages and an Ongoing Stay Will Not Prejudice DivX

The Court has twice correctly concluded that the stage of the proceedings weighs in favor of a stay, because *Hulu I* and *Hulu II* are both in early phases. *Hulu I* Dkt. 122 at 5, *Hulu II*, Dkt. 83 at 8. Neither the status of the cases nor the bases for the Court's findings has changed.

Because it knows the stage of the proceedings weighs against lifting the stay, DivX argues that this factor should be ignored. DivX Br. at 6-7. DivX claims that it filed this case in 2019, a further stay may last years, and a stay of that length will result in undue prejudice. DivX is incorrect.

Taking undue prejudice first, the Court has twice found that DivX will not be prejudiced by a delay because Hulu and DivX do not directly compete, and "damages can adequately compensate for any harm from a stay." *Hulu II*, Dkt. 83 at 11; *see also Hulu I* Dkt. 122 at 6-7. The facts underlying that finding have not changed and DivX's new arguments of prejudice should be rejected. In fact, DivX is not the operating company it implies it is. Regardless of whether *other* entities named "DivX" were previously operating companies, the *current* DivX entity is simply a patent monetization entity that obtained these patents in 2018. Importantly, the asserted patents have been bought and sold many times and are now simply investments made by a hedge fund in an effort to drive returns for its investors. *See* Ex. 2 (Fortress Webpage, https://www.fortress.com/about (last visited February 4, 2022)) ("Investment performance is our cornerstone – we strive to generate strong risk adjusted returns for our investors over the long term."). Neither DivX nor its hedge-fund owner will suffer prejudice as the result of an ongoing stay.

Given that it does not compete with Hulu, DivX instead argues that Hulu's stay

- 12 -

1  somehow causes other potential licensees to hold off on taking a license.[12]  But DivX

2  provides *absolutely no detail or support* for this argument, and the Court should not

3  accept it *ipse dixit*.[13]   In fact, DivX's own complaint and brief on this motion show

4  otherwise.  *Hulu II*, Dkt. 57 (First Am. Compl.) ¶ 28 (alleging that DivX's patented

5  technologies have been incorporated into "more than one and a half billion" of its

6  licensees' consumer electronics ("CE") devices); DivX Br. at 21 (touting licenses

7  with Samsung, LG, and Hubee "a major supplier of multi-screen entertainment

8  solutions").

9          DivX's arguments that Hulu has unnecessarily delayed this litigation should

10  likewise be rejected.  As an initial matter, DivX exaggerates the length of a stay.  Hulu

11  is not proposing a stay of many years, but a stay of approximately one year, until

12  March 2023, which would allow the parallel proceedings to play out.  *See* Appendix

13  A, *infra*.

14          Moreover, DivX is responsible for the timing of these proceedings, and Hulu

15  has not delayed them unnecessarily.  Hulu filed its *Hulu I* IPR petitions by the

16  statutory one-year deadline, and DivX never previously argued those petitions were

17  untimely.  For the *Hulu II* patents, Hulu filed its IPR petitions 5 months *before* the

18  one-year statutory bar.  *Hulu I*, Dkt. 122 at 6, *Hulu II*, Dkt. 83 at 10-11.  Likewise, the

19  Court already twice found that Hulu was prompt in filing its motions to stay, and

20  nothing has changed that analysis.  Dkt. 122 at 6, *Hulu II*, Dkt. 83 at 10-11.

21          In contrast, no owner of the DivX patents has brought a timely suit against

22

---

23  [12]  To the extent DivX argues that it is harmed by the stay because Hulu will not
24  take a license, that is precisely the alleged harm that could be adequately compensated
     with the money damages DivX seeks in these suits, as the Court has twice found.  Dkt.
25  122 at 6-7, *Hulu II, Dkt. 83* at 11.
26  [13]  DivX provides no evidence that the stay is the reason other potential licensees
     have refused to take a license.  Such third parties, to the extent they exist, could
27  believe that DivX's patents are invalid, not infringed, or not worth licensing for any
     number of other reasons.

