# EXHIBIT A

Trials@uspto.gov                                                    Paper 15
571-272-7822                                                Date: March 15, 2022

UNITED STATES PATENT AND TRADEMARK OFFICE

————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

————————

HULU, LLC,
Petitioner,

v.

DIVX, LLC,
Patent Owner.

————————

IPR2021-01418
Patent 10,257,443 B2

————————


Before BART A. GERSTENBLITH, MONICA S. ULLAGADDI, and
IFTIKHAR AHMED, *Administrative Patent Judges*.

GERSTENBLITH, *Administrative Patent Judge*.


DECISION
Denying Institution of *Inter Partes* Review
*35 U.S.C. § 314*

IPR2021-01418
Patent 10,257,443 B2

# I.   INTRODUCTION

## A.   Background

Hulu, LLC ("Petitioner") filed a Petition (Paper 4, "Pet.") requesting institution of *inter partes* review of claims 1, 2, 4, 7, 8, 10, and 13–16 ("the Challenged Claims") of U.S. Patent No. 10,257,443 B2 (Ex. 1001, "the '443 patent").[1]   DivX, LLC ("Patent Owner") filed a Preliminary Response (Paper 8, "Prelim. Resp.").

At Petitioner's request, a conference call was held on January 7, 2022, a transcript of which is included in the record.  *See* Ex. 1032 (Transcript of Proceedings, Jan. 7, 2022).  During the conference call, the parties were authorized to file additional briefing pertaining to two issues—(1) the application of 35 U.S.C. § 325(d) and (2) prosecution history disclaimer. *See id.* at 27:9–31:22.  Thereafter, Petitioner filed a Preliminary Reply (Paper 10, "Prelim. Reply") and Patent Owner filed a Preliminary Sur-reply (Paper 12, "Prelim. Sur-reply").

An *inter partes* review may be instituted only if "the information presented in the petition . . . and any [preliminary] response . . . shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition."  35 U.S.C. § 314(a) (2018).  For the reasons below, Petitioner has not established a reasonable

---

[1] This Petition is Petitioner's first petition challenging claims 1, 2, 4, 7, 8, 10, and 13–16 of the '443 patent.  As noted below, Petitioner also filed a second petition challenging the same claims of the '443 patent in IPR2021-01419.  Petitioner filed a Ranking and Explanation of Material Differences Between Petitions (Paper 3), where Petitioner discusses the two petitions. Because of the determination we reach on the merits, we do not address the parties' arguments as to whether two petitions are necessary.

IPR2021-01418
Patent 10,257,443 B2

likelihood that it would prevail in showing the unpatentability of at least one
of the Challenged Claims.  Accordingly, we do not institute an *inter partes*
review of the Challenged Claims.

 B. *Related Proceedings*

 The parties indicate that the '443 patent is asserted in *DivX, LLC v.
Hulu, LLC*, 2-21-cv-01615 (C.D. Cal.).  Pet. 2; Paper 6 (Patent Owner's
Mandatory Notices), 1.  Petitioner indicates that the '443 patent is related to
U.S. Patent No. 8,472,792 ("the '792 patent"), which is asserted in *DivX,
LLC v. Hulu, LLC*, 2-19-cv-01606 (C.D. Cal.), and *DivX, LLC v. Netflix,
Inc.*, 2-19-cv-01602 (C.D. Cal.).  Pet. 2.  Additionally, Petitioner explains
that Netflix, Inc. and Hulu filed a petition challenging claims of the
'792 patent in IPR2020-00646.  *Id.*  Further, Patent Owner notes that
Petitioner also challenges claims of the '443 patent in IPR2021-01419.
Paper 6, 1.

 C. *Real Parties in Interest*

 Petitioner identifies Hulu, LLC and The Walt Disney Company as real
parties in interest.  Pet. 2.  Patent Owner identifies DivX, LLC and DivX CF
Investors LLC as real parties in interest.  Paper 6, 1.

IPR2021-01418
Patent 10,257,443 B2

>   **D.**   *The Asserted Grounds of Unpatentability and Declaration
>   Evidence*

Petitioner challenges the patentability of claims 1, 2, 4, 7, 8, 10, and

13–16 of the '443 patent on the following grounds:

| Claim(s) Challenged | 35 U.S.C. §[2] | Reference(s)/Basis |
|---|---|---|
| 1, 2, 4, 7, 8, 10, 14, 16 | 103(a) | Toma,[3] Candelore-I,[4] Candelore-II[5] |
| 4, 10, 16 | 103(a) | Toma, Candelore-I, Candelore-II, Mowry[6] |
| 1, 2, 4, 7, 8, 10, 13–16 | 103(a) | Toma, Matsui,[7] Candelore-I, Candelore-II |
| 4, 10, 16 | 103(a) | Toma, Matsui, Candelore-I, Candelore-II, Mowry |

Pet. 4–5. Petitioner supports its challenge with a Declaration of Dr. James

A. Storer (Ex. 1002) and a Declaration of Dr. Sylvia Hall-Ellis (Ex. 1027).

---

[2] The Leahy-Smith America Invents Act ("AIA") included revisions to
35 U.S.C. § 103 that became effective on March 16, 2013. Because the
'443 patent has an effective filing date before March 16, 2013, we apply the
pre-AIA version of the statutory basis for unpatentability.

[3] WO 2004/004334 A1, published Jan. 8, 2004 (Ex. 1004, "Toma").
Exhibit 1004 includes a translator certification, an English-language
translation of the reference, and the original Japanese-language version of
the reference. Citations herein are to the English-language translation.

[4] U.S. Patent Application Publication No. 2003/0133570 A1, published
July 17, 2003 (Ex. 1005, "Candelore-I").

[5] U.S. Patent Application Publication No. 2004/0049694 A1, published
Mar. 11, 2004 (Ex. 1006, "Candelore-II").

[6] U.S. Patent Application Publication No. 2004/0253942 A1, published
Dec. 16, 2004 (Ex. 1008, "Mowry").

[7] WO 03/101114 A1, published Dec. 4, 2003 (Ex. 1007, "Matsui").

IPR2021-01418
Patent 10,257,443 B2

Patent Owner supports its arguments with a Declaration of Professor Chandrajit Bajaj, Ph.D. (Ex. 2002).

### E.   The '443 Patent

The '443 patent is directed to a "multimedia distribution system for multimedia files with interleaved media chunks of varying types." Ex. 1001, code (54) (capitalization altered). The '443 patent explains that the described multimedia files include "a series of encoded video frames and encoded meta data about the multimedia file." *Id.* at 7:64–65. The multimedia files also "can include digital rights management" that "can be used in video on demand applications." *Id.* at 27:19–22. "Multimedia files that are protected by digital rights management can only be played back correctly on a player that has been granted the specific right of playback." *Id.* at 27:22–24.

The '443 patent explains that "[m]ultimedia files in accordance with embodiments of the present invention can be structured to be compliant with the Resource Interchange File Format ('RIFF file format') . . . . RIFF is a file format for storing multimedia data and associated information." Ex. 1001, 12:57–63. "A RIFF file typically has an 8-byte RIFF header, which identifies the file and provides the residual length of the file after the header (i.e. file_length-8). The entire remainder of the RIFF file comprises 'chunks' and 'lists.'" *Id.* at 12:63–67.

The '443 patent states that "[a] 'movi' list chunk of a multimedia file" can include "information enabling digital rights management." Ex. 1001, 27:32–36. A "'movi' list chunk" can include "a 'DRM' chunk" prior to each video chunk, where "[t]he 'DRM chunks' . . . are 'data' chunks that contain digital rights management information . . . ." *Id.* at 27:36–41. "A

IPR2021-01418
Patent 10,257,443 B2

device attempting to play the digital rights management protected video track uses the information in the 'DRM' chunk to decode the video information in the 'video' chunk." *Id.* at 27:46–49.  The '443 patent explains that, in an embodiment, "the video chunks are only partially encrypted" and "the 'DRM' chunks contain a reference to the portion of a 'video' chunk that is encrypted and a reference to the key that can be used to decrypt the encrypted portion." *Id.* at 27:53–58.

Figure 2.9 is reproduced below:



FIG. 2.9.

Figure 2.9 of the '443 patent "is a conceptual diagram of the 'DRM' chunk." Ex. 1001, 11:27–28.  The '443 patent explains the following regarding DRM chunk 270:

> The "DRM" chunk 270 can include a "frame" value 280, a "status" value 282, an "offset" value 284, a "number" value 286 and a "key" value 288.  The "frame" value can be used to reference the encrypted frame of video.  The "status" value can be used to indicate whether the frame is encrypted, the "offset" value 284 points to the start of the encrypted block within the frame and the "number" value 286 indicates the number of encrypted bytes in the block.  The "key" value 288 references the decryption key that can be used to decrypt the block.