28                                              - 13 -

Hulu.  For example, the *Hulu I* patents issued as early as 2007—*more than eleven years* before the case was filed.   And the *Hulu II* patents issued as early as 2017— more than three years before *Hulu II* was filed.  In view of the years between the filing of these suits and the dates when many of these patents issued, the time it will take the PTAB and Federal Circuit to determine whether dozens of asserted claims are invalid can hardly prejudice DivX.

Finally, contrary to DivX's arguments to ignore the early stage of the proceedings, courts across the country have found the stage of proceedings weighs against lifting a stay pending appeal of IPR decisions and denied motions to stay.  *See, e.g.*, *Baxter Healthcare Corp. v. Becton, Dickinson & Co.*, 2021 WL 22553, at *2 (S.D. Cal. Jan. 4, 2021) ("The Court finds the early stage in proceedings weighs against lifting the stay."); *Andrea Elecs. Corp. v. Apple Inc.*, 2019 WL 3712120, at *2 (E.D.N.Y. Aug. 6, 2019) ("[N]o fact or expert discovery in this Court has taken place. The Court recognizes that this case was stayed in its infancy which is why it remains in such early stages, and that it will never move past the early stages unless the stay is lifted. However, [Defendant] merely requests to continue the status quo, rather than to halt a case that was steadily moving towards trial, which weighs in favor of continuing the stay."); *Magseis FF LLC v. Seabed Geosolutions, Inc.*, 2020 WL 1429338, at *3 (S.D. Tex. Mar. 19, 2020) ("The case has not been scheduled for docket call, and no trial date has been set. This factor weighs in favor of continuing the stay.").

In short, DivX's claims of prejudice ring hollow, and the stage of the proceedings continues to weigh in favor of a stay pending IPR.

**B.**  **The Ongoing Parallel Proceedings Will Streamline This Litigation and Inform This Court's Proceedings**

The pending IPRs, appeals, and ITC proceedings will all have a bearing on issues involved in the present case.  In fact, at least nine of the twelve asserted patents

- 14 -

1   will be directly or indirectly affected by an ongoing, parallel proceeding.   *See*

2   Appendix A, *infra*.

3       **1.   The Parallel Proceedings Will Bear on at Least Claim Construction and Validity**

4

5       Assuming the PTAB institutes proceedings for the pending IPR petitions, all of

6   the parallel proceedings will address the validity of the asserted patents as well as

7   claim interpretation.  As summarized in Appendix A, *infra*, most of these proceedings

8   are scheduled to conclude in approximately one year.

9       **'443 and '987 patents (*Hulu II*):** Due to the early filings of the *Hulu II* IPRs,

10  all three of the PTAB's Institution Decisions are due by March 22, 2022, shortly after

11  the February 25, 2022, hearing date on this Motion.  For any instituted IPRs, the

12  PTAB's Final Written Decisions, addressing the validity of any instituted claims, will

13  issue one year later, in March 2023.  In addition to evaluating the validity of the

14  challenged claims as well as claim construction issues, the Final Written Decisions

15  will trigger the estoppel provisions of 35 U.S.C. § 315(e)(2).  For example, in its

16  response to Hulu's petitions for IPR of the '443 patent, DivX argued that a term

17  appearing in all challenged claims[14] should be construed narrowly to avoid the prior

18  art.  DivX POPR at 22-23.  As a result, any instituted IPR proceedings for the '443

19  patent would be highly relevant to claim interpretation for the disputed term.

20      **'651, '792, '720, '515, '588 patents (*Hulu I*) and '061 patent (*Hulu II*):** At

21  the same time any *Hulu II* IPRs are proceeding before the PTAB, the *Hulu I* PTAB

22  Appeals will proceed before the Federal Circuit Court of Appeals.  The appeals affect

23  five patents asserted in *Hulu I* and one related patent that is asserted in *Hulu II*.