*Id.* at 27:64–28:6.

6

IPR2021-01418
Patent 10,257,443 B2

*F.    Illustrative Claim*

Claims 1 and 7 are the independent claims challenged in this

proceeding.  Claim 1 is illustrative of the claimed subject matter and is

reproduced below with Petitioner's bracketing added for reference:

1.      [1a] A system for decoding multimedia files comprising:

[1b] at least one processor;

[1c] a non-volatile storage containing a decoder
application;

wherein the decoder application causes the at least one
processor to perform the steps of:

[1d] receiving at least a portion of a multimedia
file, wherein:

[1e] the received at least a portion of the
multimedia file comprises at least one video track
encoded as a plurality of video chunks, [1f] a set of
digital rights management (DRM) chunks, and
[1g] an index chunk;

[1h] at least one video chunk of the plurality
of video chunks contains at least one partially
encrypted frame of video so that only a portion of
the encoded frame is encrypted;

[1i] each DRM chunk of the set of DRM
chunks comprises DRM information to decrypt at
least one partially encrypted frame of video in at
least one video chunk of the plurality of video
chunks;

[1j] the DRM information comprises an
offset value that points to the start of an encrypted
block within an encoded frame and a number value
that indicates the number of encrypted bytes in the
encrypted block;

[1k] the index chunk includes information
concerning the location of data chunks within the

IPR2021-01418
Patent 10,257,443 B2

> multimedia file including the locations of video chunks from the at least one video track; and

> [1l] for each chunk of the plurality of video chunks:

>> determining whether the video chunk contains at least one partially encrypted frame of video;

>> [1m] when a video chunk contains a partially encrypted frame of video, identifying a corresponding one of the set of DRM chunks that contains the DRM information for the partially encrypted frame of video, [1n] demultiplexing the partially encrypted frame from the video chunk, and [1o] decrypting the partially encrypted frame of video using the offset and number values from the DRM information for the partially encrypted frame of video; and

>> [1p] decoding at least one encoded frame of video for display.

Ex. 1001, 55:51–56:25.

### G.   *Level of Ordinary Skill in the Art*

Petitioner, supported by Dr. Storer's testimony, proposes that a person of ordinary skill in the art at the time of the invention would have had (1) "a Bachelor's Degree in computer science or a related field with at least three years of experience designing, developing, and implementing systems for streaming encoded and encrypted video multimedia files" or (2) "a Master's Degree or Ph.D. in computer science or a related field with a specialization in designing, developing, and implementing systems for streaming encoded and encrypted video multimedia files."  Pet. 11 (citing Ex. 1002 ¶ 81).

Patent Owner does not express a position on the level of ordinary skill in the art in the Preliminary Response. *See generally* Prelim. Resp.

IPR2021-01418
Patent 10,257,443 B2

Dr. Bajaj, however, testifies that he disagrees with Dr. Storer's definition of
the level of ordinary skill because the definition "exceeds the qualifications
of a person of ordinary skill in the art." Ex. 2002 ¶ 25. Nonetheless,
Dr. Bajaj does not propose a specific level of ordinary skill in the art and
states that, for purposes of his declaration, he applies Dr. Storer's definition
of the level of ordinary skill in the art. *Id.*

At this stage of the proceeding, we find Petitioner's proposal
consistent with the level of ordinary skill in the art reflected by the
'443 patent and the prior art of record. *See Okajima v. Bourdeau*, 261 F.3d
1350, 1355 (Fed. Cir. 2001); *In re GPAC Inc*., 57 F.3d 1573, 1579 (Fed. Cir.
1995); *In re Oelrich*, 579 F.2d 86, 91 (CCPA 1978). Therefore, we adopt
and apply Petitioner's position as to the level of ordinary skill in the art in
our consideration of the issues presently before us.

## II.  CLAIM CONSTRUCTION

In this *inter partes* review, claims are construed using the same claim
construction standard that would be used to construe the claims in a civil
action under 35 U.S.C. § 282(b). *See* 37 C.F.R. § 42.100(b) (2021). The
claim construction standard includes construing claims in accordance with
the ordinary and customary meaning of such claims as understood by one of
ordinary skill in the art at the time of the invention. *See id.*; *Phillips v. AWH
Corp.*, 415 F.3d 1303, 1312–14 (Fed. Cir. 2005) (en banc). In construing
claims in accordance with their ordinary and customary meaning, we take
into account the specification and prosecution history. *Phillips*, 415 F.3d at
1315–17.

If the specification "reveal[s] a special definition given to a claim
term by the patentee that differs from the meaning it would otherwise

IPR2021-01418
Patent 10,257,443 B2

possess[,] . . . the inventor's lexicography governs." *Phillips*, 415 F.3d at

1316 (citing *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366

(Fed. Cir. 2002)).  Another exception to the general rule that claims are

given their ordinary and customary meaning is "when the patentee disavows

the full scope of a claim term either in the specification or during

prosecution."  *Uship Intellectual Props., LLC v. United States*, 714 F.3d

1311, 1313 (Fed. Cir. 2013) (quoting *Thorner v. Sony Computer Entm't Am.,*

*LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)).

Additionally, only terms that are in controversy need to be construed,

and these need be construed only to the extent necessary to resolve the

controversy.  *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795,

803 (Fed. Cir. 1999) (holding that "only those terms need be construed that

are in controversy, and only to the extent necessary to resolve the

controversy"); *Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co.*,

868 F.3d 1013, 1017 (Fed. Cir. 2017) (citing *Vivid Techs.* in the context of

an *inter partes* review).

Petitioner does not propose any claim terms for construction, noting

that "because the challenged claims are invalid under any reasonable

construction consistent with their plain meaning, claim construction is

unnecessary."  Pet. 12.  In the context of construing the "offset value"

recitation of limitations [1j] and [7k], Patent Owner contends that the "offset

value" cannot be relative to a file and instead must be relative to a frame.

*See, e.g.*, Prelim. Resp. 32 ("the claimed 'offset value' must disclose a value

that points to a location relative to the encoded frame, and not 'relative to a

file'").  Accordingly, we consider the meaning of "an offset value that points

IPR2021-01418
Patent 10,257,443 B2

to the start of an encrypted block within an encoded frame" as recited in
limitations [1j] and [7k].

> A.   *"an offset value that points to the start of an encrypted block
> within an encoded frame"*

Claim 1, reproduced above, recites a system for *decoding* multimedia
files wherein a portion of a multimedia file comprises DRM information that
"comprises an offset value that points to the start of an encrypted block
within an encoded frame."  Ex. 1001, 55:51–56:25 (limitation [1j]).
Independent claim 7 recites a system for *encoding* multimedia files that
encodes DRM information as a set of DRM chunks wherein the DRM
information "comprises an offset value that points to the start of an
encrypted block within an encoded frame."  *Id.* at 56:41–57:10
(limitation [7k]); *see* Pet. 58 (identifying limitation [7k]).

During prosecution of the '443 patent, the Examiner rejected the then-
pending claims based, in part, on the patent that issued from the published
patent application that we refer to as Candelore-II.  *See, e.g.*, Ex. 1003, 259
(Final Rejection, dated May 16, 2019, referring to "US Patent #7,120,250 to
<u>Candelore</u>").[8]  In response to the Examiner's rejection, the applicants
amended the claims to include the "offset value" limitation.  *See, e.g.*, *id.* at
241 (amending then-pending claim 1), 244 (amending then-pending
claim 9).  Additionally, the applicants argued that Candelore-II failed to
teach the subject matter of the amended claims.  *Id.* at 249–52.

First, the applicants asserted that "[a]s an initial observation, the
Candelore patent describes a variety of approaches for identifying segments

---

[8] Exhibit 1003 is the prosecution history of the '443 patent.

IPR2021-01418
Patent 10,257,443 B2

of video or portions of a file to encrypt." Ex. 1003, 250.  The applicants
then stated that "[t]he Candelore patent does not, however, appear to
disclose partial encryption of encoded frames of video by encrypting at least
one block of data within the partially encrypted frame so that only a portion
of the encoded frame is encrypted."  *Id.*  In so doing, the applicants
acknowledged that Candelore-II discloses encrypting "packets based upon
the content of the packet," "portions of unencoded frames of video,"
"encoded frames," and "structures within encoded frames that are identified
by partially decoding the frames."  *Id.* (citing Candelore, 3:35–60[9]).