24  According to DivX's own estimates for the duration of the appellate process, these

25  appeals are expected to conclude in late 2022 and early 2023.  DivX Br. at 11 (noting

26

27  _____

    [14]  The disputed term is "an offset value that points to the start of encrypted block
28  within an encoded frame."  *See* IPR2021-01418, Dkt. 8 (POPR) at 3-19, 22.

- 15 -

the median time from FWD to Federal Circuit decision is between 17 and 18 months). Each of these appeals involves validity of asserted patents, and most also involve claim construction issues.[15]

For example, the appeal of the '651 FWD involves a claim construction issue related to whether the claimed "'level of detail' is a property of a region of video that must assess how adjacent pixels vary relative to each other: as one moves 'across adjacent pixels' in the region . . . ."  Ex. 6, Fed. Cir. Appeal No. 21-1931, Dkt. 17 (Resp. Br.) at 8; *see also* Ex. 10, IPR2020-000052, Dkt. 83 (Notice of Appeal) (identifying "[t]he PTAB's erroneous construction of the claims, including for the term 'level of detail'" as an issue for appeal).

**'486 patent (*Hulu I*):** In parallel with any instituted *Hulu II* IPRs and the *Hulu I* appeals, the International Trade Commission ALJ is due to issue her Initial Determination on March 29, 2022, and the Commission will likely issue a Final Determination (or remand to the ALJ) by July 29, 2022. Ex. 8, ITC Investigation No. 337-TA-1222, Order No. 71 (Initial Determination Extending The Target Date) (extending the target date for completion of the Investigation to July 29, 2022). These proceedings address the '486 patent from *Hulu I*. While not binding on this Court,

---

[15] In addition to the pending appeals, the deadline for DivX to file a notice of appeal of the PTAB's FWD in the '673 IPR is February 18, 2022. That FWD found all 15 challenged claims invalid and rejected claim construction arguments DivX made throughout the proceedings—including arguments regarding the term "synchronized frame decryption stream." IPR2020-00614, Dkt. 70 (FWD) at 22 ("The claim term ['synchronized frame decryption stream'] does not require sending frame decryption information with *each* corresponding frame in a 1:1 correspondence, contrary to Patent Owner's arguments."). The term "synchronized frame decryption stream" also appears in the only claim DivX asserts against Hulu in *Hulu I*, claim 29. *Hulu I*, Dkt. 59-1 ('673 patent) at claim 29. If DivX appeals the '673 FWD, its notice of appeal will reveal whether DivX appeals the PTAB's construction of that term, which would be highly relevant to this factor and to claim construction.

- 16 -

DivX's allegations and the Respondents' defenses overlap with the issues here. For example, the Respondent has challenged the validity of the '486 patent, and the ALJ's Initial Determination is expected to address the meaning of the '486 claim term "video decoder," which also   appears in the '486 claims asserted in *Hulu I*.[16] Ex. 9, ITC Investigation No. 337-TA-1222, TCL Respondents' Initial Post-Hearing Brief, at 1 ("At the final prehearing conference, the ALJ stated that the meaning of the claim term 'video decoder,' as used in the '486 patent, would be decided as part of the evidentiary hearing.").

As many similarly situated courts have found, given the number of decisions that bear on validity and claim construction in the parallel proceedings, it would make little sense to lift the stay and start claim construction now. *See, e.g.*, *Boston Sci. Corp.*, 2019 WL 2511162, at *3 (finding that the simplification of issues factor "weighs heavily in favor of maintaining the stay" through Federal Circuit appeals of IPRs because "[t]he opportunity to simplify issues and the scope of proceedings will streamline the litigation process and avoid duplicative proceedings, saving the Court resources"); *see also id.* at *2 ("Importantly, 'the benefits to the Court from any opinion of the Federal Circuit might offer cannot be overstated in light of the Federal Circuit's unique expertise in the patent realm.'") (internal citation omitted); *see also* Ex. 11, *Willis Elec. Co.*, 2018 WL 7690327, at *1 (D. Minn. Apr. 24, 2018) ("Waiting to begin this litigation until the Federal Circuit resolves the appeal will be useful in simplifying and narrowing the issues."); *Puget BioVentures, LLC v. Med. Device Bus. Servs., Inc.*, 2017 WL 6947786, at *4 (N.D. Ind. Sept. 22, 2017) (granting motion to stay pending resolution of IPR appeals because "any decisions—particularly related to claim construction—this Court might reach during the pendency of Defendant's