Second, the applicants argued the following:

> The failure of the Candelore patent to teach partial encryption
> of encoded frames of video by encrypting at least one block of
> data within the partially encrypted frame so that only a portion
> of the frame [is encrypted and] is highlighted by the Candelore
> patent's failure to disclose DRM information including "an
> offset value that points to the start of an encrypted block ***within
> an encoded frame***" as recited in claim 1 (emphasis added).
> Instead, the Candelore patent discloses pointers that point to the
> location of encrypted portions of the video data relative to the
> file.  *See* Candelore patent col. 5, lines 32 – 35.  As noted
> above, the system of claim 1 "demultiplex[es] the partially
> encrypted frame from the video chunk" prior to decryption
> (claim 1).  Therefore, the pointers of Candelore that reference a
> location of an encrypted portion of a file cannot be directly and
> efficiently used to identify an encrypted block within an
> encoded frame after the partially encrypted frame of video has
> been extracted from the file.

Ex. 1003, 250–51.

---

[9] This citation corresponds to paragraph 23 of Candelore-II.  Much of the
quoted material from the applicants' argument, however, corresponds to
paragraph 25 of Candelore-II.

IPR2021-01418
Patent 10,257,443 B2

Following the applicants' arguments and amendments, the Examiner

issued a Notice of Allowance.  Ex. 1003, 54–65.  The Examiner did not

provide any explanation for the allowance of the claims.  *See generally id.*

### 1.    *The Parties' Arguments*

Patent Owner contends that the plain meaning of the claims, the

Specification, and the prosecution history support Patent Owner's argument

that "the claimed 'offset' must disclose an offset value 'within an encoded

frame,' not 'relative to a file.'"  Prelim. Resp. 23.  In other words, Patent

Owner asserts "that the claimed 'offset' must specify a value relative to the

'encoded frame,' as opposed to, for example, relative to the file."  *Id.* at 26

(citing Ex. 2002 ¶ 41).

Patent Owner relies on the testimony of Dr. Bajaj, who provides the

following illustration indicating how Patent Owner interprets the recited

"offset value":



Prelim. Resp. 24 (citing Ex. 2002 ¶¶ 38–40).  The illustration above provides

a visual representation of what Patent Owner and Dr. Bajaj refer to as an

"[o]ffset value" (shown with red double-facing arrows) "within an encoded

IPR2021-01418
Patent 10,257,443 B2

frame" (blue).  Patent Owner and Dr. Bajaj compare their illustration to an
annotated version of Candelore-II's Figure 3, reproduced below:



*Id.* at 25 (citing Ex. 2002 ¶¶ 38–40).  The annotated version of Figure 3,
above, includes a red double-headed arrow indicating an "offset value
relative to the file" (capitalization altered), red to indicate encrypted portions
of data 304, 308, and 312, and blue to indicate unencrypted portions of data
320, 324, 328, and 332.  Patent Owner contends that "there is a clear
distinction between an 'offset value' that is 'within an encoded frame'
versus an 'offset value' determined 'relative to the file.'"  *Id.* (quoting
Ex. 2002 ¶ 40).

Starting with the claim language, Patent Owner argues that the claim
language expressly requires "an 'offset value' that is 'within an encoded
frame.'"  Prelim. Resp. 26 (citing Ex. 1001, 56:3–6 (limitation [1j]); 56:63–
65 (limitation [7k])).  Relying on Dr. Bajaj's testimony, Patent Owner
asserts that one of ordinary skill in the art "would understand that the
claimed 'offset' must specify a value relative to the 'encoded frame,' as
opposed to, for example, relative to the file."  *Id.* (citing Ex. 2002 ¶ 41).

Turning to the Specification of the '443 patent, Patent Owner asserts
that the Specification "explains that 'the "offset" value 284 points to the start
of the encrypted block ***within the frame***.'"  Prelim. Resp. 26 (citing

IPR2021-01418
Patent 10,257,443 B2

Ex. 1001, 28:2–4).  Additionally, relying on Dr. Bajaj's testimony, Patent
Owner argues that the Specification indicates "flexibility in how the DRM
chunk is placed within the file, which may be 'prior to the video chunk,' or it
may be at different locations 'dependent upon the amount of buffering
provided within [the] device decoding the multimedia file.'"  *Id.* (quoting
Ex. 2002 ¶ 42 (quoting Ex. 1001, 51:29–38)).  Patent Owner asserts that "the
'443's flexibility benefit cannot be realized in Candelore-II's system (or the
Petition's combined system) that provides offset values 'relative to the file'"
because "the values of the file-relative pointers only correctly point to the
encrypted portions of data if the relative locations of the file-relative pointers
and the data blocks to which they point are fixed."  *Id.* at 27 (quoting
Ex. 2002 ¶ 43); *see id.* at 28–29 (discussing another alleged benefit of the
'443 patent specification—"modification of a data chunk without impacting
the DRM information for the unmodified portions of the data"—that Patent
Owner contends would not be available in the combination proposed by
Petitioner).

Additionally, Patent Owner asserts that "when the '443's specification
intends to utilize a 'file offset' instead of an 'offset . . . within an encoded
frame' as in the claims, it expressly says so."  Prelim. Resp. 29.  Patent
Owner identifies "the 'hdrl' chunk," which Patent Owner contends
"provides the location of various chunks 'within the file,' and therefore the
'443's specification explains that it uses 'file offsets in order to establish
references.'"  *Id.* (citing Ex. 1001, 50:47–52; Ex. 2002 ¶ 47).  Patent Owner
asserts that this language "relates to a different aspect of the invention that is
the subject of a separate limitation, where claim 1 recites an index chunk
that 'includes information concerning the location of data chunks ***within the***

15

IPR2021-01418
Patent 10,257,443 B2

***multimedia file*** ' and, thus, does not relate to the 'within an encoded frame'
limitation." *Id.* (citing Ex. 1001, claim 1).

Patent Owner also relies on the prosecution history of the '443 patent.
*See, e.g.*, Prelim. Resp. 30.  Patent Owner asserts that the applicants'
argument distinguishing the claim language from Candelore-II's pointers
constitutes "an unambiguous prosecution disclaimer."  Prelim. Resp. 30.
Patent Owner contends that the applicants' argument makes clear that "the
claimed 'offset value' is a value 'within the encoded frame' and thus points
to a location *relative to the frame*."  *Id.* at 9 (emphasis added); *see id.* at 32
("the claimed 'offset value' must disclose a value that points to a location
relative to the encoded frame, and not 'relative to a file'").

In the Preliminary Reply, Petitioner asserts that Patent Owner's
"argument that the claimed 'offset value' must itself be 'within the encoded
frame' is inconsistent with the claim language itself."  Prelim. Reply 8.
Petitioner asserts that Patent Owner's argument excludes nine words from
the phrase "offset value that points to the start of an encrypted block within
an encoded frame" because Patent Owner reads that phrase as "offset value
within an encoded frame."  *Id.*  Specifically, Petitioner asserts that Patent
Owner's argument omits the language specifying "where the offset value
'points to.'"  *Id.*

Petitioner contends that "[t]he claim language is silent as to where the
offset value ***points from***."  Prelim. Reply 8.  Petitioner asserts that

> [a]n offset value relative to the beginning of the file ***points from***
> the beginning of the file, an offset value relative to a video
> chunk ***points from*** the video chunk, and an offset value relative
> to a frame ***points from*** a frame.  All three offset values can be
> stored in the same location in the file, *see* POPR 24 (*separately*
> identifying a "DRM Chunk Containing 'Offset Value'" and an

IPR2021-01418
Patent 10,257,443 B2

> "Offset Value" "within an encoded frame"), but they would use different values, based on where the offset value ***points from***, to point to the same encrypted block within an encoded frame. Nothing in the claim limitation limits where the offset value can ***point from***. Even if the limitation required "an offset value within an encoded frame," which it does not, the plain meaning of "within an encoded frame" would describe where the offset value is stored, not where it ***points from***. Therefore, the distinction DivX allegedly disclaimed—that the offset value cannot be relative to the file—is absent from the plain meaning of the claim limitation.

*Id.* at 8–9.