---

[16] *Compare Hulu I*, Dkt. 115 (DivX Opposition To Motion To Stay) at 3 (identifying '486 claims 1, 4, 8, 15, and 21 as asserted) *with Hulu I*, Dkt. 59-6 ('486 patent) at claim 1, col. 11, lines 25-26 (claiming "decoding each decrypted frame for rendering on a display device using the *video decoder*." (emphasis added)).

1   appeal to the Federal Circuit could end up in variance with the Federal Circuit's

2   ruling").

### 2.   DivX's Arguments Regarding Simplification Proceed From Faulty Premises

5       DivX's arguments regarding simplification proceed from faulty premises.

6   ***First***, despite the Court's order consolidating *Hulu I* and *Hulu II*, DivX addresses

7   *Hulu I* separately for this factor.  DivX Br. at 9 ("*Hulu I* Will Not Be Simplified By

8   Continuing The Stay").  In so doing, DivX ignores the facts.  The Court has already

9   found that "pretrial consolidation will streamline discovery and create efficiencies for

10  the parties without causing significant delay or prejudice." *Hulu II*, Dkt. 83 at 6.  By

11  addressing simplification of *Hulu I* separately, DivX improperly disregards the

12  Court's consolidation Order and fails to address the material question—whether

13  continuing the stay will simplify the *consolidated* case.

14      Moreover, the appeals of the FWDs in the *Hulu I* IPRs all address validity.

15  While DivX downplays the likelihood of success of those appeals, each appeal could

16  also simplify the proceedings by eliminating asserted patents or claims, particularly

17  those that turn on claim construction issues.  For example, just this week the Federal

18  Circuit vacated a FWD upholding patent claims, finding that the PTAB erred in its

19  claim construction.  *Sling TV, LLC v. Uniloc 2017 LLC*, 2022 WL 306468 at *3 (Fed.

20  Cir. Feb. 2, 2022) (vacating a FWD finding challenged claims not invalid and

21  remanding for further proceedings because "the Board's claim construction" of a key

22  term "is incorrect").

23      ***Second***, DivX incorrectly assumes that the only way IPRs and appeals can

24  simplify proceedings is by invalidating asserted claims.  Even if the claims are

25  ultimately upheld, the PTAB and Federal Circuit will likely opine on how the prior

26  art compares to the claims, determine that many duplicative claim elements are found

27  in the prior art, and also explain the scope of the claims.  This is why courts throughout

28

- 18 -

the country have elected to continue stays through completion of Federal Circuit appeals in order to streamline claim construction and avoid inconsistent rulings. *See, e.g.*, *Boston Sci. Corp.*, 2019 WL 2511162, at *3 (finding that the simplification of issues factor "weighs heavily in favor of maintaining the stay" through Federal Circuit appeals of IPRs because "[t]he opportunity to simplify issues and the scope of proceedings will streamline the litigation process and avoid duplicative proceedings, saving the Court resources"); *see also Willis Elec. Co.*, 2018 WL 7690327, at 2 ("Waiting to begin this litigation until the Federal Circuit resolves the appeal will be useful in simplifying and narrowing the issues."); *Magseis*, 2020 WL 1429338 at *3 (denying a motion for reconsideration of an order denying a motion to lift a stay pending appeal of IPR decisions and finding that the stage of proceedings weighs in favor of a stay where "there has been no claim construction briefing or ruling in this Court"). This Court would be well within its discretion to find that the simplification of issues factor favors a stay for the same reasons.