Turning to the prosecution history, Petitioner contends that nothing in the applicants' argument during prosecution "suggests that the Applicant intended to surrender claim scope." Prelim. Reply 9–10. Rather, Petitioner asserts that these statements address other claim limitations, particularly "the 'demultiplexing' requirement of claim 1." *Id.* at 4–5; *see id.* at 9–10 (referencing the same). Petitioner argues that the conclusion of the same paragraph identified by Patent Owner identifies demultiplexing among the list of limitations not disclosed by the references relied on by the Examiner. *Id.* at 5. Petitioner contends that the applicants "never raised a distinction between offset values 'relative to a file' and offset values 'relative to a frame' at any point during prosecution." *Id.* at 10. According to Petitioner, "[t]o put it simply, the Applicant never said that offset values relative to a file are excluded from the scope of the claim, and certainly did not make any statements that would rise to the level of a clear and unmistakable disavowal." *Id.*

Additionally, Petitioner asserts that the applicants' statements during prosecution support Petitioner's position that it is the encrypted block that is within an encoded frame, not an offset value. Prelim. Reply 10. Thus,

IPR2021-01418
Patent 10,257,443 B2

Petitioner argues that the applicants' statements "contradict the alleged disclaimer requiring the offset value, and not the encrypted block to be 'within an encoded frame.'" *Id.*

In its Preliminary Sur-reply, Patent Owner asserts that "the plain meaning of the claims and the specification both indicate that the claimed 'offset' must disclose an offset value 'within an encoded frame,' not 'relative to a file.'" Prelim. Sur-reply 6. Patent Owner contends that Petitioner's Preliminary Reply does not respond to Patent Owner's arguments regarding the Specification and Dr. Bajaj's related testimony. *Id.* at 6–7 (citing Prelim. Resp. 26–29); *see also id.* at 6–8 (discussing Dr. Bajaj's testimony). Further, Patent Owner asserts that the prosecution history supports its position because the applicants contrasted the claim language with Candelore-II's pointers, which the applicants characterized as "relative to the file." *Id.* at 9–10; *see* Ex. 1003, 251 ("Instead, the Candelore patent discloses pointers that point to the location of encrypted portions of the video data relative to the file."). Patent Owner also contends that even if the applicants' statements do not rise to the level of a disclaimer, the arguments are relevant to understanding the plain meaning of the claim. *Id.* at 10.

### 2. *Analysis*

As discussed further below, the parties do not dispute that Candelore-II's pointers point to the location of encrypted portions of the video data *relative to the file*.[10] Additionally, Petitioner does not propose

---

[10] Despite arguing against Patent Owner's narrower claim construction, Petitioner does not contest Patent Owner's argument that Candelore-II's pointers are *relative to the file*. *See generally* Pet.; Pet. Reply.

IPR2021-01418
Patent 10,257,443 B2

modifying Candelore-II's pointers in the combination presented. *See, e.g.*,
Pet. 22–27 (addressing motivation to combine and reasonable expectation of
success), 30–40 (addressing, *inter alia*, limitation [1j]). Thus, determining
whether the claim scope excludes an offset value that is relative to the file
resolves the parties' dispute regarding the claim term.

We begin with the claim language. Claim 1 recites, *inter alia*, that "at
least one video chunk of the plurality of video chunks contains at least one
partially encrypted frame of video so that only a portion of the encoded
frame is encrypted" (limitation [1h]), that each DRM chunk "comprises
DRM information to decrypt at least one partially encrypted frame of video"
(limitation [1i]), and, as the focus of our inquiry, that "the DRM information
comprises an offset value that points to the start of an encrypted block within
an encoded frame" (limitation [1j]). Reading these limitations together, one
of ordinary skill in the art would have understood at least the following from
this claim language: (1) the identified encrypted frame of video is *partially*
encrypted, (2) the encrypted *portion* is referred to as an *encrypted block*,
(3) the *encrypted block is within* the encoded frame, and (4) the offset value
points to the start of the encrypted block within the encoded frame.

Contrary to Patent Owner's plain-meaning argument, we do not agree
that the plain meaning of the claim language is that the offset value must be
limited to being *within the encoded frame*. Patent Owner's reading of the
plain language would amount to reading "an offset value that points to the
start of an encrypted block within an encoded frame" as "an offset value
*within an encoded frame* that points to the start of an encrypted block within
an encoded frame." In other words, Patent Owner's plain meaning argument
*reads* additional language—"within an encoded frame"—into the claim after

19

IPR2021-01418
Patent 10,257,443 B2

the phrase "offset value" such that "within an encoded frame" also modifies
(i.e., limits) "offset value."  Contrary to Patent Owner's argument, however,
the claim language uses the phrase "within an encoded frame" to describe
the location of the "encrypted block," not the location of the "offset value."
In this regard, we agree with Petitioner that the claim language does not
limit the location of the offset value such that it *must* be within an encoded
frame.

We also agree with Petitioner that the claim language recites where
the offset value *points to*; the claim language does not recite where the offset
value *points from*.  Specifically, an offset value, in the context of the
'443 patent, indicates some type of displacement from a starting point.  As
Petitioner explains "[a]n offset value relative to the beginning of the file
***points from*** the beginning of the file, an offset value relative to a video
chunk ***points from*** the video chunk, and an offset value relative to a frame
***points from*** a frame."  Prelim. Reply 8.  Here, the claim language itself does
not limit expressly where the offset value *points from*; in other words, the
claim language itself does not expressly limit what the offset value is
*relative to*.

Turning to the Specification, we do not find it particularly helpful in
addressing the parties' dispute.  First, neither party argues that the
Specification provides a lexicographic definition of the claim language at
issue, and we agree that the Specification does not.

Second, even if the Specification indicates a "desire[] to have
flexibility in how the DRM chunk is placed within the file," as Patent Owner
argues and Dr. Bajaj opines (*see, e.g.*, Prelim. Resp. 26 (citing Ex. 2002
¶ 42)), Patent Owner does not establish that such desire is reflected in any

20

IPR2021-01418
Patent 10,257,443 B2

specific recitation in the claims.  In other words, even if the Specification
reveals an advantage or benefit of the invention in terms of the flexibility
identified, that advantage or benefit is not recited in the claims and does not
justify reading a limitation into the claims.

Third, the Specification includes a "conceptual representation of the
information in a 'DRM' chunk," reflected in Figure 2.9, reproduced above in
our discussion of the '443 patent.  Ex. 1001, Fig. 2.9.  And, the Specification
explains the following regarding the DRM chunk:

> The "DRM" chunk 270 can include a "frame" value 280, a
> "status" value 282, an "offset" value 284, a "number" value 286
> and a "key" value 288.  The "frame" value can be used to
> reference the encrypted frame of video.  The "status" value can
> be used to indicate whether the frame is encrypted, the "offset"
> value 284 points to the start of the encrypted block within the
> frame and the "number" value 286 indicates the number of
> encrypted bytes in the block.  The "key" value 288 references
> the decryption key that can be used to decrypt the block.

*Id.* at 27:64–28:6.  Although the parties do not discuss this portion of the
Specification in detail, we note that it describes a "frame" value that can be
used to reference the encrypted frame of video and it also refers to an offset
value that "points to the start of the encrypted block within the frame"—
language that is similar to the claim language.  Although the parties do not
explain the interplay between frame value 280 and offset value 284, we find
that one of ordinary skill in the art would have understood that, when used *in
concert*, the frame value *could* be used to reference an encrypted frame and
the offset value *could* be used to designate an offset within that frame such
that the offset points to the start of the encrypted block within the frame.  In
other words, where a frame value and offset value are employed, the offset
value *could* be limited to an offset relative to the frame because the frame is

IPR2021-01418
Patent 10,257,443 B2

already identified by the frame value.  Nonetheless, this circumstance is not argued by the parties, claims 1 and 7 do not recite a frame value, and, importantly, even if this is one possible example that could exist, it is just one possibility and does not specifically *limit* the "offset value" such that the offset cannot be relative to something other than the frame, e.g., the file.

Fourth, we recognize that the Specification uses the phrase "file offsets" in the discussion of "Generating the 'hdrl' List Chunk."  Ex. 1001, 50:47–53.  In particular, the Specification states

> The "hdrl" list chunk is generated by the interleaver based on the information in the various chunks provided to the interleaver.  The "hdrl" list chunk *references the location within the file of the referenced chunks*.  In one embodiment, the "hdrl" list chunk uses *file offsets* in order to establish references.

*Id.* (emphases added).  As this description states, file offsets are used, in one embodiment, to establish references to the location within the file of the referenced chunks.  Thus, we agree with Patent Owner that the patentees knew how to refer to file offsets when intended.  Nonetheless, we do not find that the use of different terms means that "file offsets" are distinguishable from an "offset value."  Rather, we find that one of ordinary skill in the art would have understood that a file offset is a particular type of offset that is relative to the file.  The term "offset value" and its use in the Specification and claims, however, is broad enough to encompass a file offset as well as other offset values because there is nothing specific in the claim language or Specification that indicates otherwise.