The record in the IPRs to date confirms that continuing the stay will simplify the consolidated case. DivX made statements relevant to claim construction in each IPR of a *Hulu I* patent, and the pending *Hulu I* appeals and petitions for IPR of *Hulu II* patents are highly likely to yield more. *See* 5-10, *supra*. Thus, in focusing on whether IPRs have "eliminated" patents from the case and whether the pending appeals are likely to eliminate asserted patents or claims (*see* DivX Br. at 9-13), DivX understates the importance of the IPRs. The key question for the simplification factor is whether continuing the stay is likely to streamline the litigation and conserve judicial and party resources. Far from "speculative," it is a near certainty that the forthcoming PTAB and Federal Circuit decisions in the *Hulu II* petitions for IPR and the '651 appeal will streamline the litigation by providing information relevant to claim construction and the prior art.

In any event, none of DivX's seven arguments about the *Hulu II* IPRs shifts the

- 19 -

balance of the simplification factor in favor of lifting the stay.

*First*, DivX's argument that the "*Hulu II* IPRs should not have different results" from the *Hulu I* IPRs is pure speculation.  DivX Br. at 13.  Each petition for IPR rises and falls on its own merits.  In any event, the Court need only wait a few short weeks after the February 25, 2022 hearing to learn whether the PTAB has instituted one or more of the pending IPR petitions.

*Second*, DivX argues that the IPR results for the *Hulu I* patents "favor allowing the related *Hulu II* patents to proceed" in parallel with any *Hulu II* IPRs.  DivX Br. at 13-14.  Allowing some asserted patents to proceed while other patents remain stayed would undo the efficiencies gained when the Court consolidated *Hulu I* and *Hulu II* just four months ago.  *See Hulu II*, Dkt. 83 at 6 ("[F]ailure to consolidate pretrial would require the parties and the Court to duplicate substantial effort through discovery and claim construction.").

*Third*, DivX argues that the *Hulu II* IPRs will not simplify the consolidated case because the *Hulu I* patents will be litigated in the consolidated case regardless of the outcome of the *Hulu II* IPRs.  DivX Br. at 14.  Even setting aside the possibility that some of the *Hulu I* IPR decisions will be set aside or remanded on appeal, the Court has already decided that the most efficient way forward is to hold a single, consolidated claim construction hearing.  Thus, the relevant question is whether that consolidated claim construction hearing would be more efficient after the *Hulu II* IPRs than before.  For all the reasons discussed above, it would be more efficient after at least the institution decisions on the *Hulu II* IPRs and the completion of those IPRs if instituted.

*Fourth*, DivX argues that Hulu will have to provide the same discovery after the stay regardless of the outcome of the *Hulu II* IPRs.  DivX Br. at 14-15.  Again, DivX ignores the fact that the Federal Circuit will review the PTAB's decisions on the *Hulu I* patents, and that the Federal Circuit does not hesitate to set aside the

- 20 -

PTAB's decisions when appropriate.  Moreover, DivX's argument assumes that the Court lifts the stay on part of the consolidated case, which Hulu opposes.  As a result, this argument has no bearing on the question before the Court now, which is whether to lift the stay in the first place.

*Fifth*, DivX argues that Hulu's argument against discretionary denial "diminishe[s]" the potential simplification from a stay.  DivX Br. at 15.  DivX again fails to account for the benefit of having the PTAB's insight into claim construction— as opposed to invalidity—before the Court invests its own resources into claim construction.

*Sixth*, DivX argues that only two of the five asserted patents and only one of four '987 asserted claims in *Hulu II* have been challenged in IPR.  DivX Br. at 16.  But the fact remains: successful IPRs could not only eliminate the '443 patent and the only asserted independent claim from the '987 patent, but also, as explained above, the claim construction issues will impact all asserted claims of these patents.