We now turn to the prosecution history.  In particular, we find that the prosecution history sheds substantial light on how the applicants understood the disputed claim language.  As set forth above, in response to rejections

22

IPR2021-01418
Patent 10,257,443 B2

based on Candelore-II, the applicants raised two primary arguments.  First, the applicants argued that Candelore-II "does not . . . appear to disclose partial encryption of encoded frames of video by encrypting at least one block of data within the partially encrypted frame so that only a portion of the encoded frame is encrypted."  Ex. 1003, 250.  Second, and importantly, the applicants argued that Candelore-II's failure to disclose partial encryption of encoded frames of video "*is highlighted by* the Candelore patent's failure to disclose DRM information including 'an offset value that points to the start of an encrypted block ***within an encoded frame*** as recited in claim 1."  *Id.* at 251 (first emphasis added).  Critically, the very next sentence begins with the word *instead*, and states, "*[i]nstead*, the Candelore patent discloses pointers that point to the location of encrypted portions of the video data *relative to the file*."  *Id.* (emphases added).  These two sentences from the applicants' argument directly contrast the recited "offset value" language with Candelore-II's disclosure.  Specifically, the applicants sought to distinguish Candelore-II because its pointers are relative to the file.

We find that by contrasting Candelore-II's pointers, the applicants "ma[d]e clear that the invention does not include a particular feature"— pointers that are relative to the file.  *GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014).  And, we also find that the applicants' arguments constitute a "clear and unmistakable disclaimer" of an offset value that points to the start of an encrypted block within an encoded frame, where the offset value is relative to the file.  *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1366–67 (Fed. Cir. 2012).  Although we agree with Petitioner that the applicants "never raised a distinction between offset values 'relative to a file' and offset values

IPR2021-01418
Patent 10,257,443 B2

'relative to a frame' at any point during prosecution," we do not agree with
Petitioner that the applicants "never said that offset values relative to a file
are excluded from the scope of the claim." Prelim. Reply 10.  Rather, we
find no other way to interpret the applicants' arguments.  As noted above,
the applicants specifically stated that Candelore-II fails to disclose "DRM
information including 'an offset value that points to the start of an encrypted
block *within an encoded frame*'" and then stated that "[i]nstead,"
Candelore-II "discloses pointers that point to the location of encrypted
portions of the video data relative to the file."  The applicants' argument
specifically identifies the claim language at issue here and specifically says
that it is not disclosed because Candelore-II discloses something else
*instead*.[11]  Accordingly, for these reasons, we find that the applicants
disclaimed "pointers that point to the location of encrypted portions of the
video data relative to the file."

 Although we find disclaimer, it is important to clarify the scope of our
finding.  In particular, we do not agree with Patent Owner that the arguments
raised by the applicants disclaim more than what we have indicated above.
Specifically, the express language of the claims recites what the offset value
"points to" (i.e., "the start of an encrypted block within an encoded frame"),
but the claim language does not recite expressly a relative location where the
offset value points from.  The applicants' arguments disclaimed one
option—pointing from (i.e., being relative to) the file.  In other words, to the

---

[11] We also note that despite asserting an error in the applicants' arguments
during prosecution (i.e., whether Candelore-II teaches partial encryption of
encoded frames), Petitioner does not assert that this argument by the
applicants—that Candelore-II's pointers are relative to the file—is incorrect.
*See* Prelim. Reply 5–7.

IPR2021-01418
Patent 10,257,443 B2

extent that Petitioner is correct that an offset value could be relative to a
frame, a file, or a chunk (or even another reference point), our finding is
only that the applicants disclaimed an offset value relative to a file. We do
not agree with Patent Owner that the claim language, Specification, or
prosecution history of the '443 patent supports limiting the offset value such
that it *must* be relative to a frame as opposed to some other reference point
that is not the file.

For the purposes of resolving the parties' controversy before us, we
need not further construe the claim language expressly. In particular, as
discussed below, each of Petitioner's grounds relies on Candelore-II's
pointers as teaching the "offset value that points to the start of an encrypted
block within an encoded frame" of limitations [1j] and [7k] without any
assertion that it would have been obvious to one of ordinary skill in the art to
modify the pointers such that they would not be relative to the file. As
discussed further below, because Candelore-II's pointers are relative to the
file and pointers relative to a file are disclaimed from the scope of the
claims, Petitioner has not established a reasonable likelihood that it would
prevail in showing the unpatentability of at least one of the Challenged
Claims.

## III. ANALYSIS

### A. Legal Standards – Obviousness

The U.S. Supreme Court set forth the framework for applying the
statutory language of 35 U.S.C. § 103 in *Graham v. John Deere Co. of
Kansas City*, 383 U.S. 1, 17–18 (1966):

> Under § 103, the scope and content of the prior art are to be
> determined; differences between the prior art and the claims at

IPR2021-01418
Patent 10,257,443 B2

issue are to be ascertained; and the level of ordinary skill in the
pertinent art resolved.  Against this background, the
obviousness or nonobviousness of the subject matter is
determined.  Such secondary considerations as commercial
success, long felt but unsolved needs, failure of others, etc.,
might be utilized to give light to the circumstances surrounding
the origin of the subject matter sought to be patented.

The Supreme Court explained in *KSR International Co. v. Teleflex Inc.* that

[o]ften, it will be necessary for a court to look to interrelated
teachings of multiple patents; the effects of demands known to
the design community or present in the marketplace; and the
background knowledge possessed by a person having ordinary
skill in the art, all in order to determine whether there was an
apparent reason to combine the known elements in the fashion
claimed by the patent at issue.  To facilitate review, this
analysis should be made explicit.

550 U.S. 398, 418 (2007) (citing *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir.

2006) ("[R]ejections on obviousness grounds cannot be sustained by mere

conclusory statements; instead, there must be some articulated reasoning

with some rational underpinning to support the legal conclusion of

obviousness." (alteration in original))).

"Whether an ordinarily skilled artisan would have been motivated to

modify the teachings of a reference is a question of fact." *WBIP, LLC v.

Kohler Co.*, 829 F.3d 1317, 1327 (Fed. Cir. 2016) (citations omitted).

"[W]here a party argues a skilled artisan would have been motivated to

combine references, it must show the artisan 'would have had a reasonable

expectation of success from doing so.'" *Arctic Cat Inc. v. Bombardier

Recreational Prods. Inc.*, 876 F.3d 1350, 1360–61 (Fed. Cir. 2017) (quoting

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent

Litig.*, 676 F.3d 1063, 1068–69 (Fed. Cir. 2012)).

IPR2021-01418
Patent 10,257,443 B2

### B. Ground 1: Obviousness over Toma, Candelore-I, and Candelore-II

Petitioner asserts that the combination of Toma, Candelore-I, and Candelore-II would have rendered the subject matter of claims 1, 2, 4, 7, 8, 10, 14, and 16 obvious to one of ordinary skill in the art at the time of the invention.  Pet. 22–48.  Patent Owner contends that "Petitioner fails to show that the claimed 'offset value' as properly construed is disclosed or rendered obvious by its grounds."  Prelim. Resp. 22–38 (capitalization from heading altered).  Because we find this issue dispositive, we focus our discussion of the claims on the recitation of an "offset value" in limitations [1j] and [7k].

#### 1. Level of Ordinary Skill in the Art

Above, we set forth the level of ordinary skill in the art.  *See supra* § I.G.

#### 2. Scope and Content of the Prior Art

##### a. Toma

Toma is directed to "a multiplexing device that multiplexes media data such as video data and audio data, and to a demultiplexing device that reads and demultiplexes multiplexed bit strings of media data such as video data and audio data."  Ex. 1004 ¶ 1.  Toma teaches "[a]n MP4 file composed of a plurality of linked boxes" that "can be broadly divided into a basic portion that is indispensable to the file structure and an extended portion that can be used when needed."  *Id.* ¶ 13.

IPR2021-01418
Patent 10,257,443 B2

Figure 16(a) is reproduced below:



Figure 16(a) of Toma illustrates "MP4 file extended portion 200." Ex. 1004 ¶ 187.  Toma explains that MP4 file extended portion 200 "is composed of a plurality of packets and is linked to the basic portion of the MP4 file." *Id.* "Each packet constituting the MP4 file extended portion 200 is composed of moof in the packet header portion and mdat in the packet data portion." *Id.* ¶ 188.  In Figure 16(a), "packet_1 refers to the first packet in the MP4 file extended portion 200, moof in packet_1 is referred to as moof_1, and mdat in packet_1 is referred to as mdat_1." *Id.*  Toma also indicates that "each 'V' in the mdat . . . refers to a video sample and each 'A' in the mdat . . . refers to an audio sample." *Id.*

### b. *Candelore-I*

Candelore-I is directed to a partial frame encryption technique that produces a star pattern partial encryption. *See* Ex. 1005, code (54).  Figure 6 is reproduced below:

IPR2021-01418
Patent 10,257,443 B2



Figure 6 "illustrates a star pattern of encrypted packets." *Id.* ¶ 12. Candelore-I explains that, in the embodiment shown in Figure 6, "slices in a central area of the frame 270 are encrypted with a star pattern 274 extending outward radially from the upper center of the frame.  In this embodiment, macroblocks having intracoded data are encrypted if they fall within the shaded area of the star pattern 274." *Id.* ¶ 40.