*Seventh*, DivX argues that the "pre-institution status of the *Hulu II* IPRs" weighs against a stay.  DivX Br. at 16-17.  The PTAB's March 2022 deadlines for institution decisions in the *Hulu II* IPRs are less than a month after the February 25, 2022 hearing date DivX noticed for this motion.  The fact that DivX noticed this motion for less than a month before those institution decisions hardly justifies lifting the stay before the Court has the opportunity to consider those decisions in weighing the simplification factor.[17]

### 3.   *Hulu I* Should Not Proceed Alone

DivX's proposal to lift the stay for *Hulu I* alone would waste judicial and party

---

[17]  The Court found in October that it "will be able to better assess" the simplification factor after the PTAB decides whether to institute IPRs of the '443 patent.  *Hulu II*, Dkt. 83 at 9 ("The Court will be able to better assess the extent to which any '443 IPR proceedings would simplify issues related to the '792 patent once the PTAB decides whether to institute the '443 proceedings.").

resources.  *See* DivX Br. at 12.  The Court rightly concluded just four months ago that it would be inefficient for *Hulu I* and *Hulu II* to proceed through discovery and claim construction separately.  *See Hulu II*, Dkt. 83 at 6 ("[F]ailure to consolidate pretrial would require the parties and the Court to duplicate substantial effort through discovery and claim construction.").  Including its case against Netflix[18], DivX has asserted 13 patents against overlapping technologies, including adaptive bitrate streaming, partial frame encryption, and indexing in three lawsuits.  Managing those cases would demand substantial resources in any event.  Doing so piecemeal, as DivX proposes, would cause needless duplication and waste.

## V.   CONCLUSION

Hulu respectfully requests that the Court maintain the stay in *Hulu I* and *Hulu II* through approximately March 2023.

---

[18] Netflix also opposes DivX's motion to lift the stay in that case, so DivX's argument that "there is no reason *Netflix* would not proceed" assumes too much.

1

## Appendix A

2

3

| Case | Patent | Parallel Proceeding | Projected Conclusion |
|---|---|---|---|
| 1 | 8,139,651 | Federal Circuit Appeal No. 21-1931 | October 2022 |
| 1 | 8,472,792 | Federal Circuit Appeal No. 22-1138 | March 2023 |
| 1 | 9,270,720 | Federal Circuit Appeal No. 22-1203 | March 2023 |
| 1 | 9,998,515 | Federal Circuit Appeal No. 22-1204 | March 2023 |
| 1 | 10,212,486 | ITC Investigation No. 337-TA-1222 | July 2022[19] |
| 1 | 10,225,588 | Federal Circuit Appeal No. 22-1083 | February 2023 |
| 2 | 10,257,443 | IPR2021-01418 (Petition)<br>IPR2021-01419 (Petition) | March 2023[20] |
| 2 | 10,542,061 | Related to '720 and '515 patents subject to Federal Circuit appeals | March 2023[21] |
| 2 | 10,326,987 | IPR2021-01476 (Petition) | March 2023[20] |

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

---

[19] Target Date for the Final Determination in ITC Investigation No. 337-TA-1222. Ex. 8, ITC Investigation No. 337-TA-1222, Order No. 71 (Initial Determination Extending The Target Date)

25

26

[20] Assuming the PTAB institutes the proceedings.  Based on 12 months from deadline for institution decision.

27

[21] Projected date for decision in '720 and '515 Federal Circuit appeals.

28

Respectfully submitted,

DATED:  February 4, 2022

By: /s/ *Mindy V. Sooter*

MARY (MINDY) V. SOOTER (*pro hac vice*)
Mindy.Sooter@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Telephone:    (720) 274-3135
Facsimile:    (720) 274-3133

JAMES M. DOWD (SBN 259578)
James.Dowd@wilmerhale.com
JASON F. CHOY (SBN 277583)
Jason.Choy@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, CA  90071
Telephone:    (213) 443-5300
Facsimile:    (213) 443-5400

Attorneys for Defendant and Counterclaimant
Hulu, LLC

- 24 -