### c.   Candelore-II

Candelore-II is directed to "[a] method and apparatus for enabling use of multiple digital rights management scenarios (DRM)."[12]  Ex. 1006, code (57).  Candelore-II incorporates Candelore-I by reference.  *Id.* ¶ 2. Candelore-II teaches that "content stored in the content database 130 is stored with dual (in general multiple) selective encryption consistent with the content provider's dual (multiple) DRMs." *Id.* ¶ 28.

---

[12] Candelore-II explains that "DRMs typically verify that the consumer has paid for viewing the content."  Ex. 1006 ¶ 35.

IPR2021-01418
Patent 10,257,443 B2

Figure 2 of Candelore-II is reproduced below:



Figure 2 "illustrates an exemplary file structure."  Ex. 1006 ¶ 12.

Candelore-II explains that "[i]n this file structure, the file delivered to the

customer is stored with selected portions multiply encrypted."  *Id.* ¶ 29.  In a

non-limiting example, Candelore-II teaches that "if the content is stored as

MPEG data, one can encrypt all of the MPEG I frames or video slice headers

to achieve a substantial level of encryption without need to encrypt the entire

file."  *Id.*  In the example of Figure 2, "the selected portions are encrypted

under an encryption arrangement consistent with DRM A in one case and

consistent with DRM B in the other.  The content is then reassembled with

the duplicated encrypted content replacing the original clear content."  *Id.*

Further describing Figure 2, Candelore-II explains that "[i]n this

example of Audio/Video content, the content is stored as audio content 206

and video content 210."  Ex. 1006 ¶ 30.  Candelore-II teaches that "[t]he file

further contains a set of audio encryption pointers 212 that point to the

selected portions of the audio content that are encrypted" and "the file

further contains a set of video encryption pointers 218 that point to the

selected portions of the video content that are encrypted."  *Id.*

Figure 3 is reproduced below:

FIG. 3

Figure 3 "illustrates a byte offset arrangement for video data" describing

"[t]he relationship between the video data 210 and video encryption

IPR2021-01418
Patent 10,257,443 B2

pointers 218." Ex. 1006 ¶¶ 13, 31.  Candelore-II explains that "[p]ointers are stored that point to encrypted portions of the video data in the file.  Such encrypted portions are shown as 304, 408 and 312.  Such encrypted portions are interspersed with portions of data stored unencrypted (In the clear) shown as 320, 324, 328 and 332." *Id.* ¶ 31.  Candelore-II teaches that "the number of bytes to be encrypted can be predefined if desired as the encryption quanta so that the encryption pointers can be simply a sequence of memory offset locations.  The amount of data encrypted is then determined by a preset encryption quanta (e.g., 8 bytes)." *Id.* ¶ 33.  "In other embodiments, the encryption pointer section can include not only a starting offset but also an ending offset or a starting offset and a number of bytes." *Id.*

> 3. *Differences Between the Prior Art and the Claims;*
>    *Motivation to Modify*

As noted above, "offset value" is recited in limitations [1j] and [7k].  In addressing claim 1, Petitioner's discussion of the "offset value" begins with its discussion of limitation [1f] and includes Petitioner's discussion of limitations [1i] and [1h].  Accordingly, in our analysis below, we begin with Petitioner's discussion of limitation [1f] before turning to Petitioner's discussion of limitations [1h], [1i], and [1j].  We then address Patent Owner's arguments in response, which are directed to limitation [1j].

> a. *Claim 1 – Petitioner's Arguments*
>    i. *Limitation [1f]*

Limitation [1f] recites, in relevant part, "a set of digital rights management (DRM) chunks." Ex. 1001, 55:60–61.  Petitioner contends that the combination of Toma and Candelore-II teaches limitation [1f].  Pet. 31.

IPR2021-01418
Patent 10,257,443 B2

As shown in Petitioner's colorized version of Candelore-II's Figure 3, reproduced below, Petitioner contends that "Candelore-II teaches '*a set of video encryption pointers 218* that point to the selected portions of the video content that are encrypted.'" Pet. 30 (citing Ex. 1006 ¶ 30, Fig. 2).



*Id.* at 31. Candelore-II's Figure 3 is reproduced above with color added by Petitioner to illustrate encryption pointers 218 (blue) and differentiate encrypted video content (purple) and unencrypted video content (green). Petitioner contends that, as shown in Figure 3, "Candelore-II's video encryption pointers 218 (blue) are located before the video data 210 and contain 'byte offset and # of [encrypted] bytes' information that points to the encrypted video content (purple)." *Id.* (alteration by Petitioner). Petitioner asserts that "Candelore-II's video encryption pointers 218 comprise a DRM chunk because they contain information concerning the encryption of the video chunk." *Id.* (citing Ex. 1002 ¶¶ 206–210).

Petitioner explains the following regarding combining the teachings of Candelore-II and Toma. "First," Petitioner asserts that "Toma teaches that each of its mdats 'is a box for storing the actual data in the media data in units referred to as samples.'" Pet. 31 (citing Ex. 1004 ¶ 20). Petitioner contends that one of ordinary skill in the art "would thus have used Toma's mdats to store video data because that is what Toma expressly teaches." *Id.* (citing Ex. 1002 ¶ 210).

IPR2021-01418
Patent 10,257,443 B2

"Second," Petitioner asserts that "Candelore-II's 'video encryption pointers' 'point to the selected portions of the video content that are encrypted.'"  Pet. 31 (citing Ex. 1006 ¶ 30).  Petitioner contends that one of ordinary skill in the art "would thus have understood Candelore-II's video encryption pointers to comprise information about the video content, such as header information or metadata."  *Id.* at 31–32.  Petitioner asserts that Toma teaches "using moofs to 'store[] header information corresponding to the movie data box 916'" (*id.* at 32 (citing Ex. 1004 ¶ 36) (alteration by Petitioner)), and, thus, one of ordinary skill in the art would have "used Toma's moofs to store Candelore-II's video encryption pointers, because these pointers comprise header information concerning the locations and sizes of encrypted video data" (*id.*).  In particular, Petitioner argues that "it would have been obvious to store the encryption pointer for a given chunk of encrypted video data in the moof that corresponds to the mdat containing that specific chunk."  *Id.* (citing Ex. 1004 ¶ 36; Ex. 1002 ¶ 211).

"Third," Petitioner asserts that it would have been obvious to one of ordinary skill in the art "implementing Toma in view of the Candelore references" to

> store a chunk of encrypted video data (purple) in each mdat (e.g., a first chunk in mdat_1, a second chunk in mdat_2, and so on), and store the associated DRM information (i.e., "byte offset and # of [encrypted] bytes" 218) for each video chunk (blue) in the moof (e.g., DRM for the first chunk in moof–1, DRM for the second chunk in moof_2, and so on).

Pet. 32 (alteration by Petitioner).  Petitioner relies on a combination of Candelore-II's Figure 3 and Toma's Figure 16(a), reproduced below, to support its argument regarding the combination:

IPR2021-01418
Patent 10,257,443 B2



*Id.* at 33.

Referring to its detailed explanation as to why one of ordinary skill in the art would have been motivated to combine with a reasonable expectation of success (*see* Pet. 33 (referring to Petition § XII.A.1)), Petitioner reiterates that "including DRM information for each video chunk in an associated moof would have been motivated by the goal of enabling download playback." *Id.* Petitioner asserts that it would have been obvious

> from Toma's express teaching (including Figure 16A[13]) to place DRM information in the moof before each mdat (i.e., moof_1 for mdat_1) because: (1) that is what Toma teaches, (2) doing so would allow a playback device to decode and playback a file without having to wait for the entire file, or a large moov,[14] to be downloaded and (3) doing so would reduce the number of calculations required for random access playback.

---

[13] Petitioner refers to Toma's Figure 16(a) as "Figure 16A." *See, e.g.*, Pet. 33.

[14] Toma refers to a movie box by the identifier "moov." *See* Ex. 1004 ¶ 18.

IPR2021-01418
Patent 10,257,443 B2

*Id.* at 33–34 (footnotes added) (citing Ex. 1007, 2:25–3:2; Ex. 1013[15] ¶¶ 45–
50; Ex. 1002 ¶¶ 214–217).

>          *ii.    Limitation [1h]*

Limitation [1h] recites "at least one video chunk of the plurality of
video chunks contains at least one partially encrypted frame of video so that
only a portion of the encoded frame is encrypted."  Ex. 1001, 55:62–65.
Petitioner contends that the combination of Toma, Candelore-I, and
Candelore-II teaches limitation [1h].  Pet. 34–37.

Petitioner asserts that "Candelore-I's 'encryption encoder' partially
encrypts encoded video frames."  Pet. 34 (citing Ex. 1005, Abs.).
Reproduced below is Petitioner's annotated version of Candelore-I's
Figure 6, in which "an MPEG encoded video frame 270" is shown with
purple sections encrypted and green sections unencrypted:



_____

[15] U.S. Patent Application Publication No. 2004/0231004 A1, published
Nov. 18, 2004.

IPR2021-01418
Patent 10,257,443 B2

*Id.* at 35 (citing Ex. 1005, Fig. 6, ¶ 40; Ex. 1002 ¶¶ 220–222).  As noted above, Candelore-I's Figure 6 is reproduced above with color added by Petitioner to differentiate encrypted sections (purple) from unencrypted sections (green) of an MPEG encoded video frame.

Petitioner asserts that "Candelore-I teaches partial encryption of ***encoded*** frames."  Pet. 35 (citing Ex. 1005 ¶¶ 46–48).  Petitioner contends that Candelore-I teaches that "intracoded data," which one of ordinary skill in the art would have understood to be "encoded data because MPEG video data is encoded as either intracoded or intercoded," are "encrypted if they fall with[in] the shaded area of the star pattern 274."  *Id.* (citing Ex. 1005 ¶ 40).  Thus, Petitioner argues that "Candelore-I taught at least one partially encrypted frame of video so that only a portion of the encoded frame is encrypted as recited in limitation [1h]."  *Id.* (citing Ex. 1002 ¶ 223).

Petitioner contends that it would have been obvious "to use Candelore-I's star pattern encryption method with Candelore-II's video encryption pointers because Candelore-II teaches toward this combination."  Pet. 36.  In particular, Petitioner points to a statement in Candelore-II that "the selected video data to be encrypted may be . . . data in a star pattern within the video frame."  *Id.* (quoting Ex. 1006 ¶ 25) (citing Ex. 1006 ¶¶ 2, 22, 22).  Petitioner relies on a combination of Candelore-I's Figure 6 and Candelore-II's Figure 3, reproduced below, as "an example of how a [person of ordinary skill in the art] would have combined the Candelore references."  *Id.*

IPR2021-01418
Patent 10,257,443 B2



*Id.* (citing Ex. 1005, Fig. 6; Ex. 1006, Fig. 3; Ex. 1002 ¶¶ 224–225).

Petitioner's figure above combines Candelore-I's Figure 6 and

Candelore-II's Figure 3.

Relying on its discussion of limitation [1f], Petitioner contends that it

would have been obvious "to add the video data 210 from Candelore-II's

Figure 3 (as modified by Candelore-I) to the mdat in Toma's MP4 files in

the manner shown" in Petitioner's combination of figures reproduced below:



37

IPR2021-01418
Patent 10,257,443 B2

Pet. 36–37 (citing Ex. 1005, Fig. 6; Ex. 1006, Fig. 3; Ex. 1004, Fig. 16(a)). Petitioner's combined figure illustrates the combination of Candelore-I's Figure 6 and Candelore-II's Figure 3 and how that combination would have been applied to Toma's moofs and mdats shown in Toma's Figure 16(a). Petitioner contends that "[b]ecause at least one video chunk in Toma's modified MP4 file would include a partially encrypted encoded frame, limitation [1h] would have been obvious over Toma in view of Candelore-I and Candelore-II." *Id.* at 37 (citing Ex. 1002 ¶ 226).

Referring to its detailed explanation as to why one of ordinary skill in the art would have been motivated to combine with a reasonable expectation of success (*see* Pet. 37 (referring to Petition §§ XII.A.1 and XII.A.2.f (discussing limitation [1f]))), Petitioner asserts that one of ordinary skill in the art would have "combined Candelore-I and Candelore-II because Candelore-II instructs making that combination, particularly with respect to Candelore-I's star pattern teaching." *Id.* (citing Ex. 1006, 2, 25, 38; Ex. 1002 ¶ 227).

### iii.    Limitation [1i]

Limitation [1i] recites "each DRM chunk of the set of DRM chunks comprises DRM information to decrypt at least one partially encrypted frame of video in at least one video chunk of the plurality of video chunks." Ex. 1001, 55:66–56:2.  Petitioner asserts that the combination of Toma, Candelore-I, and Candelore-II teaches limitation [1i].  Pet. 38–39.

Petitioner contends that, for the reasons explained in the context of limitation [1f], "Toma in view of the Candelore references teaches a set of DRM chunks, where each DRM chunk is comprised of, at least Candelore-II's video encryption pointers 218."  Pet. 38 (citing Ex. 1006

IPR2021-01418
Patent 10,257,443 B2

¶¶ 29, 30).  Further, Petitioner asserts that, for the reasons explained in the context of limitation 1[h], "these encryption pointers can be used with Candelore-I's star pattern encryption method to partially encrypt at least one frame of video in at least one video chunk of the plurality of video chunks." *Id.* (citing Ex. 1002 ¶ 229).

Petitioner argues that "Candelore-II's encryption pointers comprise DRM information."  Pet. 38.  Petitioner asserts that "Candelore-II teaches that the 'video encryption pointers' 'point to the selected portions of the video content that are encrypted,'" the "encryption pointer section can include not only a starting offset but also an ending offset or a starting offset and a number of bytes," "[t]he video encryption pointers' 'number of bytes' correspond to the 'size (i.e., the encryption quanta)' of the encrypted segment," and "[t]his information is DRM information that can be used to decrypt partially encoded frames by locating the encrypted data." *Id.* (citing Ex. 1006 ¶¶ 30, 31, 33, Fig. 3).  Additionally, Petitioner relies on its arguments and evidence directed to motivation to combine and reasonable expectation of success referred to above.  *Id.* at 39 (referring to Petition §§ XII.A.1, XII.A.2.f, XII.A.2.h).[16]

> *iv.   Limitation [1j]*

Limitation [1j] recites that "the DRM information comprises an offset value that points to the start of an encrypted block within an encoded frame

---

[16] Petitioner's cross-references to the sections of the Petition sections appear incorrect on page 39 of the Petition because there is no section "XII.A.1.f" or "XII.A.1.h."  Pet. 39.  We understand Petitioner to refer to Sections XII.A.2.f and XII.A.2.h as those are the sections containing the relevant discussion in the Petition to which Petitioner referred previously.

IPR2021-01418
Patent 10,257,443 B2

and a number value that indicates the number of encrypted bytes in the encrypted block." Ex. 1001, 56:3–7.  As discussed in the context of limitation [1i], Petitioner contends that "Candelore-II's 'video encryption pointers' comprise DRM information."  Pet. 39 (citing Ex. 1002 ¶ 233). Petitioner asserts that "Candelore-II teaches that 'the encryption pointer section can include' 'a starting offset,' shown in Figure 3 . . . as the 'BYTE OFFSET' contained within video encryption pointer 218 (blue)."  *Id.* (citing Ex. 1006, Fig. 3 (annotated by Petitioner), ¶ 33; Ex. 1002 ¶ 234).  Petitioner relies on an annotated version of Candelore-II's Figure 3, reproduced above in our discussion of limitation [1f].  *Id.*

Relying on its discussion of limitation [1h], Petitioner contends "Toma in view of the Candelore references teaches partially encrypting encoded frames in a star pattern.  Candelore-II's encryption pointers would thus have included offset values pointing to the start of an encrypted block within an encoded frame as recited in limitation [1j]."  Pet. 40 (citing Ex. 1002 ¶ 235).

Additionally, Petitioner asserts that "Candelore-II also teaches that video encryption pointers can include 'a number of bytes,' as shown in Figure 3 as the '# of BYTES' contained within video encryption pointer 218."  Pet. 40 (citing Ex. 1006 ¶ 33, Fig. 3).  Petitioner argues that "Candelore-II's video encryption pointers would thus have included a number value indicating the number of encrypted bytes in the encrypted block as recited in limitation [1j]."  *Id.* (citing Ex. 1002 ¶ 236).

### b.  *Claim 1 – Patent Owner's Arguments*

Patent Owner challenges Petitioner's analysis of limitation [1j] and, particularly, Petitioner's reliance on Candelore-II as teaching "an offset

IPR2021-01418
Patent 10,257,443 B2

value that points to the start of an encrypted block within an encoded
frame." Prelim. Resp. 22–38.  Patent Owner contends that "Candelore-II's
pointers reference a location 'relative to the file,' and not 'within an encoded
frame' as required by the claims." *Id.* at 23 (citing Ex. 1003, 250–51).
Patent Owner asserts that the applicants raised this argument during
prosecution to distinguish Candelore-II from the claims and that the
argument "operate[s] as an unambiguous disclaimer, precluding the
possibility that the claimed 'offset value' could be construed to cover an
offset that is not 'within an encoded frame' but is instead a value 'relative to
the file.'" *Id.*

Patent Owner contends that Candelore-II "explains that the encryption
pointers are '***memory*** offset ***locations***,' which would point to where various
portions of the file are stored in memory and has no dependence on any
offset value within any encoded frame." Prelim. Resp. 32–33 (citing
Ex. 1006 ¶ 33).  Patent Owner asserts that Candelore-II states that "pointers
point to the location of 'video data ***in the data file***.'" *Id.* at 33 (quoting
Ex. 1006 ¶ 31).  And, Patent Owner argues that Figure 3 of Candelore-II
"makes clear by its schematic arrows that the pointers for blocks 304, 308
and 312 relate back to block 218, which is a location within the file, and not
within the video frame to which they belong." *Id.* (citing Ex. 1006, Fig. 3;
Pet. 36, 37, 39).

Additionally, Patent Owner asserts that the Petition does not propose
modifying Candelore-II's pointers in the combination proposed such that
they are not relative to the file (*see* Prelim. Resp. 33–35) and the Petition
provides no reason as to why one of ordinary skill in the art would have been
motivated to do so (*see id.* at 37–38).

IPR2021-01418
Patent 10,257,443 B2

### c. *Claim 1 – Analysis*

As discussed above in our consideration of the parties' arguments
regarding the meaning of "an offset value that points to the start of an
encrypted block within an encoded frame," we determine that the applicants
disclaimed an offset value that is relative to the file. *See supra* § II.A.2. On
the present record, we find Patent Owner's argument and evidence
persuasive regarding Candelore-II's disclosure. In particular, Patent Owner
identifies the teachings of Candelore-II directed to its pointers, and
Candelore-II's description and Figure 3 support Patent Owner's argument
that Candelore-II's pointers are relative to the file. *See, e.g.*, Prelim.
Resp. 33 (citing Ex. 1006 ¶ 31, Fig. 3). Additionally, Petitioner does not
contest Patent Owner's position that Candelore-II teaches pointers that are
relative to the file. *See generally* Pet.; Prelim. Reply. Further, as applied to
the combination, Petitioner does not propose modifying Candelore-II's
pointers such that they are not relative to the file. *See, e.g.*, Pet. 22–27
(discussing motivation and reasonable expectation of success), 30–40
(discussing, *inter alia*, limitations [1f], [1h], [1i], and [1j]).

Accordingly, because Petitioner relies on the same teaching of
Candelore-II that was disclaimed from the scope of the claims during
prosecution of the '443 patent, Petitioner has not shown sufficiently on the
present record that the combination of Toma, Candelore-I, and Candelore-II
teaches or suggests the subject matter of limitation [1j] and, hence, claim 1.

### d. *Independent Claim 7 and Dependent Claims 2, 4, 8, 10, 14, and 16*

As noted above, limitation [7k] of independent claim 7 recites the
same "offset value" language as limitation [1j] and Petitioner relies on its

IPR2021-01418
Patent 10,257,443 B2

arguments and evidence directed to limitation [1j] in its discussion of limitation [7k]. *See* Pet. 58 (limitation [7k]). For the same reasons discussed above, we find that the same deficiency regarding claim 1 applies equally to claim 7 and the claims that depend from claim 1 or claim 7—claims 2, 4, 8, 10, 14, and 16.

Accordingly, because Petitioner relies on the same teaching of Candelore-II that was disclaimed from the scope of the claims during prosecution, Petitioner has not shown sufficiently on the present record that the combination of Toma, Candelore-I, and Candelore-II teaches or suggests the subject matter of limitation [7k] and, via their dependency from claim 1 or claim 7, the subject matter of dependent claims 2, 4, 8, 10, 14, and 16.

### 4. *Objective Considerations of Nonobviousness*

Neither party presents evidence of objective considerations of nonobviousness at this stage of the proceeding.

### 5. *Weighing the Graham Factors*

"Once all relevant facts are found, the ultimate legal determination [of obviousness] involves the weighing of the fact findings to conclude whether the claimed combination would have been obvious to an ordinary artisan." *Arctic Cat*, 876 F.3d at 1361. On balance, considering the record before us, Petitioner has not established a reasonable likelihood that it would prevail in showing that the combination of Toma, Candelore-I, and Candelore-II would have rendered the subject matter of claims 1, 2, 4, 7, 8, 10, 14, and 16 of the '443 patent obvious to one of ordinary skill in the art at the time of the invention.

IPR2021-01418
Patent 10,257,443 B2

C.    *Grounds 2–4*

In Ground 2, Petitioner contends that the combination of Toma,
Candelore-I, Candelore-II, and Mowry would have rendered the subject
matter of dependent claims 4, 10, and 16 obvious to one of ordinary skill in
the art at the time of the invention.  Pet. 64–67.  In addressing these claims,
Petitioner does not rely on Mowry as teaching the recited "offset value" of
limitations [1j] and [7k] or otherwise propose modifying Candelore-II's
pointers such that they are not relative to the file.  *See id.*

In Ground 3, Petitioner asserts that the combination of Toma, Matsui,
Candelore-I, and Candelore-II would have rendered the subject matter of
claims 1, 2, 4, 7, 8, 10, and 13–16 obvious to one of ordinary skill in the art
at the time of the invention.  Pet. 68–85.  In addressing the claims under this
Ground, Petitioner relies on the same argument and evidence set forth in
Ground 1, which we have addressed above.  *See id.* at 71 (addressing
limitation [1f] by referring to Ground 1), 73–74 (addressing limitations [1h],
[1i], and [1j] by referring to Ground 1).  Petitioner does not rely on Matsui
as teaching the recited "offset value" of limitations [1j] and [7k] or
otherwise propose modifying Candelore-II's pointers such that they are not
relative to the file.  *See id.* at 68–85.

In Ground 4, Petitioner contends that the combination of Toma,
Matsui, Candelore-I, Candelore-II, and Mowry would have rendered the
subject matter of claims 4, 10, and 16 obvious to one of ordinary skill in the
art at the time of the invention.  Pet. 85–86.  In addressing these claims,
Petitioner does not rely on Matsui or Mowry as teaching the recited "offset
value" of limitations [1j] and [7k] or otherwise propose modifying
Candelore-II's pointers such that they are not relative to the file.  *See id.*

IPR2021-01418
Patent 10,257,443 B2

Accordingly, because Petitioner relies on the same teaching of
Candelore-II in Grounds 2–4 that we find disclaimed from the scope of the
claims, we reach the same determination regarding these Grounds.
Specifically, Petitioner has not shown sufficiently on the present record that
the different combinations of references teach or suggest the subject matter
of limitations [1j] and [7k], which, via dependency, is recited in each of the
claims challenged in Grounds 2–4.  Thus, on balance, considering the record
before us, Petitioner has not established a reasonable likelihood that it would
prevail on Grounds 2–4.

## IV. CONCLUSION

For the foregoing reasons, Petitioner has not demonstrated a
reasonable likelihood that it would prevail in showing that at least one claim
of the '443 patent is unpatentable.

## V.  ORDER

Accordingly, it is:

ORDERED that the Petition is *denied* as to the Challenged Claims of
the '443 patent; and

FURTHER ORDERED that no *inter partes* review is instituted.

IPR2021-01418
Patent 10,257,443 B2

For PETITIONER:

David Cavanaugh
Mary V. Sooter
WILMERHALE LLP
david.cavanaugh@wilmerhale.com
mindy.sooter@wilmerhale.com


For PATENT OWNER:

Kenneth J. Weatherwax
Nathan Lowenstein
Bridget Smith
Flavio Rose
Edward Hsieh
Parham Hendifar
Patrick Maloney
LOWENSTEIN & WEATHERWAX LLP
weatherwax@lowensteinweatherwax.com
lowenstein@lowensteinweatherwax.com
smith@lowensteinweatherwax.com
rose@lowensteinweatherwax.com
hsieh@lowensteinweatherwax.com
hendifar@lowensteinweatherwax.com
maloney@lowensteinweatherwax.com